MICHAEL W. McTIGUE JR. (*pro hac vice* forthcoming)
michael.mctigue@skadden.com
MEREDITH C. SLAWE (*pro hac vice*)
meredith.slawe@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
HILLARY A. HAMILTON (SBN 218233)
hillary.hamilton@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:(213) 687-5000
Facsimile: (213) 687-5600

Attorneys for Defendant
Cinmar, LLC [Erroneously Sued as Cimar, LLC]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LICEA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CIMAR, LLC, a Delaware limited liability company, and DOES 1 through 25, inclusive,<br><br>Defendants. | CASE NO.: 2:22-cv-06454-MWF-JEM<br><br>**DEFENDANT CINMAR, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;**<br><br>**FILED UNDER SEPARATE COVER:**<br><br>**(1) DECLARATIONS OF HILLARY A. HAMILTON AND CAMILLA BURLING IN SUPPORT;**<br><br>**(2) REQUEST FOR JUDICIAL NOTICE AND NOTICE OF DOCUMENTS INCORPORATED BY REFERENCE; and**<br><br>**(3) [PROPOSED] ORDERS.**<br><br>Judge: Hon. Michael W. Fitzgerald<br>Courtroom: 5A<br>Date: December 19, 2022<br>Time: 10:00 a.m. |

1

<u>**NOTICE OF MOTION AND MOTION**</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 19, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5A, located at 350 West First Street, Los Angeles, California 90012, Defendant Cinmar, LLC ("Defendant") will, and hereby does, present for hearing by the Court, the Honorable Michael W. Fitzgerald presiding, this Motion to Dismiss Class Action Complaint filed by Plaintiff Jose Licea ("Motion").

This Motion is made pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6). The Motion is based on this notice, the memorandum of points and authorities that follows, the Request for Judicial Notice and Notice of Document Incorporated by Reference, and the Declarations of Hillary Hamilton and Camilla Burling filed in support, the files and records in this action, the arguments of counsel, and any other items the Court may consider.

This motion is made following the conference of counsel pursuant to Civil Local Rule 7-3, which took place on November 7, 2022.

DATED: November 14, 2022

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____/s/Jason D. Russell_____
JASON D. RUSSELL
Attorneys for Defendant
CINMAR, LLC

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS.................................................................i

TABLE OF AUTHORITIES .........................................................iii

PRELIMINARY STATEMENT ..................................................... 1

BACKGROUND ........................................................................... 4

PLAINTIFF'S ALLEGATIONS ...................................................... 6

LEGAL STANDARD.................................................................... 8

ARGUMENT ................................................................................ 9

I.   SECTION 631 DOES NOT APPLY BECAUSE PLAINTIFF ALLEGES TRANSCRIPTS WERE CREATED AND SHARED BY DEFENDANT AND THUS AT MOST ASSERTS DEFENDANT "RECORDED"—NOT EAVESDROPPED ON—A COMMUNICATION ................................................... 9

    A.   Section 631 Does Not Apply To Recordings, Only Eavesdropping........................................................ 9

    B.   Courts Reject Conclusory Allegations Like Plaintiff's Here That Do Not Allege Any Eavesdropping Conduct Subject To Section 631 ........................................................... 11

II.  DEFENDANT CANNOT BE LIABLE UNDER SECTION 631 AS IT WAS A PARTY TO THE COMMUNICATION WHO ALLEGEDLY "CREATED" AND THEN SHARED TRANSCRIPTS OF THAT COMMUNICATION ............................................. 13

    A.   The Law Is Clear That A Party To An Electronic Communication May Share That Communication With A Third Party After The Fact Without Violating Either The Wiretap Act Or Section 631 ....................................................... 13

    B.   Plaintiff's Vague But Sensational Allegations Of Secret Transcripts Defendant "Created" And Sneaked To Third Parties Are Unavailing ....................................................... 14

III. PLAINTIFF'S ALLEGATIONS PRECLUDE ANY SHOWING OF AN INTERCEPTION OF A COMMUNICATION IN TRANSIT, AND THUS PLAINTIFF'S CLAIM MUST BE DISMISSED ............... 15

    A.   Pre-Internet, California State Courts Long Held That Transcribing A Telephone Communication And Retaining It In Written Form Is *Not* Interception Under Section 631 ................... 15

i

B.  Ninth Circuit Courts Consistently Hold That Once An Electronic Message Has Been Received, Contemporaneous "Interception" Is No Longer Possible Under The Wiretap Act And Section 631 ..................................................................... 16

C.  Ninth Circuit District Courts Dismiss Federal And State Wiretapping Claims Based On Electronic Communications Like The Chat Here ..................................................................... 18

D.  Plaintiff's Claim Fails Because He Did Not And Cannot Allege The Chat Message Was In Transit Or Intercepted Before The Transcripts Were "Created" ................................................. 21

IV.  BECAUSE PLAINTIFF'S CURRENT ALLEGATIONS FORECLOSE ANY AMENDMENT UNDER SECTION 631, AND PLAINTIFF CANNOT ASSERT A SECTION 632 CLAIM AS A MATTER OF LAW, PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ............................................. 22

CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

**PAGES**

**Cases**

*Adler v. Community.com, Inc.*,
No.: 2:21-cv-02416-SB-JPR,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ...................................................*passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................7, 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................8

*Bradley v. Google, Inc.*,
No. C 06-05289 WHA,
2006 WL 3798134 (N.D. Cal. Dec. 22, 2006) ...........................................16, 22, 23

*Brodsky v. Apple Inc.*,
445 F.Supp.3d 110 (N.D. Cal. 2020)......................................................................14

*Bunnell v. Motion Picture Ass'n of America*,
567 F.Supp.2d 1148 (C.D. Cal. 2007)...............................................................17, 18

*Calcano v. Swarovski North America Ltd.*,
36 F.4th 68 (2d Cir. 2022) .......................................................................................6

*Castaneda v. Flagstar Bank, FSB*,
No. EDCV 20-1400-MWF (SPx),
2021 WL 1232463 (C.D. Cal. Feb. 1, 2021) (Fitzgerald, J.) ....................................2

*Crowley v. CyberSource Corp.*,
166 F.Supp.2d 1263 (N.D. Cal. 2001).........................................................13, 14, 18

*Dean v. U.S.*,
556 U.S. 568 (2009)................................................................................................9

*Domondon v. First Franklin*,
No. LA CV16–01277 JAK (MRWx),
2016 WL 7479399 (C.D. Cal. June 23, 2016).........................................................5

*Ervine v. Desert View Regional Medial Center Holdings, LLC*,
753 F.3d 862 (9th Cir. 2014) ................................................................................12

iii

*Executive Security Management, Inc. v. Dahl,*
    830 F.Supp.2d 883 (C.D. Cal. 2011) ..................................................... 17, 18

*In re Facebook, Inc. Internet Tracking Litigation,*
    956 F.3d 589 (9th Cir. 2020) ................................................................. 13

*Garcia v. Haskett,*
    No. C 05-3754 CW,
    2006 WL 1821232 (N.D. Cal. June 30, 2006) ...................................... 21

*In re Google Inc.,*
    No.: 13–MD–02430–LHK,
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ............................ 3, 12, 24

*Hernandez v. Path, Inc.,*
    No. 12–CV–01515 YGR,
    2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) ....................................... 20

*Hill v. National Collegiate Athletic Ass'n,*
    7 Cal.4th 1 (1994) ................................................................................ 12

*Jang v. 1st United Bank,*
    No. 2:11–CV–02427–JAM–GGH,
    2012 WL 2959985 (E.D. Cal. July 19, 2012) ......................................... 5

*Johnson v. Ocaris Management Group Inc.,*
    No. 18-CV-24586-PCH,
    2019 WL 13235462 (S.D. Fla. May 30, 2019) ....................................... 6

*Johnson v. Ocaris Management Group Inc.,*
    No. 18-CV-24586-PCH,
    2019 WL 13235834 (S.D. Fla. Aug. 23, 2019), *aff'd,*
    9 F.4th 1300 (11th Cir. 2021) ................................................................. 6

*Knell v. FIA Card Services, N.A.,*
    No.: 12-cv-0426-AJB (WVG),
    2013 WL 12121237 (S.D. Cal. Feb. 21, 2013) ...................................... 11

*Konop v. Hawaiian Airlines, Inc.,*
    302 F.3d 868 (9th Cir. 2002) ..................................................... 16, 17, 18

*Kung v. Chow,*
    No.: CV 14-06857 SJO (Ex),
    2014 WL 12571416 (C.D. Cal. Sept. 19, 2014) ..................................... 18

iv

*Lindsay-Stern v. Garamszegi,*
    No.: SACV 14-01970-CJC(DFMx),
    2016 WL 11745948 (C.D. Cal. Oct. 13, 2016) ................................ 17, 18

*Marsh v. Zaazoom Solutions, LLC,*
    No. C–11–05226–YGR,
    2012 WL 952226 (N.D. Cal. Mar. 20, 2012) ................................... *passim*

*Mastel v. Miniclip SA,*
    549 F.Supp.3d 1129 (E.D. Cal. 2021) ................................................ 15

*Membrila v. Receivables Performance Management, LLC,*
    No. 09-CV-2790-IEG (RBB),
    2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) ...................................... 11

*Nacimo A. v. Saul,*
    No.: 3:20-cv-1780-RBM,
    2020 WL 5761187 (S.D. Cal. Sept. 25, 2020) ..................................... 5

*NovelPoster v. Javitch Canfield Group,*
    140 F.Supp.3d 938 (N.D. Cal. 2014)............................................. 17, 18

