1  MICHAEL W. McTIGUE JR. (*pro hac vice* pending)
   michael.mctigue@skadden.com
2  MEREDITH C. SLAWE (*pro hac vice*)
   meredith.slawe@skadden.com
3  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   One Manhattan West
4  New York, New York 10001
   Telephone: (212) 735-3000
5  Facsimile: (212) 735-2000

6  JASON D. RUSSELL (SBN 169219)
   jason.russell@skadden.com
7  HILLARY A. HAMILTON (SBN 218233)
   hillary.hamilton@skadden.com
8  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
9  Los Angeles, California 90071-3144
   Telephone:(213) 687-5000
10 Facsimile: (213) 687-5600

11 Attorneys for Defendant
   Cinmar, LLC

12

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15

16 | JOSE LICEA and SONYA | ) CASE NO.: 2:22-cv-06454-MWF-JEM
   | VALENZUELA, individually and on | )
   | behalf of all others similarly situated, | )  **DEFENDANT CINMAR, LLC'S**
17 |                              | )  **NOTICE OF MOTION AND MOTION**
   |                              | )  **TO DISMISS FIRST AMENDED CLASS**
18 |            Plaintiffs, | )  **ACTION COMPLAINT;**
   |                              | )  **MEMORANDUM OF POINTS AND**
19 |        v.                    | )  **AUTHORITIES IN SUPPORT**
   |                              | )  **THEREOF;**
20 | CINMAR, LLC, a Delaware limited | )
   | liability company, and DOES 1 | )  **FILED UNDER SEPARATE COVER:**
21 | through 25, inclusive, | )
   |                              | )  **(1) DECLARATIONS OF HILLARY A.**
22 |            Defendants. | )  **HAMILTON AND CAMILLA BURLING**
   |                              | )  **IN SUPPORT;**
23 |                              | )
   |                              | )  **(2) REQUEST FOR JUDICIAL NOTICE**
24 |                              | )  **AND NOTICE OF DOCUMENTS**
   |                              | )  **INCORPORATED BY REFERENCE;**
25 |                              | )  **and**
   |                              | )
26 |                              | )  **(3) [PROPOSED] ORDERS.**
   |                              | )
27 |                              | )  Judge: Hon. Michael W. Fitzgerald
   |                              | )  Courtroom: 5A
28 |                              | )  Date: January 30, 2023
   |                              | )  Time: 10:00 a.m.

1

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 30, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5A, located at 350 West First Street, Los Angeles, California 90012, Defendant Cinmar, LLC ("Defendant") will, and hereby does, present for hearing by the Court, the Honorable Michael W. Fitzgerald presiding, this Motion to Dismiss First Amended Class Action Complaint filed by Plaintiffs Jose Licea and Sonya Valenzuela ("Motion").

This Motion is made pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6). The Motion is based on this notice, the memorandum of points and authorities that follows, the Request for Judicial Notice and Notice of Documents Incorporated by Reference, and the Declarations of Hillary Hamilton and Camilla Burling filed in support, the files and records in this action, the arguments of counsel, and any other items the Court may consider.

This Motion is made following the conference of counsel pursuant to Civil Local Rule 7-3, which took place on December 12, 2022.

DATED: December 19, 2022

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____/s/Jason D. Russell_____
JASON D. RUSSELL
Attorneys for Defendant
CINMAR, LLC

2

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................ iv

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ......................................................................................................... 4

PLAINTIFFS' AMENDED ALLEGATIONS ......................................................... 6

LEGAL STANDARD ................................................................................................ 8

ARGUMENT .............................................................................................................. 9

I.   PLAINTIFFS' ALLEGATIONS PRECLUDE ANY SHOWING OF AN INTERCEPTION OF A COMMUNICATION IN TRANSIT, AND THUS PLAINTIFFS' SECTION 631 CLAIM MUST BE DISMISSED ......................................................................................... 9

    A.   Pre-Internet, California State Courts Long Held That Transcribing A Telephone Communication And Retaining It In Written Form Is *Not* Interception Under Section 631 ..................... 9

    B.   Ninth Circuit Courts Consistently Hold That Once An Electronic Message Has Been Received, Contemporaneous "Interception" Is No Longer Possible Under The Wiretap Act And Section 631 .............................................................................. 10

    C.   Ninth Circuit District Courts Dismiss Federal And State Wiretapping Claims Based On Electronic Communications Like The Chats Here .................................................................... 12

    D.   Plaintiffs' Claim Fails Because They Did Not And Cannot Allege Defendant Or Third Parties Recorded Or Eavesdropped On The Chat Messages While They Were In Transit To Defendant's Website ...................................................................... 15

II.  DEFENDANT CANNOT BE LIABLE UNDER SECTION 631 AS A PARTY TO THE COMMUNICATION WHO ALLEGEDLY "CREATED" AND HIRED THIRD PARTIES TO OBSERVE AND STORE TRANSCRIPTS OF THAT COMMUNICATION ................... 16

III. DEFENDANT IS NOT LIABLE UNDER SECTION 632.7 FOR "RECORDING" WRITTEN COMMUNICATIONS WITH ITS WEBSITE ....................................................................................... 18

    A.   Section 632.7 Exclusively Applies to Communications Between Two Telephones, Which Plaintiffs Have Not Alleged Here .......... 18

        1.   The Plain Text And Legislative History Of Section 632.7 Indicate It Applies Exclusively To Communications Between Telephones, Not Written Communications With Websites .................................................................... 18

        2.    Plaintiffs' Section 632.7 Claim Must Be Dismissed Since They Do Not Allege Facts Suggesting The Chat Was Between Telephones ........................................................20

   B.   In Sending Written Messages Necessarily "Recorded" By The Recipient, Plaintiffs Consented To That "Recording" ...................22

IV.   BECAUSE PLAINTIFFS HAVE TRIED AND FAILED TO AMEND THEIR SECTION 631 CLAIMS, AND CANNOT CURE THEIR SECTION 632.7 CLAIM, THEIR CLAIMS SHOULD BE DISMISSED WITH PREJUDICE .........................................................24

CONCLUSION ....................................................................................................25

CERTIFICATE OF COMPLIANCE........................................................................26

# TABLE OF AUTHORITIES

*Adler v. Community.com, Inc.*,
    No.: 2:21-cv-02416-SB-JPR,
    2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ..................................................*passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................. 8, 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................... 8

*Bradley v. Google, Inc.*,
    No. C 06-05289 WHA,
    2006 WL 3798134 (N.D. Cal. Dec. 22, 2006) ...................................... 10

*Brodsky v. Apple Inc.*,
    445 F.Supp.3d 110 (N.D. Cal. 2020)................................................ 17, 25

*Bunnell v. Motion Picture Ass'n of America*,
    567 F.Supp.2d 1148 (C.D. Cal. 2007) .............................................. 11, 12

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ............................................................. 24

*Calcano v. Swarovski North America Ltd.*,
    36 F.4th 68 (2d Cir. 2022) ..................................................................... 5

*In re Carrier IQ, Inc.*,
    78 F.Supp.3d 1051 (N.D. Cal. 2015)..................................................... 12

*Crowley v. CyberSource Corp.*,
    166 F.Supp.2d 1263 (N.D. Cal. 2001)............................................. 11, 17

*Dean v. United States*,
    556 U.S. 568 (2009)............................................................................. 18

*Domondon v. First Franklin*,
    No. C 06-05289 WHA,
    2016 WL 7479399 (C.D. Cal. June 23, 2016)......................................... 5

*Executive Security Management, Inc. v. Dahl*,
    830 F.Supp.2d 883 (C.D. Cal. 2011) ............................................... 11, 12

iv

*In re Facebook, Inc. Internet Tracking Litigation*,
    956 F.3d 589 (9th Cir. 2020) .................................................................... 16

*Garcia v. Haskett*,
    No. C 05-3754 CW,
    2006 WL 1821232 (N.D. Cal. June 30, 2006) .......................................... 15

*In re Google Inc.*,
    No.: 13–MD–02430–LHK,
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ......................................... 23

*Hammerling v. Google*,
    No. 21-cv-09004-CRB,
    2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ................................... 14, 25

*Hernandez v. Path, Inc.*,
    No. 12–CV–01515 YGR,
    2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) .......................................... 15

*Jang v. 1st United Bank*,
    No. 2:11–CV–02427–JAM–GGH,
    2012 WL 2959985 (E.D. Cal. July 19, 2012) ............................................. 5

*Johnson v. Ocaris Management Group Inc.*,
    No. 18-CV-24586-PCH,
    2019 WL 13235462 (S.D. Fla. May 30, 2019) ........................................... 5

*Johnson v. Ocaris Management Group Inc.*,
    No. 18-CV-24586-PCH,
    2019 WL 13235834  (S.D. Fla. Aug. 23, 2019) , *aff'd*, 9 F.4th 1300 (11th
    Cir. 2021) ................................................................................................... 5

*Knell v. FIA Card Services, N.A.*,
    No.: 12-cv-0426-AJB (WVG),
    2013 WL 12121237 (S.D. Cal. Feb. 21, 2013) ......................................... 21

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) .............................................................. 10, 11

*Kung v. Chow*,
    No.: CV 14-06857 SJO (Ex),
    2014 WL 12571416 (C.D. Cal. Sept. 19, 2014) ....................................... 11

*Lindsay-Stern v. Garamszegi*,
　　No.: SACV 14-01970-CJC(DFMx),
　　2016 WL 11745948 (C.D. Cal. Oct. 13, 2016) ................................................ 11, 12