*Pacific Coast Federation of Fisherman's Ass'ns v. Blank,*
    693 F.3d 1084 (9th Cir. 2012) ............................................................ 9

*People v. Arriaga,*
    58 Cal.4th 950 (2014) ...................................................................... 10

*People v. Carella,*
    191 Cal.App.2d 115 (1961) .............................................................. 16

*People v. Nakai,*
    183 Cal.App.4th 499 (2010) ....................................................... 12, 25

*People v. Wilson,*
    17 Cal.App.3d 598 (1971) ........................................................... 15, 16

*Powell v. Union Pacific Railroad Co.,*
    864 F.Supp.2d 949 (E.D. Cal. 2012) ................................................. 11

*Quigley v. Yelp, Inc.,*
    No. 17-cv-03771-RS,
    2018 WL 7204066 (N.D. Cal. Jan. 22, 2018)............................ 8, 9, 21, 25

v

*Rodriguez v. Google LLC*,
　　No. 20-cv-04688-RS,
　　2021 WL 2026726 (N.D. Cal. May 21, 2021)............................................25

*Rodriguez v. Google LLC*,
　　No. 20-cv-04688-RS,
　　2021 WL 6621070 (N.D. Cal. Aug. 18, 2021)........................................20

*Rodriguez v. Google LLC*,
　　No. 20-cv-04688-RS,
　　2022 WL 214552 (N.D. Cal. Jan. 25, 2022).....................................*passim*

*Rogers v. Ulrich*,
　　52 Cal.App.3d 894 (1975) .............................................................*passim*

*Rosenow v. Facebook, Inc.*,
　　No.: 19-cv-1297-WQH-MDD,
　　2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ....................................8, 21

*In re Splash Technology Holdings, Inc. Securities Litigation*,
　　No. C 99-00109 SBA,
　　2000 WL 1727377 (N.D. Cal. Sept. 29, 2000)..........................................5

*Steckman v. Hart Brewing, Inc.*,
　　143 F.3d 1293 (9th Cir. 1998) .....................................................22, 25

*Sunbelt Rentals, Inc. v. Victor*,
　　43 F.Supp.3d 1026 (N.D. Cal. 2014)......................................16, 20, 21

*Theofel v. Farey-Jones*,
　　359 F.3d 1066 (9th Cir. 2004) ...........................................................17

*Turnacliff v. Westly*,
　　546 F.3d 1113 (9th Cir. 2008) ...............................................................9

*Underhill v. Kornblum*,
　　No.: 16–CV–1598–AJB–WVG,
　　2017 WL 2869734 (S.D. Cal. Mar. 16, 2017)..................................16, 18

*Vasquez v. State*,
　　45 Cal.4th 243 (2008) ............................................................................9

*Warden v. Kahn*,
　　99 Cal.App.3d 805 (1979) .............................................................10, 11

*Wells Fargo Bank v. Superior Court*,
    53 Cal.3d 1082 (1991) .......................................................................... 10

*Yunker v. Pandora Media, Inc.*,
    No. 11–CV–03113 JSW,
    2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ....................................... 14

**Statutes**

18 U.S.C. § 2511 ............................................................................................ 16

Cal. Pen. Code § 630 ........................................................................................ 9

Cal. Pen. Code § 631 ................................................................................*passim*

Cal. Pen. Code § 632 ................................................................................ 10, 24

**PRELIMINARY STATEMENT**

Retailers strive to ensure consumers have numerous ways to inquire about a product's specifications or availability, check on the status of an order or return, request information about store locations and hours, and so on. The vast majority of retail websites satisfy consumer expectations by efficiently routing their questions and concerns and promptly providing answers, using toll-free numbers, online inquiry forms, direct email, FAQ sections, and, as relevant here, the opportunity to "chat" online with a customer service agent. To initiate the chat feature, consumers choose to click on the ubiquitous "chat bubbles" at the bottom or side of a retailer's website. Most chats initially ask the consumer to select a topic from a menu and/or type in basic information—*e.g.*, name, email or telephone number—in a form or text box. Some chats provide automatic answers on common topics, but in most an agent then comes online to exchange exclusively *written* electronic messages with the consumer. Typically, the agent types a greeting and asks how they can help. The consumer types in their question(s) in the text box, the agent answers in kind, and the exchange unfolds on the screen after each message is typed, sent, and received, at all times visible to both parties. Some issues require escalation through other customer service channels; for example, payments cannot be made via chat. Thus, these chat features serve a limited, but important, purpose for consumers and retailers.

Retailers and consumers often keep the "chat logs" of these interactions. For obvious reasons, if a consumer has invested the time and effort to reach out via the chat, that consumer will likely print the chat and expect the retailer also to retain the exchange if any follow-up is needed. Using electronic chats is routine for many consumers at thousands of retailers: consumers value and affirmatively seek out the chat feature, understand when they are exchanging written messages with an agent, and voluntarily engage in the chat, with the expectation the chat will be retained and referred to if the issue prompting the chat is not resolved. Neither the consumer nor the retailer violate the California Invasion of Privacy Act ("CIPA") criminal wiretapping statute by retaining chat logs.

Yet retailers across the nation are currently the targets of misguided litigation

brought by a handful of plaintiffs posing as "privacy advocates," asserting a contorted violation of CIPA Section 631 ("Section 631").[1] Since July, Pacific Trial Attorneys ("PTA")—representing Plaintiff here—has brought close to *sixty* duplicative actions in California state and federal courts on behalf of seven individuals, vaguely alleging that each plaintiff visited a retailer's website, initiated a chat, and was later "shocked" to discover that the retailer retained a copy of the chat, which Plaintiff likely printed and also retained, "without consent." By painting an innocuous (and voluntary) consumer interaction as nefarious "wiretapping," Plaintiff's counsel seeks to turn a routine service expected and relied on by consumers into an opportunity to extract extravagant settlement terms or force companies to defend against baseless litigation brought under Section 631.

This case is no exception. Plaintiff alleges that at some undisclosed time in the last year, he visited Defendant's website at frontgate.com, and "communicated *with an employee of Defendant* through the website chat feature." (Compl. ¶ 14.) Based on this allegation, Defendant searched its chat log files and found *one* chat initiated by a "Jose Licea" in August 2022, reproduced below in its entirety. (Burling Decl. ¶ 3 & Ex. A.)[2]

**Chat Transcript**

| Time Stamp | Chat By | Message |
| --- | --- | --- |
| 08/09/2022, 03:13:28 PM | jose licea | 07:13 PM GMT : Escalated : Started Chat 07:13 PM GMT : Shown : Suggested articles |
| 08/09/2022, 03:13:28 PM | jose licea | returns |
| 08/09/2022, 03:13:37 PM | System | You are now chatting with Tiara |
| 08/09/2022, 03:13:41 PM | Tiara | Good afternoon. How can I assist you with this today? |
| 08/09/2022, 03:14:25 PM | Tiara | Did I lose you? |
| 08/09/2022, 03:14:45 PM | System | jose licea has left the chat |
| 08/09/2022, 03:14:54 PM | System | Tiara has ended the chat |

---

[1] Unless otherwise noted, all emphases are added, and all citations, footnotes, original alterations, and internal quotation marks are omitted from all quoted material. All "Section" references are to the California Penal Code. All "RJN" references are to the concurrently filed Request for Judicial Notice And Notice of Document Incorporated By Reference. References to "Hamilton Decl." and "Burling Decl." are to the concurrently filed declarations of Hillary A. Hamilton and Camilla Burling.

[2] Because Plaintiff expressly alleges he initiated a chat with Defendant's employee and that chat is "central" to his Section 631 claim, the Court may consider this chat log under the incorporation by reference doctrine. *Castaneda v. Flagstar Bank, FSB*, 2021 WL 1232463, at *2 (C.D. Cal. Feb. 1, 2021) (Fitzgerald, J.) ("The incorporation-by-reference doctrine permits a court to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading . . . on a motion to dismiss if they are 'central' to the claims.").

Setting aside the inherent credibility issues for Plaintiff and his counsel in seeking millions in statutory damages for "appall[ing]" privacy intrusions based on his *typing a single word*, Plaintiff alleges that, by retaining its chats with consumers—which he characterizes as a "secret transcript" that Defendant purportedly "created" and then "shared" with two third parties—Defendant has somehow run afoul of Section 631's proscription of third party eavesdropping. (Compl. ¶¶ 10-12, 14.) The Complaint is devoid of detail, but liberally sprinkled with bare and conclusory allegations accusing Defendant of "monitoring," "intercepting" and "recording" chats, without more. Even accepting Plaintiff's conclusory allegations as true, Plaintiff's claims fail for three independent reasons, any one of which would be sufficient to dismiss the Complaint with prejudice.

*First*, Section 631 only covers *eavesdropping* by a third party listening in secret, *not a recording* of a communication.[3] Plaintiff's allegations that Defendant created and shared a transcript of a chat, even accepted as true, only "describe how [Defendant] *records data and then subsequently transmits it, which falls short of a § 631 claim*." *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (*Rodriguez III*). Plaintiff does *not* allege a third party was eavesdropping at any time in the chat; at most, Plaintiff offers conclusory allegations that Defendant "monitored" the chat *it was participating in*. On its face, Plaintiff's Complaint does not state a claim under Section 631. *See infra* §I.