*Marsh v. Zaazoom Solutions, LLC*,
　　No. C–11–05226–YGR,
　　2012 WL 952226 (N.D. Cal. Mar. 20, 2012) .............................................. 15, 17, 25

*Mastel v. Miniclip SA*,
　　549 F.Supp.3d 1129 (E.D. Cal. 2021) .................................................................. 9, 21

*Moledina v. Marriott International, Inc.*,
　　No. 2:22-cv-03059-SPG-JPR,
　　2022 WL 16630276 (C.D. Cal. Oct. 17, 2022) .......................................... 22, 23, 24

*Montantes v. Inventure Foods*,
　　No. CV–14–1128–MWF (RZx),
　　2014 WL 3305578 (C.D. Cal. July 2, 2014) ................................................... *passim*

*Nei Contracting & Engineering, Inc. v. Hanson Aggregates Pacific Southwest, Inc.*,
　　No. 12-cv-01685-BAS(JLB),
　　2016 WL 4886933 (S.D. Cal. Sept. 15, 2016) .................................................. 22, 23

*NovelPoster v. Javitch Canfield Group*,
　　140 F.Supp.3d 938 (N.D. Cal. 2014)............................................................... 11, 12

*People v. Arriaga*,
　　58 Cal.4th 950 (2014) ............................................................................................... 18

*People v. Black*,
　　32 Cal.3d 1 (1982) .................................................................................................... 20

*People v. Carella*,
　　191 Cal.App.2d 115 (1961) ...................................................................................... 10

*People v. Nakai*,
　　183 Cal.App.4th 499 (2010) ..................................................................................... 23

*People v. Wilson*,
　　17 Cal.App.3d 598 (1971) ........................................................................................ 10

*Quigley v. Yelp, Inc.*,
　　No. 17-cv-03771-RS,
　　2018 WL 7204066 (N.D. Cal. Jan. 22, 2018)......................................................... 9, 15

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022).................................................. 15

*Rogers v. Ulrich*,
52 Cal.App.3d 894 (1975) ...................................................... 10, 16

*Rosenow v. Facebook, Inc.*,
No.: 19-cv-1297-WQH-MDD,
2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ...................................... 8, 15

*Shayler v. 1310 PCH, LLC*,
51 F.4th 1015 (9th Cir. 2022) ...................................................... 4, 5

*Smith v. LoanMe, Inc.*,
11 Cal.5th 183 (2021) ...................................................... 19, 23

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ...................................................... 24

*Sunbelt Rentals, Inc. v. Victor*,
43 F.Supp.3d 1026 (N.D. Cal. 2014) ...................................................... 14

*Theofel v. Farey-Jones*,
359 F.3d 1066 (9th Cir. 2004) ...................................................... 11

*Torres v. Nutrisystem, Inc.*,
289 F.R.D. 587 (C.D. Cal. 2013).................................................... 23

*Turnacliff v. Westly*,
546 F.3d 1113 (9th Cir. 2008) ...................................................... 18

*Underhill v. Kornblum*,
No. 17-cv-03771-RS,
2017 WL 2869734 (S.D. Cal. Mar. 16, 2017).................................... 11, 12

*Vasquez v. State*,
45 Cal.4th 243 (2008) ...................................................... 18

*Wells Fargo Bank v. Superior Court*,
53 Cal.3d 1082 (1991) ...................................................... 18

*Yunker v. Pandora Media, Inc.*,
No. 11–CV–03113 JSW,
2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .................................... 17

8

1

**STATUTES**

2 | 18 U.S.C. §2511 ................................................................................. 10

3 | Cal. Pen. Code §631 ......................................................................... 19

4 | Cal. Pen. Code §632 ......................................................................... 19

5 | Cal. Pen. Code §632.01 .................................................................... 20

6 |
7 | Cal. Pen. Code §632.7 ........................................................... 19, 21, 24

8 | Cal. Pen. Code §633 ......................................................................... 19

9 | Cal. Pen. Code §633.02 .................................................................... 19

10 | Cal. Pen. Code §633.05 .................................................................... 19

11 | Cal. Pen. Code §633.5 ...................................................................... 19

12 |
13 | Cal. Pen. Code §633.6 ...................................................................... 19

14 | Cal. Pen. Code §633.8 ...................................................................... 19

15 | Cal. Pen. Code §636 ......................................................................... 19

16 | Cal. Pen. Code §637 ......................................................................... 19

17 | Cal. Pen. Code §637.2 ...................................................................... 19

18 | Cal. Pen. Code §638 ......................................................................... 19

19 |
20 | Cal. Pen. Code §638.50 .................................................................... 20

21 | Cal. Pen. Code §638.51 .................................................................... 20

22 | Cal. Pen. Code §638.52 .................................................................... 20

23 | Cal. Pen. Code §638.53 .................................................................... 19

24 | Cal. Pen. Code §638.54 .................................................................... 19

25 | Cal. Pen. Code §638.55 .................................................................... 19

26 |

**OTHER AUTHORITIES**

27 | 2022 Cal. Legis. Serv. Ch. 27 (S.B. 1272) ........................................ 20

28

viii

## **PRELIMINARY STATEMENT**

Plaintiffs' First Amended Complaint ("FAC") continues their wide-ranging campaign of painting an innocuous and voluntary consumer chat with a retailer's website as nefarious "wiretapping." Plaintiffs seek to twist a routine service expected and relied on by consumers into an opportunity to extract extravagant settlement terms or force companies to defend against baseless litigation. In the FAC, prolific Plaintiff Sonya Valenzuela joins original Plaintiff Jose Licea in alleging that at some time in the last year, they each "visited Defendant's website" at frontgate.com, and "had brief conversations *with Defendant* about Defendant's services and policies" through the chat feature. (FAC ¶17.)[1] Ms. Valenzuela's arrival is presumably an effort to neutralize Defendant's showing that Mr. Licea's "brief" chat consisted *of his typing a single word*: "returns." (Burling Decl. ¶3 & Ex. A.) But Ms. Valenzuela's exchange of written messages with a Frontgate employee regarding its return policy, delivery options, and store locations only shows why consumers affirmatively seek out, use, and value the chat feature. (*Id*. ¶4 & Ex. B.)[2]

The vast majority of retail websites strive to ensure consumers have numerous ways to inquire about a product's specifications or availability, check on the status of an order or return, request information about store locations and hours, and so on. Retailers efficiently route their questions and promptly provide information using toll-free numbers, online inquiry forms, direct email, FAQ sections, and, as relevant here, the opportunity to "chat" online with a customer service agent. To initiate the chat feature, consumers choose to click on the ubiquitous "chat bubbles" at the bottom or side of a retailer's website. Most chats initially ask the consumer to select a topic from a menu and/or type in basic information—*e.g.*, name, email or phone number—in a form or text box. Some chats

---

[1] Unless otherwise noted, all emphases are added, and all citations, footnotes, original alterations, and internal quotation marks are omitted from all quoted material. All "Section" references are to the California Penal Code. All "RJN" references are to the concurrently filed Request for Judicial Notice And Notice of Documents Incorporated By Reference. References to "Hamilton Decl." and "Burling Decl." are to the concurrently filed declarations of Hillary A. Hamilton and Camilla Burling.

[2] Because Plaintiffs expressly allege they initiated chats with Defendant and those chats are "central" to their claims, the Court may consider the chat logs under the incorporation by reference doctrine. (*See* RJN §II (collecting cases).)

provide automatic answers on common topics, but in most an agent then comes online to exchange exclusively *written* electronic messages with the consumer. Typically, the agent types a greeting and asks how they can help. The consumer types in their question in the text box and submits it, the agent answers in kind upon receipt, and the exchange unfolds on the screen, visible to both parties, *after* each message is typed, sent, and received.

Some issues require escalation through other customer service channels; for example, payments cannot be made via chat. Thus, consumer chats—like Plaintiffs' chats here—contain no "highly sensitive personal data" that "visitors would be shocked and appalled" that a retailer retains, contrary to Plaintiffs' allegations. (*Id*. Exs. A-B; FAC ¶ 14.)

In fact, retailers and consumers alike often keep the "chat logs" of these interactions. For obvious reasons, if a consumer has invested the time and effort to reach out via the chat, that consumer will likely print the chat and expect the retailer also to retain the exchange if any follow-up is needed. Using electronic chats is routine for many consumers at thousands of retailers: consumers value and affirmatively seek out the chat feature, understand when they are exchanging written messages with an agent, and voluntarily engage in the chat, with the expectation the chat will be retained and referred to if the issue prompting the chat is not resolved. Neither the consumer nor the retailer violate California Invasion of Privacy Act ("CIPA") criminal wiretapping statutes by retaining chat logs. Rather, doing so is responsible and thorough in the event follow up is needed.

Yet retailers across the nation are currently the targets of misguided litigation brought by Pacific Trial Attorneys ("PTA")—representing Plaintiffs here—and a handful of plaintiffs posing as "privacy advocates," asserting contorted violations of CIPA Sections 631 and 632.7. Indeed, since Defendant filed its Motion to Dismiss ("MTD") last month, PTA has filed an additional *twelve* actions, bringing their total to nearly *seventy* duplicative actions flooding California state and federal courts on behalf of eight individuals. Every complaint vaguely alleges each plaintiff visited a retailer's website, initiated a chat, and was later "shocked" to discover the retailer retained a copy of the chat "without consent"— a claim that becomes less plausible with each successive complaint. (*See* RJN Exs. 1-68.)