*Second*, assuming *arguendo* that storing and sharing a transcript of an internet chat was conduct addressed by Section 631, and it is not, that section's "party exemption" relieves Defendant of liability as a party to the communication. Because Plaintiff alleges only *Defendant* created and then shared transcripts of its own alleged "conversations" with third parties, the party exemption forecloses Plaintiff's Section 631 claim. *See infra* §II.

*Third*, Plaintiff cannot show the requisite "interception" under the law. California

---

[3] *Recording* by a participant to an exchange without consent implicates Section 632, which governs recording "confidential communications." But Plaintiff did not assert a Section 632 claim, and cannot amend his complaint to add one. Electronic communications, including chats, are not "confidential communications" protected by Section 632 *precisely because* chat message recipients can "share them with whoever they please, forward them or otherwise send them to others." *In re Google Inc.*, 2013 WL 5423918, at *22-23 (N.D. Cal. Sept. 26, 2013) (dismissing Section 632 claim). *Infra* §IV.

1  state courts have long recognized transcribing a communication and retaining it in written

2  form is *not* interception under Section 631. And more recently, federal courts analyzing

3  Section 631 and the analogous Wiretap Act claims agree that there can be no interception

4  under either statute *after* an electronic message arrives at its destination. Because Plaintiff

5  admits Defendant was the intended recipient of the chat, and a "transcript" of an electronic

6  chat can only be created or stored *after* a message is received (and thus no longer "in

7  transit"), Plaintiff cannot state a claim under Section 631 here. *See infra* §III.

8       For all these reasons, dismissal should be with prejudice. In light of his allegations,

9  Plaintiff cannot amend to truthfully allege that Defendant was *not* the intended recipient of

10  his chat communications, did *not* participate in the purportedly "wiretapped" chat, and/or

11  did not "create" the transcript of those chats. Nor can Plaintiff truthfully amend to allege

12  that Defendant somehow "intercepted" his chat messages before transmission was

13  complete. Thus, Plaintiff's claim should be dismissed with prejudice. *See infra* §IV.

14  **<u>BACKGROUND</u>**

15       Plaintiff, through PTA, is currently pursuing *twelve additional* actions asserting the

16  same Section 631 "wiretapping" claims based on purported (presumably equally minimal)

17  interactions with *other* retailers' chat platforms: eight in the Southern District of California,

18  and four in the Superior Court of San Diego County.[4] Plaintiff's venue gamesmanship is

19  unexplained; here, Plaintiff alleges he "resides in this District" (Compl. ¶ 2), an allegation

20  absent from his Southern District complaints. (RJN Exs. 1-8 ¶ 4.) But his state court

21

22  [4] *See* RJN Ex. 1, Complaint in *Licea v. Uniqlo USA, LLC*, No. 3:22-cv-1489 (S.D. Cal., filed Oct. 3, 2022); Ex. 2, Complaint in *Licea v. Logitech, Inc.*, No. 3:22-cv-1490 (S.D.

23  Cal., filed Oct. 3, 2022); Ex. 3, Complaint in *Licea v. Bath & Body Works Direct Inc.*, No. 3:22-cv-1528 (S.D. Cal., filed Oct. 6, 2022); Ex. 4, Complaint in *Licea v. Wolverine World*

24  *Wide Inc.*,, No. 3:22-cv-1564 (S.D. Cal., filed Oct. 12, 2022); Ex. 5, Complaint in *Licea v. Genesco Inc.*, No. 3:22-cv-1567 (S.D. Cal., filed Oct. 12, 2022); Ex. 6, Complaint in *Licea*

25  *v. BJ Acquisition LLC*, No. 3:22-cv-1579 (S.D. Cal., filed Oct. 12, 2022); Ex. 7, Complaint in *Licea v. Payless Shoesource Worldwide LLC*, No. 3:22-cv-1586 (S.D. Cal., filed Oct.

26  14, 2022); Ex. 8, Complaint in *Licea v. Overstock.com*, No. 3:22-cv-1594 (S.D. Cal., filed Oct. 14, 2022); Ex. 9, Complaint in *Licea v. Vitacost.com, Inc.*, No. 37-2022-00042326-

27  CU-MT-CTL (San Diego Cnty., filed Oct. 21, 2022); Ex. 10, Complaint in *Licea v. Igloo Prods. Corp.*, No. 37-2022-42507-CU-MT-CTL (San Diego Cnty., filed Oct. 21, 2022);

28  Ex. 11, Complaint in *Licea v. Tommy Hilfiger U.S.A. Inc.*, No. 37-2022-42365-CU-MT-CTL (San Diego Cnty., filed Oct. 24, 2022); Ex. 12, Complaint in *Licea v. Chewy Inc.*, No. 37-2022-42310-CU-MT-CTL (San Diego Cnty., filed Oct. 24, 2022).

1  complaints allege he "resid[es] in [San Diego] County." (RJN Exs. 9-12 ¶ 4.) A public
2  records search suggests he resides in a county outside this District. (Hamilton Decl. ¶ 3.)

3      The florid allegations in Plaintiff's other complaints duplicate his allegations here:
4  "Compliance with CIPA is easy, and the vast majority of website operators comply by
5  conspicuously warning visitors if their conversations are being recorded" and "[u]nlike
6  most companies, Defendant *ignores* CIPA." (*Compare* Compl. ¶¶ 9-10 (emphasis in
7  original) *with* RJN Exs. 1-8 ¶¶ 8-9 and Exs. 9-12 ¶¶ 9-10 (same).)

8      In fact, since July, Plaintiff's counsel has filed *fifty-seven* actions on behalf of
9  Plaintiff, his uncle Miguel Licea, and five other serial plaintiffs, all asserting the same
10 Section 631 claims based on interactions with retailers' chat platforms. (*See* Compl. & RJN
11 Exs. 1-56.) Each complaint is equally devoid of facts regarding plaintiff's interactions with
12 the chat, featuring vague (and conveniently fungible) assertions such as "[w]ithin the
13 statute of limitations period, Plaintiff visited Defendant's Website." (*See id.*) This is
14 unsurprising, given Plaintiff's participation in the chat was minimal, to say the least.

15     In California district courts, "[b]oilerplate or 'cut and paste' pleadings are strongly
16 discouraged." *Jang v. 1st United Bank*, 2012 WL 2959985, at *2 n.2 (E.D. Cal. July 19,
17 2012) ("The Court notes with great concern that all nine of [p]laintiffs' causes of action, as
18 pled in their complaint, are identical or substantially similar to those contained in other
19 complaints filed by [p]laintiffs' former attorney in the Eastern District, all of which have
20 been dismissed for failure to state a claim."); *see also Domondon v. First Franklin*, 2016
21 WL 7479399, at *5 (C.D. Cal. June 23, 2016) (dismissing complaint in its entirety under
22 Fed. R. Civ. P. 8 where "[p]lainly this pleading was not carefully constructed" but
23 "[i]nstead it appears to be a 'cut and paste' of similar complaints filed in other actions").[5]

24
25 [5] *See also Nacimo A. v. Saul*, 2020 WL 5761187, at *3 (S.D. Cal. Sept. 25, 2020)
   ("Plaintiff's counsel has filed several complaints in other social security appeals that
26 contain language nearly verbatim to the instant complaint's paragraph five. . . . The Court
   has recently issued an order discouraging [p]laintiff's counsel against filing pleadings with
27 such boilerplate language."); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL
   1727377, at *21 (N.D. Cal. Sept. 29, 2000) ("In listing these unspecified bases for
28 defendants' alleged knowledge, the FAC dramatically parallels allegations in other
   complaints in unrelated securities actions. . . . A comparison of this complaint with the
   other complaints strongly indicates the boilerplate features of this complaint.").

1   Likewise, the Second Circuit recently affirmed the dismissal of numerous "nearly
2   identical complaints" against retailers for not offering Braille gift cards. *Calcano v.*
3   *Swarovski N. Am. Ltd.*, 36 F.4th 68, 71 (2d Cir. 2022). The court found "Plaintiffs' vague
4   assertions that they have been customers at Defendants' businesses 'on prior occasions'"
5   lacking because they "fail[ed] to provide *any* details about their past visits or the frequency
6   of such visits . . . do not specify which stores they visited or what items they purchased" or
7   why. *Id.* at 76-77. The court concluded: "[W]e cannot ignore the broader context of
8   Plaintiffs' *transparent cut-and-paste and fill-in-the-blank pleadings.* The four Plaintiffs
9   before us filed eighty-one of over 200 essentially carbon-copy complaints between October
10  and December 2019. . . . *This backdrop of Plaintiffs' Mad-Libs-style complaints further*
11  *confirms the implausibility of their claims of injury*." *Id.* at 77.[6]

12  This Court should likewise look askance at the boilerplate Section 631 claims
13  implausibly based on contrived chat interactions filed by Plaintiff and his counsel here.

## **PLAINTIFF'S ALLEGATIONS**

15  Plaintiff's sole claim for violations of Section 631 is predicated on Defendant's
16  "creation" of a transcript of a chat, and later distribution of that transcript to third parties.
17  Plaintiff primarily offers only conclusory allegations that "Defendant (1) covertly wiretaps
18  the personal conversations of all visitors who utilize the chat feature at
19  www.frontgate.com; and (2) shares the secret transcripts of those wiretaps with third
20  parties that boast of their abilities to harvest personal data collected about consumers for
21  sales and marketing purposes." (Compl. Introduction (emphasis omitted)). He offers little
22  detail how, precisely, this "covert[] wiretap" occurs: "Defendant has secretly deployed
23  wiretapping software used in connection with the chat feature on its Website" and "[u]sing

---

[6] *See also Johnson v. Ocaris Mgmt. Grp. Inc.* 2019 WL 13235462, at *3, *4 (S.D. Fla. May 30, 2019) (holding "core ADA allegations were not credible" where plaintiff filed 26 ADA complaints against gas stations "identical except for the defendant's name, the location of the station, and the date" visited, and noting plaintiff's inability to credibly explain "why he gassed up at so many different Miami-Dade County stations since he resides in Fort Lauderdale" or "why if he patronized [them] to gas up, he patronized three different stations in close proximity to one another" in one day); *Johnson v. Ocaris Mgmt. Grp. Inc.*, 2019 WL 13235834, at *2, *9 (S.D. Fla. Aug. 23, 2019) (imposing sanctions on plaintiff and attorney for "unethical, abusive litigation"), *aff'd*, 9 F.4th 1300 (11th Cir. 2021).