Recognizing their original allegations—that Defendant purportedly "creates secret transcripts" of chats and later "shared" them with two named third parties—fail as a matter of law for the reasons stated in Defendant's MTD, and heedless of their obligations under Federal Rule of Civil Procedure ("FRCP") 11, Plaintiffs now add new and wholly inconsistent allegations that Defendant pays an *unnamed* third party to "intercept" and "eavesdrop" on the chat through "embed[ded] code" in the "website chat function." (*Compare* Compl. ¶¶10-12, 14 *with* FAC ¶¶9, 11.) The FAC also adds a Section 632.7 claim, alleging Defendant "recorded" Plaintiffs' written communication on a website purportedly accessed by a smartphone. (FAC ¶¶17, 33-35.) But even accepting Plaintiffs' contradictory and conclusory allegations as true, Plaintiffs' claims still fail.

*First*, Plaintiffs' amendment did not and cannot cure their fatal inability to show the requisite "interception" under Section 631. California state courts have long recognized transcribing a communication and retaining it in written form is *not* interception under that statute. And more recently, federal courts analyzing Section 631 and the analogous Wiretap Act claims involving electronic communications agree that there can be no interception under either statute *after* an electronic message arrives at its destination. Because Plaintiffs admit Defendant was the intended recipient of the chat, and the purported "eavesdropping" and "recording" occurred via code "embedded" in the website chat function *after* their messages were received (and thus no longer "in transit"), Plaintiffs cannot state a claim under Section 631 here. *See infra* §I.

*Second*, even if Plaintiffs could plausibly assert a third party observed or Defendant created a transcript of chat messages *before* they appeared in Defendant's chat feature (and they cannot), Section 631's "party exemption" relieves Defendant of liability as a party to the communication. Since Plaintiffs allege Defendant (i) created transcripts of its own alleged "conversations," and (ii) paid a third party to embed code in Defendant's chat to "eavesdrop" on and "store" the transcripts, Plaintiffs' Section 631 claim fails. *See infra* §II.

*Third*, Plaintiffs' new claim for violations of Section 632.7 also fails on its face for two reasons. First, the plain text of Section 632.7 and CIPA legislative history shows that

statute exclusively applies to communications between two *telephones,* not communications with a website, as Plaintiffs allege here. Second, even if Section 632.7 did apply to internet communications (and it does not), the claim still fails because the law is clear that Plaintiffs consented to the "recording" of their chat when they sent Defendant *written* messages. Thus, Plaintiffs' Section 632.7 claims also fall flat.

## BACKGROUND

Plaintiffs, through PTA, are currently pursuing *thirty-six additional* actions asserting Sections 632.7 and/or 631 "wiretapping" claims based on purported interactions with *other* retailers' chat platforms. Mr. Licea has filed eight in the Southern District of California, and five in the Superior Court of San Diego County. (*See* RJN Exs. 1-13.) Ms. Valenzuela is pursuing *twenty* other actions in California federal and state courts, including in Los Angeles, Orange, Riverside and San Diego Counties. (*See id*. Exs. 14-33.) Plaintiffs' venue gamesmanship is unexplained; here, Plaintiffs allege they "reside[] within the Central District of California." (FAC ¶4.) But Mr. Licea's state court complaints allege he "resid[es] in [San Diego] County." (RJN Exs. 9, 11-13 ¶4.) A public records search suggests he resides in a county outside this District. (Hamilton Decl. ¶3.)

To date, Plaintiffs' counsel has filed *sixty-nine* actions on behalf of Plaintiffs, Mr. Licea's uncle Miguel Licea, and five other serial plaintiffs, all asserting Section 632.7 and/or Section 631 claims based on interactions with retailers' chat platforms. (*See* FAC & RJN Exs. 1-68.) Each complaint is equally devoid of facts regarding plaintiff's interactions with the chat, featuring vague (and conveniently fungible) assertions such as "[w]ithin the statute of limitations period, Plaintiff visited Defendant's Website." (*See id*.)

"A hallmark of abusive… litigation is the use of form complaints containing a multitude of boilerplate allegations of varying merit." *Shayler v. 1310 PCH, LLC*, 51 F.4th 1015, 1018 (9th Cir. 2022) (collecting cases involving "cookie-cutter lawsuits" with "similar or even identical complaints"). "The ability to file essentially the same complaints over and over again, combined with the hope of intimidating the defendant into an early settlement… allows for a quick recovery of attorney's fees with relatively minimal

4

1   difficulty." *Id*. Thus, in California district courts, "[b]oilerplate or 'cut and paste' pleadings

2   are strongly discouraged." *Jang v. 1st United Bank*, 2012 WL 2959985, at *2 n.2 (E.D.

3   Cal. July 19, 2012) ("The Court notes with great concern that all nine of [p]laintiffs' causes

4   of action, as pled in their complaint, are identical or substantially similar to those contained

5   in other complaints filed by [p]laintiffs' former attorney in the Eastern District, all of which

6   have been dismissed for failure to state a claim."); *see also Domondon v. First Franklin*,

7   2016 WL 7479399, at *5 (C.D. Cal. June 23, 2016) (dismissing complaint in its entirety

8   under FRCP 8 where "[p]lainly this pleading was not carefully constructed" but "[i]nstead

9   it appears to be a 'cut and paste' of similar complaints filed in other actions").

10   Likewise, the Second Circuit recently affirmed the dismissal of numerous "nearly

11   identical complaints" against retailers for not offering Braille gift cards. *Calcano v.

12   Swarovski N. Am. Ltd.*, 36 F.4th 68, 71 (2d Cir. 2022). The court found "Plaintiffs' vague

13   assertions that they have been customers at Defendants' businesses 'on prior occasions'"

14   lacking because they "fail[ed] to provide *any* details about their past visits or the frequency

15   of such visits... do not specify which stores they visited or what items they purchased" or

16   why. *Id*. at 76-77 (emphasis in original). The court concluded: "[W]e cannot ignore the

17   broader context of Plaintiffs' *transparent cut-and-paste and fill-in-the-blank pleadings.*

18   The four Plaintiffs before us filed eighty-one of over 200 essentially carbon-copy

19   complaints between October and December 2019.... *This backdrop of Plaintiffs' Mad-Libs-

20   style complaints further confirms the implausibility of their claims of injury*." *Id*. at 77.[3]

21   Plaintiffs anticipate this criticism by generically alleging they are "consumer privacy

22   advocates" who are "genuinely interested in learning more about the goods and services

23   offered by Defendant." (FAC ¶16.) Setting aside the implausibly diverse array of goods

24

---

25   [3] *See also Johnson v. Ocaris Mgmt. Grp. Inc.* 2019 WL 13235462, at *3, *4 (S.D. Fla. May 30, 2019) (holding "core ADA allegations were not credible" where plaintiff filed 26

26   ADA complaints against gas stations "identical except for the defendant's name, the location of the station, and the date" visited, and noting plaintiff's inability to credibly

27   explain "why he gassed up at so many different Miami-Dade County stations since he resides in Fort Lauderdale" or "why if he patronized [them] to gas up, he patronized three different stations in close proximity to one another" in one day); *Johnson v. Ocaris Mgmt.

28   Grp. Inc.*, 2019 WL 13235834, at *2, *9 (S.D. Fla. Aug. 23, 2019) (imposing sanctions on plaintiff and attorney for "unethical, abusive litigation").

1  and services Plaintiffs are purportedly "genuinely interested" in, including Igloo coolers,

2  sneakers, pet supplies, takeout pizza, insurance, boating equipment, carpets, and eyeglasses

3  (*see* RJN Exs 1-33), they also allege they are "'testers' who… advance important public

4  [privacy] interests at the risk of vile personal attacks." (FAC ¶16.) Plaintiffs usually follow

5  this melodramatic assertion by extolling fellow "'tester'" and "[c]ivil rights icon Rosa

6  Parks… when she initiated the Montgomery Bus Boycott in 1955, as she voluntarily

7  subjected herself to an illegal practice to obtain standing." (*See, e.g.*, RJN Exs. 4, 6 at ¶15

8  & n.4; 5, 7-8, 24 at ¶15 & n.3; 9-12 at ¶16 & n.3; 13, 25-27, 29, 32-33 ¶17 & n.3.)

9       Grandiose declarations of virtue aside, this Court should look askance at the

10  boilerplate Sections 631 and 632.7 claims implausibly based on contrived chat interactions

11  filed by Plaintiffs and their counsel here.

12                    **PLAINTIFFS' AMENDED ALLEGATIONS**

13       To summarize Plaintiffs' amended (but no less vague) allegations: sometime in the

14  last year, they "visited Defendant's Website," initiated a chat by typing in the text box, and

15  Defendant provided a written response in the chat after receiving Plaintiffs' message. (FAC

16  ¶¶16-17.) Plaintiffs' claims are predicated on the assertion that "Defendant has covertly

17  embedded code into its chat feature that automatically records and creates transcripts of

18  all" chats without their consent—despite their admitted participation in its creation. (*Id*.

19  ¶¶11, 13.) Plaintiffs' "shock" that a written chat—half of which *they typed*—would be

20  retained as a "transcript" and shared with others remains implausible.[4] *See infra* §III.B.

21       To counter Defendant's MTD arguments demonstrating that Section 631 does not

22  apply to *recordings*, only *eavesdropping* (*see* MTD §I), Plaintiffs now contradict

23  themselves and allege Defendant pays "at least one third-party company to embed code

24  into Defendant's website chat function that enables the third party to secretly intercept in

25  real time, eavesdrop upon, and store transcripts of Defendant's chat communications."