1  that software, Defendant covertly *monitors*, *records, and creates secret transcripts* of all

2  communication through the chat feature on its website." (*Id.* ¶ 10.)

3      Plaintiff's allegation regarding his chat is equally vague, but as pled is fatal to any

4  Section 631 claim: "Within the statute of limitations period, Plaintiff visited Defendant's

5  Website *and communicated with an employee of Defendant through the website chat*

6  *feature*." (*Id.* ¶ 14.) Plaintiff does *not* allege anyone other than Defendant's "employee"

7  was participating in, let alone "eavesdropping" on, the communication.

8      Instead, Plaintiff "alleges" a legal conclusion: under Section 631, "website operators

9  cannot create transcripts of visitors' conversations (or provide such transcripts to third

10  parties) without obtaining prior, express consent from all parties." (*Id.* ¶ 9.) The Court need

11  not accept this "legal conclusion couched as a factual allegation'" as true, *Ashcroft v. Iqbal*,

12  556 U.S. 662, 678 (2009), and, in any case, it contradicts well-settled law, as shown below.

13      Plaintiff follows this misguided assertion with repetitive, often melodramatic

14  allegations that Defendant shared the covert transcripts it created with third parties, such

15  as: "Going from bad to worse, Defendant has shared the secret transcripts with both eGain

16  and Webex, third parties that publicly boast about their ability to help companies 'harvest'

17  highly personal data gathered about consumers"[7] and "[c]onsumers would be shocked and

18  appalled to know that Defendant secretly creates transcripts of those conversations and

19  transmits them to and shares them with third parties." (Compl. ¶¶ 11, 12.)[8]

---

20  [7] While Plaintiff hints that third parties eGain and WebEx "boast" about their capabilities
21  to assist clients with "data harvesting," he does not support this bald allegation with any
statements from the named entities, boasting or otherwise. (Compl. Introduction & ¶ 11.)
22  More importantly, Plaintiff does not allege eGain and WebEx actually engaged in any data
harvesting at all, only that they had the purported ability to do so. (*Id.*) This lack of detail
23  as to the purported third parties' involvement is further evidence of PTA's boilerplate
litigation tactics. To quote another retailer's motion to dismiss another PTA Section 631
24  complaint pending in this District: "As for Webex, its involvement is so secret not even
Boscov's has any idea why they are named in the Complaint. Simply put, Boscov's has no
25  knowledge of any involvement by Webex, and this is another cut-and-paste allegation by
Plaintiff's counsel that has no evidentiary support." RJN Ex. 57 (Mem. Of Points &
26  Authorities, *Cody v. Boscov's*, Case No. 22-CV-01434-DOC-ADS (C.D. Cal.), at 9 n.7.)

27  [8] *See also* Compl. ¶ 15 ("Defendant did not inform Plaintiff, or any of the Class Members,
that Defendant was secretly monitoring, recording, and sharing their communications");
28  ¶ 16 ("Defendant did not obtain Plaintiff's or the Class Members' consent to intercepting,
monitoring, recording, and sharing the electronic communications with the Website"); ¶ 17
("Plaintiff and Class Members did not know at the time of the communications that

1    Setting aside the logical and legal flaws in Plaintiff's assertions, at best he is alleging
2    Defendant saved a copy of an electronic chat *it was participating in*, and then shared that
3    "recording" with third parties. This is not actionable eavesdropping under Section 631.

4                                    **LEGAL STANDARD**

5    Federal Rule of Civil Procedure ("FRCP") 8(a) requires a plaintiff to plead a claim
6    with enough specificity to "give the defendant fair notice of what the claim is and the
7    grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A
8    complaint will survive a motion to dismiss under FRCP 12(b)(6) only if it states "sufficient
9    factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
10   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

11   To have facial plausibility, plaintiff must plead "factual content" sufficient for a
12   court to reasonably infer defendant is liable, something "more than a sheer possibility"
13   defendant "acted unlawfully." *Id.*; *see also Rosenow v. Facebook, Inc.*, 2020 WL 1984062,
14   at *7 (S.D. Cal. Apr. 27, 2020) (same, dismissing Wiretap Act claims for failure to allege
15   interception of chat messages). Plaintiff must plead "more than labels and conclusions,"
16   *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals" of the elements of a cause of action
17   "do not suffice." *Iqbal*, 556 U.S. at 678. In determining plausibility, the Court must "draw
18   on its judicial experience and common sense," and need not "accept as true a legal
19   conclusion couched as a factual allegation." *Id.* at 678, 679.

20   Section 631 claims fail under FRCP 8 where the plaintiff "has not alleged an
21   interception of his communications while 'in transit'" or, specifically, "*how or when any*
22   *defendant became aware of his communications.*" *Quigley v. Yelp, Inc.*, 2018 WL 7204066,
23   at *4 (N.D. Cal. Jan. 22, 2018); *see also Adler v. Community.com, Inc.*, 2021 WL 4805435,

24

25   Defendant was secretly intercepting, monitoring, recording, and sharing the electronic
     communications"); ¶ 18 ("Plaintiff brings this action individually and on behalf of all
26   others similarly situated (the 'Class') defined as follows: All persons within California
     who: (1) visited Defendant's website, and (2) whose electronic communications were
27   recorded, stored, and/or shared by Defendant without prior express consent within the
     statute of limitations period"); and ¶ 27 ("Defendant intentionally caused the internet
28   communication between Plaintiff and Class Members with Defendant's website to be
     intercepted, recorded, stored, and transmitted to a third party").

at *4 (C.D. Cal. Aug. 2, 2021) (dismissing Section 631 claim where "there is no plausible allegation that Defendant acted to learn the contents of the messages while they were, in a technical sense, in transit or in the process of being received.").

"[V]ague references" to "surreptitious surveillance" are insufficient to "support an inference that an 'interception' took place" as required under Section 631. *Quigley*, 2018 WL 7204066, at *4 (dismissing Section 631 claims for failing to "allege[] facts giving rise to an inference that his communications were intercepted while 'in transit' as required").

## **ARGUMENT**

## I. SECTION 631 DOES NOT APPLY BECAUSE PLAINTIFF ALLEGES TRANSCRIPTS WERE CREATED AND SHARED BY DEFENDANT AND THUS AT MOST ASSERTS DEFENDANT "RECORDED"—NOT EAVESDROPPED ON—A COMMUNICATION

Enacted in 1967, Section 631 was "intend[ed] to protect the right of privacy of the people of this state" from "new devices and techniques *for the purpose of eavesdropping upon private communications.*" Cal. Pen. Code § 630. This "declaration of legislative finding and intent . . . speaks of preventing eavesdropping and other invasions of privacy," meaning "'*[e]avesdropping' is the problem the Legislature meant to deal with* . . . defined in Webster's . . . as '*to listen secretly to what is said in private*.'" *Rogers v. Ulrich*, 52 Cal.App.3d 894, 899 (1975). Of course, a party cannot eavesdrop on its own conversation: "[i]t is never a secret to one party to a conversation that the other party is listening to the conversation; *only a third party can listen secretly to a private conversation*." *Id.*

### A. Section 631 Does Not Apply To Recordings, Only Eavesdropping

Courts "ordinarily resist reading words or elements into a statute that do not appear on its face." *Dean v. U.S.*, 556 U.S. 568, 572 (2009); *Pac. Coast Fed'n of Fisherman's Ass'ns v. Blank*, 693 F.3d 1084, 1095 (9th Cir. 2012) (same). In construing statutes, a court's "office is simply to ascertain and declare what the statute contains, not to change its scope by reading into it language it does not contain." *Vasquez v. State*, 45 Cal.4th 243, 253 (2008).[9] And "[i]t is hornbook law that where [the legislature] has carefully employed

---

[9] When interpreting a California statute, Ninth Circuit courts apply California's rules of statutory construction. *Turnacliff v. Westly*, 546 F.3d 1113, 1117-18 (9th Cir. 2008).

a term in one place and excluded it in another, it should not be implied where excluded," *Wells Fargo Bank v. Superior Court*, 53 Cal.3d 1082, 1096-97 (1991), because "if a statute contains a provision regarding one subject, that provision's omission in the same or another statute regarding a related subject is evidence of a different legislative intent." *People v. Arriaga*, 58 Cal.4th 950, 960 (2014).

Here, the terms "record" and "recording" do *not* appear in Section 631.[10] However, Section 632 "goes beyond the scope of section 631 in prohibiting *not only eavesdropping*, but also the *recording* of a confidential communication without the consent of all parties." *Rogers*, 52 Cal.App.3d at 899. Indeed, Section 632 includes *both* "eavesdrop" and "record": "A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device *to eavesdrop upon or record the confidential communication*...." Cal. Pen. Code § 632(a); *see also id*. § 632(c) (defining "confidential communication" as "any communication carried on . . . in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard *or recorded*").