26  (FAC ¶11.) Plaintiffs offer no further detail about what such "eavesdropping" looks like or

27

28  ─────────────
[4] Setting aside that Plaintiffs' "shock" implausibly persists even after filing *thirty-three* complaints based on chat interactions, they still do not cite any obligation under Sections 631 or 632.7 to delete chat messages on receipt. (*See* MTD, ECF No. 17, at 11-12.)

1  where, how, or when it occurs, opting instead for bare and conclusory allegations featuring

2  variations on the word "eavesdrop"—which appears nowhere in the original Complaint—

3  *seventeen times*, plus a smattering of the words "monitor" and "intercept."[5]

4       Nor do they offer the requisite details as to the third parties. Instead, their FAC is

5  even *more* vague as to their purported involvement. In the MTD, Defendant pointed out

6  the Complaint's allegations that third parties eGain and WebEx "boast" about their

7  capabilities to assist clients with "data harvesting" were not supported by "any statements

8  from the named entities, boasting or otherwise," and did "not allege eGain and WebEx

9  actually engaged in any data harvesting at all, only that they had the purported ability to do

10  so." (MTD at 7 n.7, citing Compl. Introduction & ¶11.)

11       Plaintiffs' FAC addresses this criticism by *simply deleting* the third parties' names,

12  alleging only that Defendant "pays a third party to interceipt [*sic*] and eavesdrop on such

13  communications… in order to harvest data from those conversations for financial gain."

14  (FAC Introduction, ¶¶9, 11, 12.) Yet Plaintiffs' purported ignorance of the third party's

15  identity does not prevent them from confidently (if implausibly) reiterating that the

16  unnamed "third party publicly boasts of its ability to harvest valuable data from such

17  communications for the benefit of its clients like Defendant"—still without support. (*Id*.

18  ¶12.) Once again, Plaintiffs' "lack of detail as to the purported third parties' involvement

19  is further evidence of PTA's boilerplate litigation tactics." (MTD at 7 n.7.)

20  _____

21  [5] *Id*.; *see also* FAC Introduction ("Defendant (1) secretly wiretaps the private conversations of everyone who communicates through the chat feature at www.frontgate.com...; and (2) pays a third party to interceipt [*sic*] and eavesdrop on such communications in real time in

22  order to harvest data from those conversations for financial gain" and "does not obtain visitors' consent to either the wiretapping or the eavesdropping") (emphasis omitted); ¶9

23  ("Defendant both wiretaps the conversations of all website visitors and pays third parties to eavesdrop on the conversations.") (same); ¶12 ("The third party publicly boasts of its

24  ability to harvest valuable data from such communications for the benefit of its clients like Defendant, which is one of the reasons that Defendant enabled, aided, abetted, conspired

25  with, and paid it substantial funds for its [*sic*] eavesdropping services"); ¶19 ("Defendant did not obtain Class Members' express or implied consent to wiretap or allow third parties

26  to eavesdrop on visitor conversations, nor did Class Members know at the time of the conversations that Defendant was secretly wiretapping them and allowing third parties to

27  eavesdrop on them."); ¶22 ("Whether Defendant caused electronic communications from class members with the Website to be recorded, intercepted, and/or monitored"); ¶23

28  ("persons… whose electronic communication was recorded, intercepted and eavesdropped upon…"); and ¶¶8, 14, 18, 20, 28, 29 (additional eavesdropping allegations).

1   The FAC not only contradicts the allegations in the original Complaint, it is
2   internally contradictory as well. For example, as usual, Plaintiffs allege "[c]ompliance with
3   CIPA is easy, and the vast majority of website operators comply by conspicuously warning
4   visitors if their conversations are being recorded" or eavesdropped on, yet "[u]nlike most
5   companies, Defendant *ignores* CIPA." (FAC ¶¶8-9 (emphasis in original).) But Plaintiffs
6   *also* allege the opposite: that Frontgate's chat feature currently contains the legend "[a]
7   transcript of this chat may be monitored and retained for Frontgate's business purposes.
8   For more, see our Privacy Policy." (*Id*. at n.1.)

9   It is likewise difficult to reconcile Plaintiffs' assertions that such a disclaimer is *de*
10  *rigueur* amongst "the vast majority of website operators," yet the addition of the disclaimer
11  to Defendant's chat was solely "a result of the filing of this matter," and not a business
12  decision to reflect what Plaintiffs allege are widespread industry practices. (*Id*.) In short,
13  Plaintiffs' amended allegations are just as conclusory and implausible—if not more so—
14  than the allegations in its original complaint.

15  ## LEGAL STANDARD

16  FRCP 8(a) requires plaintiffs to plead a claim with enough specificity to "give the
17  defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl.*
18  *Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A complaint will survive a motion to dismiss
19  under FRCP 12(b)(6) only if it states "sufficient factual matter, accepted as true, to 'state a
20  claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
21  (quoting *Twombly*, 550 U.S. at 570).

22  To have facial plausibility, plaintiffs must plead "factual content" sufficient for a
23  court to reasonably infer defendant is liable, something "more than a sheer possibility"
24  defendant "acted unlawfully." *Id*.; *see also Rosenow v. Facebook, Inc.*, 2020 WL 1984062,
25  at *7 (S.D. Cal. Apr. 27, 2020) (same, dismissing Wiretap Act claims for failure to allege
26  interception of chat messages). Plaintiffs must plead "more than labels and conclusions,"
27  *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals" of the elements of a cause of action
28  "do not suffice." *Iqbal*, 556 U.S. at 678. In determining plausibility, the Court must "draw

8

17

1  on its judicial experience and common sense," and need not "accept as true a legal

2  conclusion couched as a factual allegation." *Id.* at 678, 679.

3      Section 631 claims fail under FRCP 8 where plaintiffs have "not alleged an

4  interception of [their] communications while 'in transit'" or, specifically, "*how or when*

5  *any defendant became aware of [their] communications.*" *Quigley v. Yelp, Inc*., 2018 WL

6  7204066, at *4 (N.D. Cal. Jan. 22, 2018); *see also Adler v. Community.com, Inc.*, 2021 WL

7  4805435, at *4 (C.D. Cal. Aug. 2, 2021) (dismissing Section 631 claim where "there is no

8  plausible allegation that Defendant acted to learn the contents of the messages while they

9  were, in a technical sense, in transit or in the process of being received.").

10     "[V]ague references" to "surreptitious surveillance" are insufficient to "support an

11  inference that an 'interception' took place" as required under Section 631. *Quigley*, 2018

12  WL 7204066, at *4 (dismissing Section 631 claims for failing to "allege[] facts giving rise

13  to an inference that his communications were intercepted while 'in transit' as required").

14                                **ARGUMENT**

15  **I.   PLAINTIFFS' ALLEGATIONS PRECLUDE ANY SHOWING OF**
    **AN INTERCEPTION OF A COMMUNICATION IN TRANSIT, AND**
16  **THUS PLAINTIFFS' SECTION 631 CLAIM MUST BE DISMISSED**

17     To state a claim under Section 631, plaintiffs must include plausible allegations that

18  the defendant "read or learned the contents of a communication while the communication

19  was *in transit*, or *in the process of being* sent or received." *Mastel v. Miniclip SA*, 549

20  F.Supp.3d 1129, 1136 (E.D. Cal. 2021) (first emphasis in original). Ninth Circuit case law

21  "reinforces… that the crucial question… is whether [plaintiff] has plausibly alleged that

22  [defendant] read one of his communications while it was still in transit, i.e., *before it*

23  *reached its intended recipient*." *Id*. at 1137 (dismissing Section 631 claim).

24      **A.   Pre-Internet, California State Courts Long Held That**
    **Transcribing A Telephone Communication And Retaining**
25  **It In Written Form Is *Not* Interception Under Section 631**

26     Section 631 "prohibits three ways of obtaining information…: (1) tapping the line,

27  (2) making an unauthorized connection with the line, and (3) reading, attempting to read,

28  or learning the contents or meaning of a message while the message is in transit." *Rogers*

                                        9

1  *v. Ulrich*, 52 Cal.App.3d 894, 898 (1975). "As to the third method, a recording made by a

2  participant *does not intercept the message while it is in transit*; the recording rather

3  *transcribes the message as it is being received.*" *Id.*

4      In *People v. Wilson*, 17 Cal.App.3d 598 (1971), the defendant sought to suppress

5  written messages taken by an answering service "from persons to whom defendant gave

6  the telephone number of the... service" and "*reduced to writing* on a form identified as a

7  'green slip.'" *Id.* at 600. "The answering service *retained* the green slips which noted *the*

8  *messages received*, when they were received, and when they were conveyed to the

9  subscriber." *Id.* Defendant sought to suppress the slips, which had been introduced in

10 evidence at his trial for conspiracy to transport marijuana. *See id.* at 600-01. The *Wilson*

11 court held defendant's reliance on Section 631 in "support of his contention divulgence of

12 the communications... was unlawful" was "misplaced" because "within the meaning of

13 [Section 631] *the information received* by the answering service *was not obtained while*

14 *the communications...* were in transit or passing over any wire, but *was obtained after and*

15 *not 'while' they were in transit or passing 'over' the telephone wire*." *Id.* at 602-03.[6]

16     Thus, under settled California law, merely creating and storing a transcript of a chat

17 is by definition not an interception under Section 631.