Thus, the omission of "record" from Section 631 *"suggest[s] that participant recording was not meant to be included*." *Rogers*, 52 Cal.App.3d at 899; *see also Warden v. Kahn*, 99 Cal.App.3d 805, 811 & n.3 (1979) (same, explaining that Section 631's clause "forbidding the interception of messages in transit or during transmission and reception 'without the consent of all parties' . . . *clearly has no application to participant recording*, and the operative terms of the first clause [regarding wiretapping] are vague and nowhere defined"). Given that Section 631 is "patently ambiguous," the *Warden* court emphasized

---

[10] Section 631 states "[a]ny person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, . . . with any telegraph or telephone wire, line, cable, or instrument . . . or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained" or aids and abets any of the above, is subject to fines and/or imprisonment. Cal. Pen. Code § 631.

1   "[s]ince we are dealing with a penal statute, language so ambiguous *should be interpreted*
2   *in favor of the alleged violator*." 99 Cal.App.3d at 811 & n.3.

3       Federal courts interpreting California state law agree: "Section 631 broadly
4   proscribes *third party access to ongoing communications*" and "was aimed at one aspect
5   of the privacy problem—eavesdropping, or the *secret monitoring of conversations by third*
6   *parties*." *Powell v. Union Pac. R.R. Co.*, 864 F.Supp.2d 949, 955 (E.D. Cal. 2012).[11]

7       In *Rodriguez III*, the court dismissed a Section 631 claim because plaintiffs alleged
8   "developers and consumers consented to Google uploading data to its servers for the
9   developers' use, but that Google *also retained a copy* for its own use," which "describe[s]
10  how Google *records data and then subsequently transmits it, which falls short of a § 631*
11  *claim*." 2022 WL 214552, at *2. "What is nowhere to be found is a specific description of
12  how Google is secretly intercepting [p]laintiffs' data" and "*[w]hen [p]laintiffs do describe*
13  *the process, they describe misuse of a recording, not interception*: Google logs the data,
14  and sends a second copy to itself, even when it is not supposed to." *Id.*

15      Put simply, Section 631—which must be interpreted in favor of Defendant—applies
16  only to third parties *eavesdropping* on private communications, while Section 632 prohibits
17  any party from *recording* a confidential communication. Section 631 does not apply here.

### B.   Courts Reject Conclusory Allegations Like Plaintiff's Here That Do Not Allege Any Eavesdropping Conduct Subject To Section 631

20      To summarize Plaintiff's vague allegations: sometime in the last year, he visited
21  Defendant's website, initiated a chat by typing in the text box, and Defendant's employee
22  provided a written response in the chat. (Compl. ¶ 14.) Plaintiff claims this mutual
23  electronic exchange is a "transcript" "created" without Plaintiff's consent—despite his
24  admitted participation in its creation. What Plaintiff actually appears to be asserting is that

---

11 *See also Knell v. FIA Card Servs., N.A.*, 2013 WL 12121237, at *3 (S.D. Cal. Feb. 21,
25  2013) ("Section 631(a) governs illegal wiretapping and *only applies to interception by a*
26  *third party*," dismissing Section 631 claim "because the FAC does not suggest that the call
was intercepted by a third party and Plaintiff alleges that FIA was a participant in the
27  conversation"); *Membrila v. Receivables Performance Mgmt., LLC*, 2010 WL 1407274, at
*2 (S.D. Cal. Apr. 6, 2010) (dismissing Section 631 claim "because this section applies
28  only to eavesdropping by a third party *and not to recording*" where "Plaintiff alleges
Defendant recorded Plaintiff's phone conversation with Defendant" and "monitored" call).

1   Defendant did not immediately delete the chat. But Plaintiff does not, because he cannot,

2   point to any obligation on Defendant's part under Section 631 to delete chat messages on

3   receipt or refrain from sharing them with third parties.

4         Nor can he. "[A] telephone conversation ceases to exist when the conversation ends,

5   unless the conversation is recorded; *however, internet communications, such as e-mails*

6   *and instant messages, are sent via a recorded format, i.e., writing*." *People v. Nakai*, 183

7   Cal.App.4th 499, 515 (2010). Indeed, "internet chats" are "by their very nature recorded

8   on the computer of at least the recipient, *who may then easily transmit the communication*

9   *to anyone else who has access to the internet*." *In re Google*, 2013 WL 5423918, at *22-

10  23 (collecting cases). Plaintiff's "shock" that a written chat—half of which *he typed*—

11  would be retained as a "transcript" and potentially shared with others is not plausible.[12]

12        At best, Plaintiff's allegations that Defendant created and subsequently shared

13  transcripts of its chats "describe misuse of *a recording, not interception*," which is

14  indisputably beyond the scope of Section 631's edict against eavesdropping. *Rodriguez III*,

15  2022 WL 214552, at *2. The closest Plaintiff comes to alleging any "eavesdropping"

16  conduct is scattered allegations that Defendant was "monitoring" the chat exchange,

17  without more, buried in a string of other equally conclusory assertions regarding

18  Defendant's conduct.[13] Setting aside that these bare allegations are plainly insufficient to

19  ────────────────────

20  [12] While this Motion addresses the most obvious bases for dismissal of Plaintiff's Section 631 claim as pled, it bears noting that his *twelve* other actions asserting the same violations based on interactions with other retailers' chat features raise a number of additional

21  hurdles. For example, in his repeated use of such chat features, Plaintiff has arguably "manifested by his . . . conduct a voluntary consent to the invasive actions of" retailers storing "transcripts" of those chats. *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal.4th 1, 26

22  (1994). And even accepting Plaintiff's implausible contention that he was unaware chat transcripts were being "created" in all those visits, he cannot now obtain injunctive relief because to do so, he "must show he faces a real and immediate threat of repeated injury"

23  in the future. *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014). In the wake of his thirteen lawsuits and admitted awareness the chats are

24  retained, Plaintiff can hardly claim an injury if he returns to initiate another chat.

25  [13] *See, e.g.*, Compl. ¶ 10 ("Defendant covertly monitors, records, and creates secret

26  transcripts of all communication through the chat feature on its website"); ¶ 15 ("Defendant did not inform Plaintiff, or any of the Class Members, that Defendant was secretly

27  monitoring, recording, and sharing their communications"); ¶ 16 ("Defendant did not obtain Plaintiff's or the Class Members' consent to intercepting, monitoring, recording,

28  and sharing the electronic communications with the Website"); ¶ 17 ("Plaintiff and Class Members did not know at the time of the communications that Defendant was secretly

1    put Defendant on notice of its claim, Plaintiff consistently alleges in each that only

2    *Defendant* was "monitoring" the communication—not a third party. (*See supra* n. 13.)

3    Thus, Plaintiff fails to state an "eavesdropping" claim under its Section 631 as pled.

4    **II.    DEFENDANT CANNOT BE LIABLE UNDER SECTION 631 AS IT WAS A
         PARTY TO THE COMMUNICATION WHO ALLEGEDLY "CREATED"**

5    **AND THEN SHARED TRANSCRIPTS OF THAT COMMUNICATION**

6          Assuming, contrary to law, that retaining and sharing a transcript of a chat in which

7    Plaintiff knowingly participated is somehow "wiretapping," both Section 631 and 18

8    U.S.C. § 2511 ("Wiretap Act") "contain an exemption from liability for a person who is a

9    'party' to the communication, whether acting under the color of law or not." *In re*

10   *Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606-07 (9th Cir. 2020). "Courts

11   perform the same analysis for both [statutes] regarding the party exemption." *Id*. at 607.

12   **A.    The Law Is Clear That A Party To An Electronic Communication
         May Share That Communication With A Third Party After The**

13   **Fact Without Violating Either The Wiretap Act Or Section 631**

14         Both California federal and state courts have long held that a party to a conversation

15   cannot be liable under Section 631 for "recording" that conversation, and then sharing that

16   "recording" with others. For example, the court in *Rogers* found no violation of Section

17   631 when a city information officer had the phone company install a "tape recorder jack"

18   on his phone so that he could record conversations and "relay parts of [those]

19   conversations . . . to local radio stations for broadcast." 52 Cal.App.3d at 897.

20         In *Crowley v. CyberSource Corp.*, 166 F.Supp.2d 1263 (N.D. Cal. 2001), plaintiff

21   alleged "he went to Amazon's web site to purchase goods, and gave Amazon" personal

22   and payment information, which "Amazon then transmitted . . . to CyberSource, a company

23   that verifies the identity of a person making an online purchase." *Id*. at 1265. The court

24

25   intercepting, monitoring, recording, and sharing the electronic communications."); ¶ 20
     ("Whether Defendant caused Plaintiff's and the Class's electronic communications with
26   the Website to be recorded, intercepted and/or monitored"); ¶ 21 ("As a person who visited
     Defendant's Website and whose electronic communication was recorded, intercepted and
27   monitored, Plaintiff is asserting claims that are typical to the Class"); ¶ 29 ("Plaintiff and
     Class Members did not consent to . . . Defendant's intentional access, interception,
28   recording, monitoring, reading, learning and collection of Plaintiff and Class Members'
     electronic communications with the Website").

dismissed Wiretap Act claims because "Amazon merely received the information transferred to it by Crowley, *an act without which there would be no transfer*" and "*acted as no more than the second party to a communication*." *Id*. at 1269. "This is not an interception as defined by the Wiretap Act." *Id*. The court noted that the argument "would result in an untenable result," because "[h]olding that Amazon*, by receiving an e-mail, intercepted a communication within the meaning of the Wiretap Act would be akin to holding that one who picks up a telephone to receive a call has intercepted a communication and must seek safety in an exemption to the Wiretap Act*." *Id*.[14]

### B.  Plaintiff's Vague But Sensational Allegations Of Secret Transcripts Defendant "Created" And Sneaked To Third Parties Are Unavailing

Here, Plaintiff admits he *only* "*communicated with an employee of Defendant*," and *only* Defendant created transcripts of the chats and then shared them with third parties, ending the analysis. (Compl. ¶ 14.) Notably, and fatally, no allegation suggests Defendant shared the chat "transcript" simultaneously, or contemporaneously, or in "real time" as it was "created" by Defendant. Much like Plaintiff's bare allegation of "monitoring," the gratuitous appearance of "transmit" twice in the Complaint does not suggest any third parties received the transcript as it was being created. (*See id*. ¶¶ 12, 27.)