18 **B.    Ninth Circuit Courts Consistently Hold That Once An Electronic**
   **Message Has Been Received, Contemporaneous "Interception"**
19 **Is No Longer Possible Under The Wiretap Act And Section 631**

20     Like Section 631, 18 U.S.C. §2511 ("Wiretap Act") "makes it an offense to

21 'intentionally intercept any wire, oral, or electronic communication.'" *Konop v. Hawaiian*

22 *Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002) (quoting 18 U.S.C. §2511(1)(a)); *see also*

23 *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-7 (N.D. Cal. Dec. 22, 2006) ("Like its

24 federal counterpart, [Section 631] require[s] the *interception* of an electronic

25 communication," dismissing Wiretap Act and Section 631 claims without leave to amend

26 _____

27 [6] *See also People v. Carella*, 191 Cal.App.2d 115, 137-38 (1961) (holding "no interception
   occurred" under predecessor statutes to Wiretap Act and Section 631 where stenographer
   from DA's office answered telephone at bookmaker's home and created transcripts of 45
28 calls: "no wire tapping or other connecting method was used" and "messages sent were
   received in the ordinary course *over the means of transmission provided*").

1   where plaintiff alleged Google deleted saved Gmail messages, which is "not actionable"

2   as unlawful interception under either wiretapping statute (emphasis in original)). "The

3   analysis for a violation of CIPA is the same as that under the… Wiretap Act." *NovelPoster*

4   *v. Javitch Canfield Grp.*, 140 F.Supp.3d 938, 954 (N.D. Cal. 2014) (collecting cases); *see*

5   *also Underhill v. Kornblum*, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017) (same).

6        The Ninth Circuit construes the term "intercept" narrowly: the communication "*must*

7   *be acquired during transmission, not while it is in electronic storage.*" *Konop*, 302 F.3d at

8   878 (holding supervisor's unauthorized access of password protected website to read

9   bulletin board posts critical of company did not violate Wiretap Act). "Even if the storage

10  phase is transitory and lasts only a few seconds, it is still considered electronic storage."

11  *Bunnell v. Motion Picture Ass'n of Am.*, 567 F.Supp.2d 1148, 1152 (C.D. Cal. 2007).

12       While "[o]ther circuits have elevated the *contemporaneous* requirement over the

13  particulars of whether an [electronic communication] is in *transmission*… the Ninth

14  Circuit has made clear that transmission is the critical inquiry." *Lindsay-Stern v.*

15  *Garamszegi*, 2016 WL 11745948, at *5 (C.D. Cal. Oct. 13, 2016) (emphases in original).[7]

16  And interception cannot occur unless defendants somehow "halt the transmission of the

17  messages to their intended recipients." *NovelPoster*, 140 F.Supp.3d at 952 (quoting *Exec.*

18  *Sec. Mgmt., Inc. v. Dahl*, 830 F.Supp.2d 883, 904 (C.D. Cal. 2011)).

19       Ninth Circuit and district court "[c]aselaw generally stands for the proposition that

20  once an [electronic communication] has been received by the destination server, a

21  communication becomes 'stored' *and contemporaneous interception is no longer*

22  *possible*." *Lindsay-Stern*, 2016 WL 11745948, at *4.[8] Because transmission of electronic

23   

---

24  [7] *See also Theofel v. Farey-Jones*, 359 F.3d 1066, 1077 (9th Cir. 2004) (affirming dismissal of Wiretap Act claims arising from access to unread emails because "the Act applies only

25  to 'acquisition *contemporaneous* with transmission'") (quoting *Konop*, 302 F.3d at 878); *NovelPoster*, 140 F.Supp.3d at 953 ("The Ninth Circuit and other courts have consistently

26  explained that any 'interception' under the meaning of the statute must occur *during transmission of the communication*.").

27  [8] *See also Kung v. Chow*, 2014 WL 12571416, at *3 (C.D. Cal. Sept. 19, 2014) ("Only 'interception' of an [electronic message] *en route* to its destination falls under" Wiretap

28  Act: "[a] qualifying 'intercept'… can only occur where an [electronic] communication is accessed at some point *between the time the communication is sent and the time it is received by the destination server*."); *Crowley v. CyberSource Corp.*, 166 F.Supp.2d 1263,

1  messages is "virtually instantaneous," and actionable "interception" of an electronic

2  message can only occur in the milliseconds between when the message is sent and when it

3  arrives at its destination, the Wiretap Act and Section 631 have "limited" application to

4  electronic communications. *Id.*; *see also In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1077-

5  78 (N.D. Cal. 2015) (collecting cases); *NovelPoster*, 140 F.Supp.3d at 951.

6      For example, software installed on a user's mobile phone which stops and scans

7  incoming and outgoing text messages during transmission like "a fishnet through which

8  the transmission passes" before the "message even appear[s] on the mobile device" might

9  constitute actionable interception. *Carrier IQ*, 78 F.Supp.3d at 1078-79. But a hacker

10  secretly configuring a former employer's software to forward copies of emails on its server

11  to his own account is not interception, because his "actions *did not halt the transmission of*

12  *the messages to their intended recipients.*" *Bunnell*, 567 F.Supp.2d at 1150, 1154.[9]

13      **C.**    **Ninth Circuit District Courts Dismiss Federal And State Wiretapping**
           **Claims Based On Electronic Communications Like The Chats Here**

14

15      Courts routinely follow these cases to conclude any action that happens *after an*

16  *electronic communication is received at its destination*—whether email, text or,

17  specifically, a chat message—does not occur in transit and thus Section 631 does not apply.

18  _____
1269 (N.D. Cal. 2001) (in Wiretap Act analysis, noting "Crowley transmitted this

19  information via [electronic communication] over the Internet, *and Amazon received the*
*information, effectively completing the communication*.").

[9] *See also Underhill*, 2017 WL 2869734, at *1, *4-5 (denying default judgment on Wiretap

20  Act and Section 631 claims where defendant allegedly accessed plaintiff's emails and
employed "filter" to alert defendant's phone when certain keywords appeared, because

21  plaintiff "ultimately fails to allege sufficient facts to demonstrate that [d]efendant acquired
[his] emails contemporaneously during their transmission, as opposed to simply accessing

22  [his] emails after they were stored on [his] email server," and "[n]otwithstanding [his]
limited detail regarding how the 'filter' operated, *i.e. whether it in fact forwarded his emails*

23  *to [d]efendant Kornblum's phone and how soon thereafter, it would be immaterial to the*
*viability of his claim*"); *NovelPoster*, 140 F.Supp.3d at 952-54 (granting defendants'

24  motion for judgment on the pleadings on Wiretap Act and Section 631 claims for failure to
allege interception of emails, even though plaintiff alleged defendants "wrongfully

25  accessed" and changed passwords on accounts to deny plaintiff access: "reading emails
*that have already been received*... does not constitute 'interception' under the statute," and

26  "*subsequent reading or forwarding of those emails by the defendants does not constitute*
*an illegal interception*"); *Exec. Sec. Mgmt.*, 830 F.Supp.2d at 904-05 (granting summary

27  judgment on Wiretap Act claim arising from emails allegedly secretly copied and
forwarded to third parties: "those facts are insufficient to demonstrate an 'interception'

28  under the narrow reading of the Wiretap Act's use of that word" and noting
*Bunnell* "*specifically rejected the plaintiffs' email-forwarding theory*").

The *Adler* decision from this District is instructive. There, the defendant app allowed celebrities "to communicate directly with their fans or followers through SMS text messaging" by providing the fans with a "Community number" to text a message to; the platform would then provide the message to the celebrity so the celebrity could respond directly. 2021 WL 4805435, at *1-2. Noting it was undisputed that "[d]efendant could not access the contents of the text messages at issue *until they were received at the celebrity's Community number*," the court granted defendant's motion to dismiss Wiretap Act and Section 631 claims without leave to amend. *Id*. at *3-4.

The *Adler* court rejected plaintiff's contention that defendant "hijacked" the communication to the celebrity before it reached the intended recipient as not in keeping with "the correct interpretation of 'intercept,' which *Konop* read to have a 'narrow definition' limited to 'acquisition contemporaneous with transmission.'" *Id*. at *3. "[T]his Court does not interpret 'intercept' to broadly encompass the acquisition of communications any time before the intended recipient gains access to those communications." *Id*. "As alleged, [p]laintiffs sent text messages to a celebrity's Community number, and the device paired with that number 'received the information, *effectively completing the communication*.'" *Id*. at *4. "Defendant's alleged access of that communication *upon the completion of its transmission to the proper number* is not the sort of act contemplated by federal law." *Id*.

The *Adler* court likewise dismissed Section 631 claims because "[p]laintiffs contend [d]efendant attempted to learn the contents of their text messages while those messages were 'in transit,' but that argument fails for the same reason it failed under the federal Wiretap Act claim." *Id*. Significantly, the court rejected plaintiff's reliance on the language of Section 631 "prohibit[ing] the nonconsensual access of communications '*received* at any place within this state'" as "an interpretation of extraordinary breadth," because "that provision imposes liability for accessing a message '*being* sent from, or received' in California." *Id*. (emphases in original).[10] "[T]here is no plausible allegation that [d]efendant

---

[10] As further grounds for dismissal, Plaintiffs also "fail to allege that [their chats] were intercepted *in California*, as is required under" Section 631. *Hammerling v. Google*, 2022

13

1   acted to learn the contents of the messages while they were, in a technical sense, *in transit*

2   *or in the process of being received.*" *Id.*

3         In *Sunbelt Rentals, Inc. v. Victor*, 43 F.Supp.3d 1026 (N.D. Cal. 2014), a terminated

4   employee asserted wiretap counterclaims in a suit brought by his former employer, alleging

5   that because he failed to unlink his former work iPhone from his personal Apple account,

6   his former employer accessed his new work iPhone and "invaded [his] privacy rights by

7   accessing, intercepting, monitoring, reviewing, storing and using [his] post-employment

8   private electronic data and electronic communications (including but not limited to *text*

9   *messages sent and received from his [new employer] issued iPhone*) without... consent."