To the contrary, the allegation that "Defendant secretly creates transcripts of those conversations *and transmits them to and shares them* with third parties" pleads the opposite: that once the transcript is created, it is then "transmit[ted]" and "share[d] with

---

[14] *See also Brodsky v. Apple Inc.*, 445 F.Supp.3d 110, 126-27 (N.D. Cal. 2020) (dismissing Section 631 claim where allegations "confirm that the only communications that [p]laintiffs argue Apple 'intercepted' are [p]laintiffs' communications to Apple," and "Apple cannot intercept communications to which Apple is already a party"); *Marsh v. Zaazoom Sols., LLC*, 2012 WL 952226, at *17-18 (N.D. Cal. Mar. 20, 2012) (dismissing Wiretap Act claim without leave to amend because "no defendant in this action acquired the information by capturing the transmission of information that was *otherwise in the process of being communicated to another party*," and "[d]efendants did not stop, seize, or interrupt a communication in progress before arrival to its intended destination," but were "the intended recipients"); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *8 (N.D. Cal. Mar. 26, 2013) (dismissing Wiretap Act claim alleging Pandora shared personal identifying information provided by plaintiff with third party advertising libraries because the statute "permits a person or entity *to divulge a communication when the communication was to that person or entity*" and "[b]ecause Yunker expressly alleges that he communicated his PII to Pandora, the Court concludes that Yunker fails to state a claim").

1  others." (*Id.* ¶ 12.) *See Rodriguez III*, 2022 WL 214552, at *1-2 (dismissing Section 631

2  claim which "was previously dismissed because it failed to aver simultaneous interception"

3  because "[p]laintiffs' amendments cannot mask that their theory is essentially *one of*

4  *recording and then transmission*, not interception"). And Plaintiff's allegation that

5  "Defendant willfully . . . allowed the contents of electronic communications of visitors to

6  its website *to be accessed* by third parties" does not allege a simultaneous transmission

7  either—indeed, its use of the passive voice implies the converse. (Compl. ¶ 28.)

8      Thus, even if Section 631's protections extended to the creation of and subsequent

9  sharing of transcripts of chat messages in which Plaintiff and Defendant participated—and

10  they do not—Plaintiff did not and cannot overcome the party exception to that statute.

11  **III.   PLAINTIFF'S ALLEGATIONS PRECLUDE ANY SHOWING**

12  **OF AN INTERCEPTION OF A COMMUNICATION IN TRANSIT, AND THUS PLAINTIFF'S CLAIM MUST BE DISMISSED**

13      To state a claim under Section 631, a plaintiff must include plausible allegations that

14  the defendant "read or learned the contents of a communication while the communication

15  was *in transit*, or *in the process of being* sent or received." *Mastel v. Miniclip SA*, 549

16  F.Supp.3d 1129, 1136 (E.D. Cal. 2021) (first emphasis in original). Ninth Circuit case law

17  "reinforces . . . that the crucial question . . . is whether [plaintiff] has plausibly alleged that

18  [defendant] read one of his communications while it was still in transit, i.e., *before it*

19  *reached its intended recipient*." *Id.* at 1137 (dismissing Section 631 claim).

20      **A.   Pre-Internet, California State Courts Long Held That**

21  **Transcribing A Telephone Communication And Retaining It In Written Form Is *Not* Interception Under Section 631**

22      Section 631 "prohibits three ways of obtaining information being sent over a

23  telephone or telegraph line: (1) tapping the line, (2) making an unauthorized connection

24  with the line, and (3) reading, attempting to read, or learning the contents or meaning of a

25  message while the message is in transit." *Rogers*, 52 Cal.App.3d at 898. "As to the third

26  method, a recording made by a participant *does not intercept the message while it is in*

27  *transit*; the recording rather *transcribes the message as it is being received*." *Id.*

28      In *People v. Wilson*, 17 Cal.App.3d 598 (1971), the defendant sought to suppress

15

1   written messages taken by an answering service "from persons to whom defendant gave

2   the telephone number of the . . . service" and "*reduced to writing* on a form identified as a

3   'green slip.'" *Id.* at 600. "The answering service *retained* the green slips which noted *the*

4   *messages received*, when they were received, and when they were conveyed to the

5   subscriber." *Id*. Defendant sought to suppress the green slips which had been introduced in

6   evidence at his trial for conspiracy to transport marijuana. *See id.* at 600-01. The *Wilson*

7   court held defendant's reliance on Section 631 in "support of his contention divulgence of

8   the communications . . . was unlawful" was "misplaced" because "within the meaning of

9   [Section 631] *the information received* by the answering service *was not obtained while*

10  *the communications . . .* were in transit or passing over any wire, but *was obtained after*

11  *and not 'while' they were in transit or passing 'over' the telephone wire.*" *Id.* at 602-03.[15]

12      Thus, under settled California law, Plaintiff's claims that Defendant created and

13  stored a transcript of a chat is by definition not an interception under Section 631.

14  **B.    Ninth Circuit Courts Consistently Hold That Once An Electronic**
        **Message Has Been Received, Contemporaneous "Interception"**
15      **Is No Longer Possible Under The Wiretap Act And Section 631**

16      Like Section 631, "[t]he Wiretap Act makes it an offense to 'intentionally intercept

17  any wire, oral, or electronic communication.'" *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d

18  868, 876 (9th Cir. 2002) (quoting 18 U.S.C. § 2511(1)(a)); *see also Bradley v. Google,*

19  *Inc.*, 2006 WL 3798134, at *5-7 (N.D. Cal. Dec. 22, 2006) ("Like its federal counterpart,

20  [Section 631] require[s] the *interception* of an electronic communication," dismissing

21  Wiretap Act and Section 631 claims without leave to amend where plaintiff alleged Google

22  deleted messages saved to her Gmail account, which is "not actionable" as unlawful

23  interception under either wiretapping statute) (emphasis in original). "The analysis for a

24  violation of CIPA is the same as that under the federal Wiretap Act." *Underhill v.*

25  *Kornblum*, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017); *see also Sunbelt Rentals,*

26  ──────────────────────────
27  [15] *See also People v. Carella*, 191 Cal.App.2d 115, 137-38 (1961) (holding "no interception
        occurred" under predecessor statutes to Wiretap Act and Section 631 where stenographer
        from DA's office answered telephone at bookmaker's home and created transcripts of 45
28  calls: "no wire tapping or other connecting method was used" and "messages sent were
        received in the ordinary course *over the means of transmission provided*").

1  *Inc. v. Victor*, 43 F.Supp.3d 1026, 1033 (N.D. Cal. 2014) (same); *NovelPoster v. Javitch*

2  *Canfield Grp.*, 140 F.Supp.3d 938, 954 (N.D. Cal. 2014) (same, collecting cases).

3  　　The Ninth Circuit construes the term "intercept" narrowly to mean the

4  communication "*must be acquired during transmission, not while it is in electronic*

5  *storage.*" *Konop*, 302 F.3d at 878 (holding supervisor's unauthorized access of password

6  protected website to read bulletin board postings by employee critical of company did not

7  violate Wiretap Act). "Even if the storage phase is transitory and lasts only a few seconds,

8  it is still considered 'electronic storage . . . .'" *Bunnell v. Motion Picture Ass'n of Am.*, 567

9  F.Supp.2d 1148, 1152 (C.D. Cal. 2007).[16]

10  　　While "[o]ther circuits have elevated the *contemporaneous* requirement over the

11  particulars of whether an [electronic communication] is in *transmission*, . . . the Ninth

12  Circuit has made clear that transmission is the critical inquiry." *Lindsay-Stern v.*

13  *Garamszegi*, 2016 WL 11745948, at *5 (C.D. Cal. Oct. 13, 2016) (emphases in original).[17]

14  And interception cannot occur unless defendants somehow "halt the transmission of the

15  messages to their intended recipients." *NovelPoster*, 140 F.Supp.3d at 952 (quoting *Exec.*

16  *Sec. Mgmt., Inc. v. Dahl*, 830 F.Supp.2d 883, 904 (C.D. Cal. 2011)).

17  　　Ninth Circuit and district court "[c]aselaw generally stands for the proposition that

18  once an [electronic communication] has been received by the destination server, a

19  communication becomes 'stored' *and contemporaneous interception is no longer*

20

---

21  [16] "The Ninth Circuit has rejected the argument that 'intercept' must apply to electronic communications in storage because storage is at some point necessary for the transmission

22  of electronic communication." *Id.* Specifically, *Konop* observed it is irrelevant that "electronic communications are stored at various junctures in various computers between

23  the time the sender types the message and the recipient reads it," and "the transmission time . . . is very short" because they travel "at the speed of light." 302 F.3d at 878 n.6.