10  *Id.* at 1029. The court dismissed the Wiretap Act and Section 631 counterclaims, holding

11  although "Victor vaguely alleges that Sunbelt intercepted his electronic communications,

12  i.e., his text messages, he provides no facts to support this otherwise conclusory assertion"

13  and "[i]f anything, the pleadings suggest that Sunbelt read Victor's text messages *after they*

14  *were sent and received on the Sunbelt iPhone*, which is insufficient to demonstrate

15  intentional interception under the Wiretap Act" and Section 631. *Id.* at 1031, 1033.

16        The court granted leave to amend, but noted "[g]iven the almost instantaneous

17  transmission of text messages, *the window during which an interception may occur is*

18  *exceedingly narrow*," and "it is doubtful that Victor will be able to allege facts, consistent

19  with [FRCP] 11, to state a claim for violation" of the wiretapping statutes. *Id.* at 1031.[11]

20        Courts have applied this same analysis explicitly to chat messages. In *Rosenow*, the

21  plaintiff alleged "Yahoo knowingly used an algorithm to intercept and scan [p]laintiff's

22  incoming chat messages for content during transit and before placing them in electronic

23  _____

WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022) (dismissing Section 631 claim with
24  prejudice where plaintiff did not "plead this element"). Rather, Plaintiffs allege "Defendant
is a Delaware corporation that *owns, operates, and/or controls* the... website," suggesting
25  any "interception" by the chat feature occurred beyond Section 631's reach. (FAC ¶ 5.)

[11] The *Sunbelt* court later refused to grant Victor additional time to amend his counterclaims
26  to seek discovery on "the details of how Sunbelt obtained information from the iPhone,"
because "by [his] own admission, Sunbelt merely reviewed text messages inadvertently
27  sent to [his] iPhone," and "it is unclear how any of the discovery sought... will rectify the
deficiencies which led to the dismissal of the counterclaims." (RJN Ex. 69 at 2.) The court
28  ordered Victor to amend the counterclaims within five days or they would be dismissed
with prejudice. (*Id.* at 3.) Victor did not amend his claims. (*Id.* Ex. 70.)

1  storage," and then "'reviewed the contents of [p]laintiff's electronic communications—

2  including emails, messages, *and chats*' and provided the contents of [p]laintiff's

3  communications to" a third party. 2020 WL 1984062, at *7. The court dismissed the

4  Wiretap Act claim, holding the "allegation that Yahoo intercepted Rosenow's

5  communications during transit are conclusory" and plaintiff "fails to allege facts that

6  support an inference that Yahoo 'captured or redirected' the contents of Rosenow's

7  communications while in transit" or "that the contents of the communications alleged in

8  the Complaint were 'intercepted' by Yahoo within the meaning of the Wiretap Act." *Id*.[12]

9      **D.    Plaintiffs' Claim Fails Because They Did Not And Cannot Allege**
        **Defendant Or Third Parties Recorded Or Eavesdropped On The Chat**
10      **Messages While They Were In Transit To Defendant's Website**

11         Here, like in *Adler*, "there is no plausible allegation that [d]efendant acted to learn

12  the contents of the messages while they were, in a technical sense, *in transit or in the*

13  *process of being received.*" 2021 WL 4805435, at *4. The only time the phrase "in transit"

14  appears in the FAC is when Plaintiffs reproduce the text of Section 631 in an allegation.

15  (*See* FAC ¶26.) And again, scattering variations of the word "intercept" four times

16  throughout the FAC does not state a claim, because "*using the word 'intercept' repeatedly*

17  *is simply not enough* without the addition of specific facts that make it plausible

18  [Defendant] is intercepting their data in transit." *Rodriguez v. Google LLC,* 2022 WL

19  214552, at *2 (N.D. Cal. Jan. 25, 2022) (dismissing Section 631 claim). (*See also* FAC

20  ¶¶11, 22a, 23, 36 ("interception" allegations).)[13]

21  _____
    [12] *See also Hernandez v. Path, Inc.*, 2012 WL 5194120, at *3, *5 (N.D. Cal. Oct. 19, 2012)
22  (dismissing Wiretap Act and Section 631 claims: "Plaintiff fails to allege facts to support
    an inference that Path 'intercepted' a 'communication' on a third-party social network
23  [s]ite *contemporaneous with, and not after, the communication was posted on the [site]*");
    *Marsh v. Zaazoom Sols., LLC*, 2012 WL 952226, at *17 (N.D. Cal. Mar. 20, 2012)
24  ("Plaintiffs' creative application of the Wiretap Act does not comport with its plain
    meaning" as "receipt of information intentionally transmitted from [p]laintiffs to
25  [d]efendants'… Websites is not 'interception'").
    [13] *See also Garcia v. Haskett*, 2006 WL 1821232, at *4 (N.D. Cal. June 30, 2006)
26  (dismissing Wiretap Act claims with prejudice where "conclusory statement" "unread
    email was intercepted by [d]efendant while 'still in transit to [p]laintiff's email box'"
27  insufficient to allege interception, particularly as "remainder of [p]laintiff's allegations
    suggests that the reverse is true"); *Quigley*, 2018 WL 7204066, at *4 (dismissing Wiretap
28  Act and Section 631 claims; plaintiff alleged only "vague references" to "surreptitious
    surveillance," not "interception of his communications while 'in transit'").

Here, Plaintiffs offer no specific facts plausibly suggesting a third party eavesdropped on or Defendant created a transcript of their chats *while* their communications were "in transit" or "being sent from" Plaintiffs. For example, they do not (and cannot) claim Defendant hid software on the cell phones or laptop computers Plaintiffs allegedly used to access the chat feature on Defendant's website and halted their messages en route to the chat. (FAC ¶17.) To the contrary, Plaintiffs allege Defendant and third parties accessed communications Plaintiffs sent to Defendant via "embedded code" placed in "*Defendant's website chat function*" itself. (*Id*. ¶11.) Thus, Plaintiffs concede Defendant and the third parties could only "eavesdrop upon" or "record" the communication *once it arrived at Defendant's website chat*—that is, "upon the completion of its transmission." *Adler*, 2021 WL 4805435, at *2, *4. Like in *Rosenow*, *Adler*, and *Sunbelt Rentals*, once Plaintiffs' electronic messages appeared in the chat feature, any possibility of interception ceased to exist. Thus, Plaintiffs cannot state a Section 631 claim here.

## II. DEFENDANT CANNOT BE LIABLE UNDER SECTION 631 AS A PARTY TO THE COMMUNICATION WHO ALLEGEDLY "CREATED" AND HIRED THIRD PARTIES TO OBSERVE AND STORE TRANSCRIPTS OF THAT COMMUNICATION

Plaintiffs' Section 631 claim fails for another, independent reason: both that statute and the Wiretap Act "contain an exemption from liability for a person who is a 'party' to the communication, whether acting under the color of law or not." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606-07 (9th Cir. 2020). "Courts perform the same analysis for both [statutes] regarding the party exemption." *Id*. at 607.

Both California federal and state courts have long held a party to a conversation cannot be liable under Section 631 for "recording" and sharing that conversation with third parties. For example, the *Rogers* court found no violation of Section 631 when a city information officer had the phone company install a "tape recorder jack" on his phone so that he could record conversations and "relay parts of [those] conversations... to local radio stations for broadcast." 52 Cal.App.3d at 897.

In *Crowley*, plaintiff alleged "he went to Amazon's web site to purchase goods, and gave Amazon" personal and payment information, which "Amazon then transmitted… to

16

1   CyberSource, a company that verifies the identity of a person making an online purchase."
2   166 F.Supp.2d at 1265. The court dismissed Wiretap Act claims because "Amazon merely
3   received the information transferred to it by Crowley, *an act without which there would be*
4   *no transfer*" and "*acted as no more than the second party to a communication*." *Id*. at 1269.
5   "This is not an interception as defined by the Wiretap Act." *Id*. The court noted that the
6   argument "would result in an untenable result," because "[h]olding that Amazon*, by*
7   *receiving an e-mail, intercepted a communication within the meaning of the Wiretap Act*
8   *would be akin to holding that one who picks up a telephone to receive a call has intercepted*
9   *a communication and must seek safety in an exemption to the Wiretap Act*." *Id*.[14]

10      The court in *Yunker v. Pandora Media, Inc.,* 2013 WL 1282980 (N.D. Cal. Mar. 26,
11  2013), dismissed a Wiretap Act claim alleging that when Android users used the Pandora
12  app, the app was "integrated with [third party] advertising libraries" which then gained
13  simultaneous access to the user's personal information. *Id.* at *1. Citing *Crowley*, the court
14  held Yunker failed to state a claim "[b]ecause Yunker expressly alleges that he
15  communicated his PII to Pandora" and "does not allege that Pandora intercepted any
16  communication" that plaintiff was trying to send to another party. *Id*. at *8.