24  Thus, "the Ninth Circuit has determined . . . the amount of time a message is in storage is immaterial," and an alleged wiretapper "*could have received the forwarded [electronic]*

25  *messages in milliseconds or days, it makes no difference* . . . his receipt of the messages does not constitute an 'interception.'" *Bunnell*, 567 F.Supp.2d at 1154.

26  [17] *See also Theofel v. Farey-Jones*, 359 F.3d 1066, 1077 (9th Cir. 2004) (affirming dismissal of Wiretap Act claims arising from access to unread emails because "the Act

27  applies only to 'acquisition *contemporaneous* with transmission'") (quoting *Konop*, 302 F.3d at 878); *NovelPoster*, 140 F.Supp.3d at 953 ("The Ninth Circuit and other courts have

28  consistently explained that any 'interception' under the meaning of the statute must occur *during transmission of the communication*.")

*possible.*" *Lindsay-Stern*, 2016 WL 11745948, at *4.[18] Because transmission of electronic messages is "virtually instantaneous," and actionable "interception" of an electronic message can only occur in the milliseconds between when the message is sent and when it arrives at its destination, the Wiretap Act and Section 631 have "limited" application to electronic communications. *Id.*; *see also NovelPoster*, 140 F.Supp.3d at 951.

### C. Ninth Circuit District Courts Dismiss Federal And State Wiretapping Claims Based On Electronic Communications Like The Chat Here

Courts routinely follow this line of cases to conclude that any action that happens *after an electronic communication is received at its destination*—whether it be email, text message or, specifically, a chat message—is neither intercepted nor in transit and therefore not violative of Section 631. For example, "under well-settled case law, as well as a reading of the statute and the ordinary meaning of the word 'intercept,'" forwarding copies of electronic messages once received is not an interception. *Bunnell*, 567 F.Supp.2d at 1154.[19]

---

[18] *See also Kung v. Chow*, 2014 WL 12571416, at *3 (C.D. Cal. Sept. 19, 2014) ("Only 'interception' of an [electronic message] *en route* to its destination falls under" Wiretap Act: "[a] qualifying 'intercept' . . . can only occur where an [electronic] communication is accessed at some point *between the time the communication is sent and the time it is received by the destination server*."); *Crowley*, 166 F.Supp.2d at 1269 (in Wiretap Act analysis, noting "Crowley transmitted this information via e-mail over the Internet, *and Amazon received the information, effectively completing the communication*.")

[19] *See also id.* at 1150, 1154 (finding no interception where hacker secretly configured software of former employer so "every incoming and outgoing email message would also be copied and forwarded to his anonymous Google email account," because hacker "did not *stop or seize any of the messages* that were forwarded to him" and his "actions *did not halt the transmission of the messages to their intended recipients*"); *Underhill*, 2017 WL 2869734, at *1, *4-5 (refusing to grant default judgment on Wiretap Act and Section 631 claims where defendant allegedly accessed plaintiff's emails and employed a "filter" to alert defendant's phone when certain keywords appeared, because plaintiff "ultimately fails to allege sufficient facts to demonstrate that [d]efendant acquired [his] emails contemporaneously during their transmission, as opposed to simply accessing [his] emails after they were stored on [his] email server," that "[n]otwithstanding Underhill's limited detail regarding how the 'filter' operated, *i.e. whether it in fact forwarded Underhill's emails to [d]efendant Kornblum's phone and how soon thereafter, it would be immaterial to the viability of his claim*"); *NovelPoster*, 140 F.Supp.3d at 952-54 (granting defendants' motion for judgment on the pleadings on Wiretap Act and Section 631 claims for failure to allege interception of emails, even though plaintiff alleged "the defendants wrongfully accessed the accounts at issue and, by changing passwords, prevented NovelPoster from accessing certain ones," because "reading emails *that have already been received* . . . does not constitute 'interception' under the statute," and "*any subsequent reading or forwarding of those emails by the defendants does not constitute an illegal interception.*"); *Exec. Sec. Mgmt.* 830 F.Supp.2d at 904-05 (granting summary judgment on Wiretap Act claim arising from emails allegedly secretly copied and forwarded to third parties because "those facts are insufficient to demonstrate an 'interception' under the narrow reading of the Wiretap

The *Adler* decision from this District is instructive. There, the defendant app allowed celebrities "to communicate directly with their fans or followers through SMS text messaging" by providing the fans with a "Community number" to text a message to; the platform would then provide the message to the celebrity so the celebrity could respond directly. 2021 WL 4805435, at *1-2. Noting it was undisputed that "[d]efendant could not access the contents of the text messages at issue *until they were received at the celebrity's Community number*," the court granted defendant's motion to dismiss Wiretap Act and Section 631 claims without leave to amend. *Id*. at *3-4.

The *Adler* court rejected plaintiff's contention that defendant "hijacked" the communication to the celebrity before it reached the intended recipient as not in keeping with "the correct interpretation of 'intercept,' which *Konop* read to have a 'narrow definition' limited to 'acquisition contemporaneous with transmission.'" *Id*. at *3. "[T]his Court does not interpret 'intercept' to broadly encompass the acquisition of communications any time before the intended recipient gains access to those communications." *Id*. "As alleged, [p]laintiffs sent text messages to a celebrity's Community number, and the device paired with that number received the information, *effectively completing the communication*." *Id*. at *4. "Defendant's alleged access of that communication *upon the completion of its transmission to the proper number* is not the sort of act contemplated by federal law." *Id*.

The *Adler* court likewise dismissed Section 631 claims because "[p]laintiffs contend [d]efendant attempted to learn the contents of their text messages while those messages were 'in transit,' but that argument fails for the same reason it failed under the federal Wiretap Act claim." *Id*. Significantly, the court rejected plaintiff's reliance on the language of Section 631 "prohibit[ing] the nonconsensual access of communications '*received* at any place within this state'" as "an interpretation of extraordinary breadth," because "that provision imposes liability for accessing a message '*being* sent from, or received' in

Act's use of that word" and noting the *Bunnell* court "*specifically rejected the plaintiffs' email-forwarding theory* under the Wiretap Act").

California." *Id.* (emphases in original). "[T]here is no plausible allegation that [d]efendant acted to learn the contents of the messages while they were, in a technical sense, *in transit or in the process of being received*." *Id.*

In *Sunbelt Rentals*, a terminated employee asserted wiretap counterclaims in a suit brought by his former employer, alleging that because he failed to unlink his former work iPhone from his personal Apple account, his former employer accessed his new work iPhone and "invaded [his] privacy rights by accessing, intercepting, monitoring, reviewing, storing and using [his] post-employment private electronic data and electronic communications (including but not limited to *text messages sent and received from Victor's [new employer] issued iPhone*) without . . . consent." 43 F.Supp.3d at 1029. The court dismissed the Wiretap Act and Section 631 counterclaims, holding although "Victor vaguely alleges that Sunbelt intercepted his electronic communications, i.e., his text messages, he provides no facts to support this otherwise conclusory assertion" and "[i]f anything, the pleadings suggest that Sunbelt read Victor's text messages *after they were sent and received on the Sunbelt iPhone*, which is insufficient to demonstrate intentional interception under the Wiretap Act" and Section 631. *Id.* at 1031, 1033.

The court granted leave to amend, but noted "[g]iven the almost instantaneous transmission of text messages, *the window during which an interception may occur is exceedingly narrow*," and "it is doubtful that Victor will be able to allege facts, consistent with [FRCP] 11, to state a claim for violation" of the wiretapping statutes. *Id.* at 1031.[20]

---

[20] *See also Rodriguez v. Google LLC*, 2021 WL 6621070, at *4 (N.D. Cal. Aug. 18, 2021) (*Rodriguez II*) (dismissing Section 631 claim, holding "[t]he problem for plaintiffs is with the phrase 'while the same is in transit': whereas the FAC alleged Google simultaneously copied and acquired users' third-party app communications, the SAC replaces that specific simultaneity *with simultaneity between post-copying conduct and the data's transmission to Google*" which meant "[t]he operative complaint, as plaintiffs have drafted it, does not allege Google's interception of user communications 'while the same are in transit' to third-party apps"); *Hernandez v. Path, Inc.*, 2012 WL 5194120, at *3, *5 (N.D. Cal. Oct. 19, 2012) (dismissing Wiretap Act and Section 631 claims: "Plaintiff fails to allege facts to support an inference that Path 'intercepted' a 'communication' on a third-party social network [s]ite *contemporaneous with, and not after, the communication was posted on the [site]*"); *Marsh*, 2012 WL 952226, at *17 ("Plaintiffs' creative application of the Wiretap Act does not comport with its plain meaning" as "the receipt of information intentionally transmitted from Plaintiffs to Defendants'... Websites is not 'interception'").

1    Courts have applied this same analysis explicitly to chat messages. In *Rosenow*, the

2    plaintiff alleged "Yahoo knowingly used an algorithm to intercept and scan [p]laintiff's

3    incoming chat messages for content during transit and before placing them in electronic

4    storage," and then "'reviewed the contents of [p]laintiff's electronic communications—

5    including emails, messages, *and chats*' and provided the contents of [p]laintiff's

6    communications to" a third party. 2020 WL 1984062, at *7. The court dismissed the

7    Wiretap Act claim, holding the "allegation that Yahoo intercepted Rosenow's

8    communications during transit are conclusory" and that plaintiff "fails to allege facts that

9    support an inference that Yahoo 'captured or redirected' the contents of Rosenow's

10   communications while in transit" or "that the contents of the communications alleged in

11   the Complaint were 'intercepted' by Yahoo within the meaning of the Wiretap Act." *Id*.