17      Here, Plaintiffs admit they only communicated with "*Defendant* about Defendant's
18  services and policies," and *only* Defendant created transcripts of the chats. (FAC ¶17.).
19  While Plaintiffs gamely seek to evade the party exception by adding the above-described
20  conclusory allegations that a third party embedded code in the chat to "eavesdrop" on the
21  messages Plaintiffs sent to Defendant, and stored the transcripts Defendant created, they
22  also repeatedly allege the third party was *paid by Defendant* to do so, and was thus acting
23  at Defendant's behest. (*See id*. ¶¶11-12, 29.) Just as in *Crowley* and *Yunker*, Defendant

---

24  [14] *See also Brodsky v. Apple Inc.*, 445 F.Supp.3d 110, 126-27 (N.D. Cal. 2020) (dismissing
25  Section 631 claim with prejudice where allegations "confirm that the only communications
    that [p]laintiffs argue Apple 'intercepted' are [p]laintiffs' communications to Apple,"
26  which Apple then passed on to a third party, and "Apple cannot intercept communications
    to which Apple is already a party"); *Marsh*, 2012 WL 952226, at *17-18 (dismissing
27  Wiretap Act claim without leave to amend, as defendants were "the intended recipients,"
    did not "acquire[] the information by capturing the transmission of information that was
28  otherwise in the process of being communicated to another party," or "stop, seize, or
    interrupt a communication in progress before arrival to its intended destination").

allegedly provided a third party with access to information Plaintiffs admittedly intended to, and did, send to Defendant as a party to the communication. Thus, Plaintiffs did not and cannot overcome the party exception to Section 631, and their claim should be dismissed.

## III. DEFENDANT IS NOT LIABLE UNDER SECTION 632.7 FOR "RECORDING" WRITTEN COMMUNICATIONS WITH ITS WEBSITE

Defendant has diligently searched California case law and has been unable to locate a single case where Section 632.7 applied to a sender's written communications over the internet or with a website. Unsurprisingly, virtually every Section 632.7 decision involves a recorded *oral* telephone call between two individuals—because that is the conduct regulated by the statute. Plaintiffs' attempt to conjure another invented CIPA violation from a voluntary website chat fails for two independent, and equally fatal, reasons.

### A. Section 632.7 Exclusively Applies to Communications Between Two Telephones, Which Plaintiffs Have Not Alleged Here

Courts "ordinarily resist reading words or elements into a statute that do not appear on its face," *Dean v. United States*, 556 U.S. 568, 572 (2009), because a court's "office is simply to ascertain and declare what the statute contains, not to change its scope by reading into it language it does not contain," *Vasquez v. State*, 45 Cal.4th 243, 253 (2008).[15] And "[i]t is hornbook law that where [the Legislature] has carefully employed a term in one place and excluded it in another, it should not be implied where excluded," *Wells Fargo Bank v. Superior Court*, 53 Cal.3d 1082, 1096-97 (1991), because "if a statute contains a provision regarding one subject, that provision's omission *in the same or another statute regarding a related subject* is evidence of a different legislative intent," *People v. Arriaga*, 58 Cal.4th 950, 960 (2014). Here, the plain text of Section 632.7 and CIPA's legislative history demonstrate the statute exclusively applies to communications involving *two telephones*, not internet communications with a website.

#### 1. The Plain Text And Legislative History Of Section 632.7 Indicate It Applies Exclusively To Communications Between Telephones, Not Written Communications With Websites

Section 632.7 states: "[e]very person who, without the consent of all parties to a

---

[15] When interpreting a California statute, Ninth Circuit courts apply California's rules of statutory construction. *Turnacliff v. Westly*, 546 F.3d 1113, 1117-18 (9th Cir. 2008).

18

communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio *telephones*, a cellular radio *telephone* and a landline *telephone*, two cordless *telephones*, a cordless *telephone* and a landline *telephone*, or a cordless *telephone* and a cellular radio *telephone*, shall be punished by" fines or imprisonment. Cal. Pen. Code §632.7(a). Thus, the "plain text of §632.7 suggests that an *exclusive* list of five *types of calls*" and "only [the] types of phones *listed in the statute* are included." *Montantes v. Inventure Foods*, 2014 WL 3305578, *4, *5 (C.D. Cal. July 2, 2014) (Fitzgerald, J.). "According to this list of included types of telephones, the communication must have a cellular radio or cordless telephone on one side, *and a cellular radio, cordless, or landline telephone on the other side*." *Id.* at *4. As this Court recognized, Section 632.7 does not apply unless a specified "telephone" appears on each side of the communication.

Moreover, legislative history "establish[es] that [S]ection 632.7 responded to concerns that existing law did not prohibit the recordation of communications involving a *cellular or cordless telephone*," as there was "no prohibition against recording a conversation transmitted *between* cellular or cordless phones," but it was "illegal to intercept or record a conversation *between* traditional telephones." *Smith v. LoanMe, Inc.*, 11 Cal.5th 183, 196 (2021) (quoting legislative record). "These concerns apparently owed to a sense that communications involving cellular or cordless telephones might represent 'radio' communications that [S]ection 632 expressly excludes from its purview…." *Id.*

Plaintiffs will likely argue the statutory limitation of Section 632.7 to exclusively communications "between… telephones" is because the Legislature cannot keep up with fast-changing technology, but CIPA's provisions "reflect updates that have been made from time to time in response to the emergence of *new communication devices*." *Id.* at 191. Indeed, the Legislature has regularly amended or added CIPA provisions since internet and website usage became widespread,[16] including provisions expressly addressing and

---

[16] *See, e.g.,* Cal. Pen. Code §§631 (amended 2022, eff. Jan. 1, 2023), 632 (amended 2016), 633 (amended 2018), 633.02 (added 2015), 633.05 (added 2011), 633.5 (amended 2017), 633.6 (same), 633.8 (amended 2011), 636 (same), 637 (same), 637.2 (amended 2016), 638 (added 2006), 638.53 (added 2015), 638.54 (added 2016), 638.55 (same).

1 defining "electronic communications" in 2015 and 2022 (*see* Cal. Pen. Code §§638.50-52),
2 and more importantly, adding Section 632.01 in 2016 to prohibit the disclosure of
3 confidential communications with health care providers "in any forum, including…
4 *Internet Web sites* and social media," defined as "an electronic service or account, or
5 electronic content, including, but not limited to… *instant and text messages*, email, online
6 services or accounts, or Internet Web site profiles or locations." *Id*. §632.01.

7      And tellingly, in June 2022 the Legislature enacted an amendment to Section 632.7
8 itself, which will take effect January 1, 2023. 2022 Cal. Legis. Serv. Ch. 27 (S.B. 1272)
9 (West). But the Legislature did *not* add website or internet communications to its scope:
10 rather, noting "[e]xisting law prohibits… intercepting or recording *any telephone*
11 *communication, as specified*, without the consent of all parties," the Legislature proposed
12 to "exempt from these provisions *any telephone company* engaged in the business of
13 providing communications services and facilities, as specified." *Id.*

14      It is a settled statutory construction principle that "failure to make changes in a given
15 statute in a particular respect when the subject is before the Legislature, and changes made
16 in other respects, is indicative of an intention to leave the law unchanged in that respect."
17 *People v. Black*, 32 Cal.3d 1, 9 (1982). Here, the Legislature has *not* amended Section
18 632.7 to expand its application beyond communications between telephones, including
19 when it added Section 632.01 to expand the coverage of confidential communications
20 under Section 632 to *specifically encompass* certain communications with websites and
21 over the internet. In sum, if the Legislature had wanted to expand the reach of Section 632.7
22 to internet or electronic communications, it knew how—and had many opportunities—to
23 do so. Plaintiffs and this Court cannot change the scope of the statute to encompass
24 communications the Legislature could have, but did not, include.

25           **2.**      **Plaintiffs' Section 632.7 Claim Must Be Dismissed Since They Do**
26                     **Not Allege Facts Suggesting The Chat Was Between Telephones**

27      As shown above, to state a claim under Section 632.7, Plaintiffs must allege there
28 was a "cellular radio or cordless telephone on one side" of the chat, "and a cellular radio,
cordless, or landline telephone on the other side." *Montantes*, 2014 WL 3305578, at *4.

1   Plaintiffs do not, because they cannot, do so. Instead, Plaintiffs offer the vague allegation
2   that they initiated a chat using "either a smart phone (a cellular telephone with an integrated
3   computer and an operating system that enables web browsing) or a wifi-enabled laptop that
4   uses a combination of cellular and landline telephony." (FAC ¶17; *see also id.* ¶33
5   ("Plaintiffs and the class members communicated with Defendant using smartphones
6   (sophisticated cellular radio telephones) and/or devices enabled by cellular or landline
7   telephony.")). Plaintiffs' lone allegation regarding Defendant is even more vague:
8   "[c]ommunication from the chat function on Defendant's website is transmitted via a
9   combination of landline telephony and cellular telephony." (*Id.* ¶34.) Plaintiffs' repeated
10  use of the term "telephony" appears designed to obfuscate the absence of telephone
11  communications here, implying there was some nebulous use of telephone *lines* in the
12  transmission of the chat messages to and from the website.[17] But unlike other CIPA
13  provisions, Section 632.7 does not mention telephone "wire" or "line" or "cable" or even
14  "telephony"—it only applies to "*telephones*." *See* Cal. Pen. Code §632.7(a).