12 | 13   **D.    Plaintiff's Claim Fails Because He Did Not And Cannot Allege The Chat Message Was In Transit Or Intercepted Before The Transcripts Were "Created"**

14   Here, like in *Adler*, "there is no plausible allegation that Defendant acted to learn the

15   contents of the messages while they were, in a technical sense, *in transit or in the process*

16   *of being received*," but rather, that Defendant's employee created a transcript of "that

17   communication *upon the completion of its transmission*." 2021 WL 4805435, at *4. The

18   only time the phrase "in transit" appears in the Complaint is when Plaintiff reproduces the

19   text of Section 631 in an allegation. (*See* Compl. ¶ 24.) And again, scattering (entirely

20   conclusory) variations of the word "intercept" six times throughout the Complaint does not

21   state a claim. (*See id*. ¶ 27 & *supra* n.13 ("interception" allegations).)

22   Dismissing a Section 631 claim, the *Rodriguez III* court rejected plaintiffs' reliance

23   on their allegations that Google "intercepted" their data, noting "[t]he very first sentence

24   of each iteration of the complaint has used 'intercepted'" and "[s]ome form of it appears

25   between 69 and 86 times in each of the various complaints." 2022 WL 214552, at *2.[21]

26

27 | 28   [21] *See also Garcia v. Haskett*, 2006 WL 1821232, at *4 (N.D. Cal. June 30, 2006) (dismissing Wiretap Act claims with prejudice where "conclusory statement" "unread email was intercepted by [d]efendant while 'still in transit to [p]laintiff's email box'" insufficient to allege interception, particularly as "the remainder of [p]laintiff's allegations suggests that the reverse is true"); *Quigley*, 2018 WL 7204066, at *4 (dismissing Wiretap

21

"*Using the word 'intercept' repeatedly is simply not enough* without the addition of specific facts that make it plausible Google is intercepting their data in transit." *Id.*

Plaintiff does not allege that Defendant created a transcript of the chat *while* his communications were "in transit" or "being sent from" Plaintiff. Nor could he—it is simply implausible that Defendant's employee could create a transcript of a message *that had yet to arrive at its destination and appear on their screen*. Like in *Rosenow*, *Adler*, and *Sunbelt Rentals*, once Plaintiff's electronic message appeared, any possibility of interception ceased to exist. In short, Plaintiff cannot state a Section 631 claim based on the alleged creation of a transcript of a chat, let alone sharing of that transcript after the fact.

## IV.   BECAUSE PLAINTIFF'S CURRENT ALLEGATIONS FORECLOSE ANY AMENDMENT UNDER SECTION 631, AND PLAINTIFF CANNOT ASSERT A SECTION 632 CLAIM AS A MATTER OF LAW, PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

"Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). "Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment." *Marsh*, 2012 WL 952226, at *11; *see also Bradley*, 2006 WL 3798134, at *7 ("Leave to amend need not be granted when an amendment would be futile.").

After holding access to a text message "upon the completion of its transmission to the proper number" was not an "interception" under the Wiretap Act and Section 631, the *Adler* court held "[i]t appears clear that these deficiencies cannot be cured." 2021 WL 4805435, at *4. The court rejected plaintiff's offer of "more detailed allegations about the process by which the text messages were processed by Defendant's platform—in particular that the messages were received but held in abeyance," because "these additional allegations, if permitted, would only confirm that Defendant did not 'intercept' these

Act and Section 631 claims where plaintiff "has not alleged an interception of his communications while 'in transit'" or "allege[d] with particularity *how or when any defendant became aware of his communications*"; "vague references" to "surreptitious surveillance" insufficient to "support an inference that an 'interception' took place").

1  communications or access them in transit; instead, Defendant allegedly accessed the

2  messages *after they were received at the number where they were sent*." *Id*. "Because

3  amendment would be futile," the court dismissed both claims without leave to amend. *Id*.

4        The *Marsh* court likewise dismissed Wiretap Act claims without leave to amend

5  where plaintiffs alleged they submitted personal and banking information to payday loan

6  websites operated by defendants, and defendants used that information to create remotely

7  created checks to pay for coupon services. *See* 2012 WL 952226, at *2. In rejecting

8  plaintiffs' allegations that defendants "intercepted" their personal information in order to

9  create the checks, the court held "no defendant in this action acquired the information by

10  capturing the transmission of information that was otherwise in the process of being

11  communicated to another party," or "stop[ped], seize[d], or interrupt[ed] a communication

12  in progress before arrival to its intended destination." *Id*. at *17. Because defendants "were

13  the intended recipients," "the receipt of information intentionally transmitted from

14  [p]laintiffs to [defendants'] Websites is not 'interception.'" *Id*.

15        Here, Plaintiff's claim cannot be "saved by amendment" because he cannot allege,

16  in good faith and in compliance with his obligations under FRCP 11, that Defendant (1)

17  was *not* the intended recipient of his chat communications, (2) did *not* participate in the

18  purportedly "wiretapped" chat, and/or (3) did *not* "create" the transcript of those chats.

19  (Compl. at Introduction & ¶¶ 12, 14.) *See Bradley*, 2006 WL 3798134 at *7 ("Now that

20  Bradley has alleged that defendants deleted her stored emails, she could not truthfully

21  allege that they intercepted those communications," and "will not be allowed to amend

22  these claims, and they will be stricken from her complaint.").

23        Plaintiff also cannot truthfully allege, without contradicting his Complaint, that

24  Defendant "intercepted" his chat communications by somehow creating transcripts of the

25  chat or sharing those transcripts with third parties *before* transmission of the messages was

26  complete. Indeed, as shown, Plaintiff expressly alleges the opposite: that "Defendant

27  secretly creates transcripts of those conversations"—which law and logic dictates cannot

28  occur until *after* the electronic communication was received by Defendant—and

23

32

"transmits" and "shares" *those transcripts* with third parties eGain and Webex. (Compl. ¶¶ 11, 12.) By definition, the transcripts that were allegedly created and shared cannot come into existence until after the communication was received by Defendant. Thus, because Plaintiff will be "unable to cure the defect by amendment," leave to amend is not warranted here. *Marsh*, 2012 WL 952226, at *11.

Plaintiff also cannot amend his complaint to add a Section 632 "recording" claim, because his chat with Defendant is not a "confidential communication" protected by that section as a matter of law. *See Rogers*, 52 Cal.App.3d at 899-900 (affirming denial of leave to amend to add Section 632 claim in place of dismissed Section 631 claim: "appellant has not shown how he could allege that a communication with a public employee, concerning public business such as the use of the council chambers for a meeting, could be confidential within the meaning of the statute"). Section 632 defines "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto . . . or in any other circumstance *in which the parties to the communication may reasonably expect that the communication may be overheard or recorded*." Cal. Pen. Code § 632(c).

California federal and state courts unanimously agree that under California law, "individuals cannot have a reasonable expectation that their online communications will not be recorded" because "*[e]veryone who uses a computer knows that . . . participants in chat rooms can print the . . . chat logs and share them with whoever they please, forward them or otherwise send them to others*." *In re Google*, 2013 WL 5423918, at *22-23 (collecting cases) (dismissing Section 632 claim arising from purported interceptions of emails where "[p]laintiffs have not alleged facts that lead to the plausible inference that the communication was not being recorded because email by its very nature is more similar *to internet chats*" which are "*by their very nature recorded on the computer of at least the recipient, who may then easily transmit the communication to anyone else who has access to the internet or print the communications*"). The *Nakai* court likewise affirmed a trial court determination that "no person with knowledge or awareness of the technology as it

pertains to the use of email and text messaging could have any possible expectation of privacy" in an internet chat and *"it would be illogical for anyone to assume that an internet chat dialogue is a private communication that is entitled to privacy in any capacity,"* and held "defendant could reasonably expect that the [chat] may be overheard or recorded" because "defendant was communicating online with a person whom he did not know" and "[c]omputers that are connected to the internet are capable of instantaneously sending writings and photographs to thousands of people." 183 Cal.App.4th at 515, 518.[22]

Here, Plaintiff cannot take a position contradictory to his allegations, which center entirely on the purported "recording" and sharing of an electronic chat. Because numerous federal and state courts have held that such chats are *not* protected by Section 632, Plaintiff's "amended complaint would also be subject to dismissal." *Steckman* 143 F.3d at 1298, and leave to amend should not be granted here.

## CONCLUSION

For these reasons, the Court should dismiss the Complaint with prejudice.

DATED: November 14, 2022

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____/s/Jason D. Russell_____
JASON D. RUSSELL
Attorneys for Defendant
CINMAR, LLC

---

[22] *See also Rodriguez v. Google LLC,* 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (*Rodriguez I*) (dismissing Section 632 claim alleging Google "recorded" users' communications with third-party apps: "California courts have developed a presumption that internet communications do not reasonably give rise to" an "objectively reasonable expectation that the conversation is not being overheard or recorded" and plaintiff must, but did not, "plead unique, definite circumstances rebutting California's presumption against online confidentiality"); *Quigley,* 2018 WL 7204066, at *4 (same, plaintiff's "claims concern the alleged monitoring of his electronic, Internet-based communications" which "are not 'confidential' within the meaning of section 632, because such communications can easily be shared by, for instance, the recipient(s)").