15      Here, at best, Plaintiffs have alleged that they sometimes used the *computer function*
16  of a smartphone,[18] and have failed to allege Defendant used *any type of telephone at all*.
17  Because the FAC "does not contain any facts suggesting the [chat] occurred between" two
18  telephones, Plaintiffs' claim can be dismissed. *See Knell v. FIA Card Servs., N.A.*, 2013
19  WL 12121237, at *3 (S.D. Cal. Feb. 21, 2013) (dismissing claim under analogous Section
20  632.6(a) which "prohibits intercepting or receiving a communication transmitted only
21  between cordless phones, or between a cordless telephone and a cellular or land-line

22

---

23  [17] "Telephony" is defined as "the use or operation of an apparatus (such as a telephone) for
24  transmission of sounds as electrical signals between widely removed points."
    https://www.merriam-webster.com/dictionary/telephony.

25  [18] Just because Plaintiffs may have used the web browser on a "smartphone" to access
    Defendant's website does not mean there was a *telephone communication*. The *Mastel*
26  court rejected similar attempts to characterize an iPhone app as a "telephone instrument"
    because "[a]lthough iPhones contain the word 'phone' in their name, and have the
27  capability of performing telephonic functions, they are, in reality, small computers… that
    perform functions well beyond *and unrelated to those of a telephone*"—such as accessing
    the internet. 549 F.Supp.3d at 1135. Here, Plaintiffs' *admitted* use of the smartphone's (or
28  a laptop's) web browser does not implicate the telephonic function of a smartphone either,
    and can be disregarded for the same reasons. (FAC ¶¶17, 33.)

telephone" because "the FAC does not contain any facts suggesting the conversation occurred between a cordless phone and another cordless, cellular, or land-line telephone").

In *Montantes*, this Court denied a motion to dismiss because "even if the Court were to grant the Motion," the plaintiff "would only have to allege, '[o]n information and belief, [Defendant] *answered the call* using a cellular radio, cordless, or landline telephone,'" because "[t]he critical question under *Twombly* and *Iqbal* is plausibility." 2014 WL 3305578, at *7. But like virtually every other Section 632.7 decision, *Montantes* involved an oral *telephone* conversation—not written communications with a website. Here, Plaintiffs must allege there were *telephones* used on both sides of Defendant's website chat—not "integrated computers" or "wi-fi" or "telephony," as those terms are *not* in the statute—which is simply not plausible. Thus, dismissal with prejudice is warranted.

### B.   In Sending Written Messages Necessarily "Recorded" By The Recipient, Plaintiffs Consented To That "Recording"

Even if Plaintiffs could plausibly allege their website communications were between two telephones, and they cannot, their Section 632.7 claim still fails. Courts—including this Court—recognize that because text communications are necessarily "recorded" by the recipient, the sender *consented* to that "recording" when they sent the message. Here, not only did Plaintiffs send written communications to Defendant, they *watched* the "recording" of those messages unfold before their eyes, and thus they cannot reasonably or plausibly allege that they were unaware their messages were being "recorded."

"Consent is an express element of a claim under [S]ection 632.7." *Moledina v. Marriott Int'l, Inc.*, 2022 WL 16630276, *7 (C.D. Cal. Oct. 17, 2022). "A party's awareness" they are being recorded can show they "impliedly consented to the recording." *Id.* (dismissing Section 632.7 claim where allegations and transcript showed implied consent). Thus, courts must consider the "surrounding circumstances indicating that the party to the call knowingly agreed to the surveillance." *Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016).

"The critical question is whether the party… had adequate notice of" the recording, such as when a party "continues to use the communication system after receiving notice

22

1    the communications are being" recorded. *Id*. And participants who "actually expected the
2    [communication] to be recorded" can be deemed to have consented by simply initiating the
3    communication in the first place. *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587, 594 (C.D.
4    Cal. 2013) (refusing to certify Section 632.7 class due to individualized issues of consent).

5        California courts unanimously recognize "a telephone conversation ceases to exist
6    when the conversation ends, unless the conversation is recorded; *however, internet
7    communications, such as e-mails and instant messages, are sent via a recorded format,
8    i.e., writing*." *People v. Nakai*, 183 Cal.App.4th 499, 515 (2010). And Plaintiffs "cannot
9    have a reasonable expectation *that their online communications will not be recorded*"
10   under California law, because "internet chats" are "by their very nature *recorded on the
11   computer* of at least the recipient, *who may then easily transmit the communication to
12   anyone else who has access to the internet*." *In re Google Inc.*, 2013 WL 5423918, at *22-
13   23 (N.D. Cal. Sept. 26, 2013) (collecting cases).

14       In the Section 632.7 context, the California Supreme Court similarly observed that
15   *written* communications "lead to a reasonable inference that a party sending [the message]
16   *has consented to having it recorded* by the intended recipient" because "recordation *would
17   be expected* with a facsimile or text transmission, for example." *Smith*, 11 Cal.5th at 194
18   n.4. And as this Court held in *Montantes*, "[a] party who has sent a communication such as
19   an image or facsimile *that is necessarily recorded upon receipt* has *certainly consented to
20   that recording* by the intended recipient." 2014 WL 3305578, at *3.

21       The *Moledina* decision granting defendant's motion for judgment on the pleadings
22   is instructive here. Applying a "functionally identical" standard to a FRCP 12(b)(6) motion
23   to dismiss, the court reviewed the transcript of the recorded call as incorporated by
24   reference, and concluded, based on the exchange between the agent and the plaintiff, that
25   "even though [p]laintiff alleges that he did not hear the recording disclosure… his
26   allegations regarding him seeking a price-match guarantee viewed in the light most
27   favorable to [p]laintiff indicate based on the surrounding circumstances that [p]laintiff
28   implicitly consented to the recording." 2022 WL 16630276 at *1, 6-7.

Here, Plaintiffs allege Defendant "did not obtain Class Members' express or implied consent to wiretap…, nor did Class Members know at the time of the conversations that Defendant was secretly wiretapping them." (FAC ¶19.) But these allegations are facially implausible because Plaintiffs *also* allege they "visited Defendant's Website" and "had brief conversations with Defendant." (*Id*. ¶17.) That is, Plaintiffs admit they initiated a chat by typing in a message that was "necessarily recorded on receipt" by Defendant, and thus "certainly consented to that recording." *Montantes*, 2014 WL 3305578, at *3.[19]

Moreover, the chats show Plaintiffs not only watched the chat they initiated unfold on their screen, they *sent* their own written contributions and cannot plausibly assert they were unaware of the "recording" or had an expectation they were not being "recorded." (*See* Burling Decl. Exs. A-B.) Removing all doubt, the *thirty-three* complaints Plaintiffs have filed against other retailers for purportedly "recording" Plaintiffs' communications with their chat features undermine that assertion entirely. (*See* RJN Exs. 1-33.) Here, as in *Moledina*, Plaintiffs "failed to make a prima facie showing of a right to relief" under Section 632.7, and their claims should be dismissed. 2022 WL 16630276 at *7.

## IV.   BECAUSE PLAINTIFFS HAVE TRIED AND FAILED TO AMEND THEIR SECTION 631 CLAIMS, AND CANNOT CURE THEIR SECTION 632.7 CLAIM, THEIR CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

"Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). This Court's "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011);

---

[19] While Plaintiffs allege Defendant "assisted third parties in the interception, reception, and/or intentional recordation of telephony communication" (FAC ¶36), they allege only that Defendant paid the third party to "interceipt [*sic*] and eavesdrop on such communications" and "store transcripts" Defendant created; they do not allege third parties *recorded* the chat. (*Id*. Introduction, ¶¶8-9, 11-12, 14, 19, 22b, 29.) But Section 632.7 requires both the communication be "intercept[ed] or receive[d] *and* intentionally record[ed]"—mere interception is not enough. *See* Cal. Pen. Code §632.7(a). Because, as alleged, the unnamed third party did not record the chat and thus violate Section 632.7, Defendant cannot be liable for "assisting" the third party in violating the statute either.

24

1 *see also Brodsky*, 445 F.Supp.3d at 127-28 (dismissing Section 631 claim with prejudice

2 where plaintiff previously amended complaint); *Hammerling*, 2022 WL 17365255 at *13

3 (same).

4      Here, Plaintiffs' claim cannot be cured by yet another amendment because they

5 cannot allege, in good faith and in compliance with their obligations under FRCP 11, that

6 Defendant and/or third parties "recorded" or "eavesdropped" on Plaintiffs' chat messages

7 *before they were received* by the website chat function, or that Defendant was not the

8 intended recipient of their communications. *Supra* §§I.-II. Nor can Plaintiffs amend the

9 FAC to allege communications with a website are between two telephones or overcome

10 the settled law holding they consented to the "recording" of their written communications

11 to Defendant's website. *Supra* §III. Because Plaintiffs will be "unable to cure the defect by

12 amendment," leave to amend is not warranted here. *Marsh*, 2012 WL 952226, at *11.

13                              **<u>CONCLUSION</u>**

14      For these reasons, the Court should dismiss the FAC with prejudice.

15 DATED: December 19, 2022

16                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

17                    By: _____*/s/Jason D. Russell*_____

18                                   JASON D. RUSSELL
                                    Attorneys for Defendant
19                                      CINMAR, LLC

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF COMPLIANCE**

2   The undersigned, counsel of record for Defendant Cinmar, LLC, certifies that this

3 brief contains 9,678 words, which complies with the word limit set by court order dated

4 December 5, 2022.

5 DATED: December 19, 2022

6         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

7      By:      */s/Jason D. Russell*

8           JASON D. RUSSELL
          Attorneys for Defendant

9           CINMAR, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26