**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell (Bar No. 202091)
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile:  (949) 706-6469

Attorneys for Plaintiffs

# UNITED STATE DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LICEA and SONYA VALENZUELA, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br>　　v.<br>CINMAR, LLC, a Delaware limited liability company; and DOES 1 through 25, inclusive,<br><br>　　　　　　Defendants. | Case No. 2:22-cv-06454-MWF-JEM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO RETAIL LITIGATION CENTER, INC.'S EX PARTE APPLICATION FOR LEAVE TO FILE AMICUS BRIEF IN SUPPORT OF DEFENDANT CINMAR, LLC'S MOTION TO DISMISS**<br><br>Date:　　　　TBD<br>Time:　　　　TBD<br>Courtroom:　TBD<br>Judge:　　　Hon. Michael W. Fitzgerald |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. ARGUMENT

**A. Allowing an Amicus Brief Filed by an Ally of Defendant, Which Duplicates Defendant's Arguments and Citations, Would Be an Abuse.**

The Court should deny leave to file Retail Litigation Center Inc.'s ("RLC") proposed Amicus Brief because it is an abuse of the *amicus curiae* procedure. As then then-Chief Judge Posner stated more than two decades ago in scrutinizing the propriety of amicus briefs:

> "The vast majority of amicus curiae briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such amicus briefs should not be allowed. They are an abuse. The term 'amicus curiae' means friend of the court, not friend of a party. . . . An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide. See, e.g., *Miller–Wohl Co. v. Commissioner of Labor & Industry*, 694 F.2d 203 (9th Cir. 1982) (per curiam). Otherwise, leave to file an amicus curiae brief should be denied."

*Ryan v. Commodity Futures Trading Com'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, C.J.); *id.* at 1064 ("The bane of lawyers is prolixity and duplication, and for obvious reasons is especially marked in commercial cases with large monetary stakes. In an era of heavy judicial caseloads and public impatience with the delays and expense of litigation, we judges should be assiduous to bar the gates to amicus curiae briefs that fail to present convincing reasons why the parties' briefs do not give us all the help we need for deciding the appeal.").

### 1. RLC's Proposed Amicus Brief Echoes and Duplicates Defendant's Memorandum.

RLC's proposed Amicus Brief "falls into the forbidden category" because it "echoes" arguments in Defendant's Memorandum in support of its Motion to Dismiss. *Ryan*, 125 F.3d at 1063-64. For example, Defendant argues that it cannot be held liable under section 631(a) of the California Penal Code as a party to the chat at issue and cites *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 897 (1975), in support. (Def.'s Mem. at 16:14-27; Doc. 26 at pg. 25 of 35; Page ID #764.) RLC makes the exact same argument and cites *Rogers* as support in its proposed Amicus Brief. (RLC's Prop. Amicus Brief at 11:25-12:3; Doc. 32-1; Page ID #1714-#1715.) Thus, RLC's contention that its "proposed brief does not repeat arguments made by the parties," (Ex Parte Appl. at 11:1; Doc. 32; Page ID #1696), is simply wrong.

In addition, Defendant's Memorandum has cited *In re Google Inc.*, 2013 WL 5423918, at *22-*23 (N.D. Cal. Sept. 26, 2013), in support of its argument that Plaintiffs impliedly **consented** to the recording of their chats with respect to their claims under section 632.7 of the California Penal Code. (Def.'s Mem. at 22:12-23:13; Doc. 26 at pgs. 31-32 of 35; Page ID #770-#771.) In particular, Defendant argues:

> "And Plaintiffs "cannot have a reasonable expectation *that their online communications will not be recorded*" under California law because "internet chats" are "by their very nature *recorded on the computer* of at least the recipient, *who may then easily transmit the communication to anyone else who has access to the internet*."

(Def.'s Mem. at 23:8-13; Doc. 26 at pg. 32 of 35; Page ID #771) (emphasis in Defendant's Memorandum). Similarly, RLC argues:

> "Not only are chat logs incredibly useful for both consumers and retailers, but consumers expect chat logs to be retained. The nature of written communication, especially on the internet, ensures that nothing is ephemeral. Just as the writer of a letter can expect the recipient to keep the letter (especially if it

> contains important financial or logistical information), and the sender of a fax can expect the recipient to keep the fax for their records, the sender of an e-mail, text message, or chat can expect the recipient to retain an electronic copy. This is so commonly understood by internet users that the exceptions prove the rule."

(RLC's proposed Amicus Br. at 7:21-8:1; Doc. 32-1; Page ID #1710-#1711.) In support, RLC cites *In re Google Inc.*, 2013 WL 5423918, at *22-*23 (N.D. Cal. Sept. 26, 2013), in support as follows:

> "The common understanding is reflected in the case law, which holds that "individuals cannot have a reasonable expectation that their online communications will not be recorded" because "*[e]veryone who uses a computer knows that . . . participants in chat rooms can print the . . . chat logs and share them with whoever they please, forward them or otherwise send them to others*."

(RLC's proposed Amicus Br. at 8 n.1; Doc. 32-1; Page ID #1711) (quoting *In re Google Inc.*, 2013 WL 5423918, at *22-*23 (N.D. Cal. Sept. 26, 2013)) (emphasis in RLC's proposed Amicus Br.). Thus, RLC's consent-related argument and citation duplicates the exact same argument made by Defendant in its Memorandum.

As such, RLC's assurances that it has assiduously avoided "repeat[ing] arguments made by the parties," (Ex Parte Appl. at 11:1; Doc. 32; Page ID #1696), is not accurate.

**2.  RLC Does Not Claim that Defendant Is Not Represented Competently.**

"An amicus brief should normally be allowed when a party is not represented competently or is not represented at all . . . ." *Ryan*, 125 F.3d at 1063. RLC does not claim that Defendant, which is represented by attorneys at the multinational law firm of Skadden, Arps, Slate, Meagher & Flom LLP, is not represented competently or is not represented at all. Surely, RLC believes the opposite.

**3.  RLC Has No Interest in Any Other Case that May Be Affected by the Decision in the Instant Action.**

"An amicus brief should normally be allowed . . . when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case) . . . ." *Ryan*, 125 F.3d at 1063. RLC has failed to show that it has an interest in some other case that may be affected by a decision in the instant action. RLC is a self-described "trade association." (Ex Parte Appl. at 2:6; Doc. 32; Page ID #1687.) RLC has failed to provide any evidence that it has a direct interest in some other case as, for example, a party such as a defendant. RLC has failed to provide any evidence that it has intervened in any other action as a party. The mere fact that RLC may be interested in the outcome of Defendant's pending Motion to Dismiss in the instant action should not be enough to grant leave here. Otherwise, trade associations like RLC would be incentivized to routinely inundate federal courts with similar motions regarding otherwise routine motions. Indeed, RLC has acknowledged the fact that it has already moved for and obtained leave to file a similar amicus brief in a similar action alleging violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*, which is currently pending in the Court.[1] (RLC's Ex Parte Appl. at 7:8-12; Doc. 32; Page ID #1692; Declaration of P. Craig Cardon of 12/21/22 ¶ 5 & Ex. C; Docs. 32 & 32-1; Page ID #1698, #1753.)

### 4. RLC Has Failed to Demonstrate that It Has "Unique Information or Perspective" That Can Help the Court Beyond the Help that the Lawyers for the Parties Are Able to Provide.

"An amicus brief should normally be allowed . . . when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Ryan*, 125 F.3d at 1063. RLC has failed to show that it has any "unique information or perspective" that can help the Court beyond the help

---

[1] "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

that the lawyers for Defendant have already provided (and will provide in their reply brief and at oral argument) in advocating for Defendant's position with respect to the applicable law regarding sections 631(a) and 632.7 of the California Penal Code.

RLC does not contend that it had any direct or indirect role regarding the legislative history of either statute at issue. As RLC has acknowledged, CIPA was enacted in 1967. (RLC's proposed Amicus Br. at 10:8; Doc. 32-1; Page ID #1713.) RLC has claimed in its proposed Amicus Brief that it was founded in 2010. (RLC's proposed Amicus Br. at 1:9-10; Doc. 32-1; Page ID #1704.) In addition, RLC does not contend that its representative submitted any testimony at any committee hearing resulting in any amendment to either statute. RLC contends that CIPA was amended in 1985, 1990, and 1992. (RLC's proposed Amicus Br. at 12:13; Doc. 32-1; Page ID #1715.)

A cursory review of both RLC's Ex Parte Application and its proposed Amicus Brief indicates that RLC seeks to have the Court consider purported facts that go far beyond the alleged facts within the four corners of the FAC, which is, of course, generally impermissible on a motion to dismiss under Rule 12(b)(6). *Sosa v. Bank of America Home Loan*, 2017 WL 11635445, at *1 (C.D. Cal. Aug. 3, 2017) (Fitzgerald, J.) ("As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012). The Court may, however, take judicial notice of matters of public record outside the pleadings that are not subject to reasonable dispute."). For example, RLC's Ex Parte Application states that "RLC requests an opportunity to provide *further background* on the allegations at issue." (Ex Parte Appl. at 5:9) (emphasis added). This vague assertion is meaningless in a vacuum. If RLC is alluding to certain facts that are beyond the First Amended Complaint at issue (which is surely the case), then it would be impermissible for the Court to consider such purported facts unless judicial notice can be taken of them. For example, the Court should not rely upon RLC's extended

discussion arguing that consumers prefer chats over calling a customer service representative over the telephone or contacting an online merchant via email. (RLC's Prop. Amicus Br. at 5:16-10:5; Doc. 32-1; Page ID #1708-#1713.) How would it be appropriate for the Court to take judicial notice of such purported consumer preference? This is just one of numerous examples of topics addressed in RLC's proposed Amicus Brief, which far exceeds the appropriate scope in deciding Defendant's pending Motion to Dismiss.

Moreover, RLC's unstated goal is clearly to bias the Court against Plaintiffs and their counsel by repeatedly referring throughout the Ex Parte Application and the proposed Amicus Brief to the volume of similar CIPA cases litigated by individuals represented by Plaintiffs' counsel. (*See* Ex Parte Appl. at 5:27-6:3, 6 n.1, 7:12-14; 9:12-14; Doc. 32; Page ID #1690-#1692, #1694; Prop. Amicus Br. at 1:17-21, 3:1-2, 14:11-20; 14 n.4; Doc. 32-1; Page ID #1704, #1706, #1717.)

Notably, in *Portillo v. ICON Health & Fitness, Inc.*, 2019 WL 6840759 (C.D. Cal. Dec. 16, 2019) (Wright, J.), the Court denied a defendant's request for judicial notice regarding the plaintiff's involvement in other cases as "irrelevant to [the defendant's] conduct in this action" or to the "resolution of the instant Motion to Dismiss". *Portillo*, 2019 WL 6840759, at *2. The Court held that the defendant's request for judicial notice "contribute[d] nothing to the analysis of the parties' substantive claims for and against dismissal." *Id.*

Defendant's reference to other lawsuits filed by Plaintiffs or other clients of Plaintiffs' counsel is irrelevant to any issues pertinent to deciding Defendant's pending Motion to Dismiss. *Garcia v. Hanjin International Corp.*, 2021 WL 4260408, at *2 (C.D. Cal. June 16, 2021) (Gutierrez, J.) ("Plaintiff's litigation history is immaterial to this motion [to dismiss]."); *Wilson v. Murillo*, 163 Cal. App. 4th 1124, 1128 n.3 (2008) ("we emphasize that [Appellant's] litigation history is immaterial to our resolution of this case"). RLC's reference to other lawsuits constitutes improper character evidence that is prejudicial to Plaintiffs, as RLC and its counsel surely know. *See, e.g.*, *Lobato v.*

*Gomez*, 2017 WL 931824, at *5 (E.D. Cal. Mar. 8, 2017) ("The motion is granted to the extent that the Defendants may attempt to use evidence of prior litigation history solely to show that [plaintiff] has a character trait of litigiousness."); *Henderson v. Peterson*, 2011 WL 2838169, at *6 (N.D. Cal. July 15, 2011).

There is no prohibition against suing multiple parties in different lawsuits for separate and distinct CIPA violations. *Holloway v. Full Spectrum Lending*, 2007 WL 7698843, at *8 (C.D. Cal. June 26, 2007) (Carter, J.) ("nothing in the [statute] precludes a plaintiff from suing multiple parties that have violated her rights"); *Wilson v. Murillo*, 163 Cal. App. 4th 1124, 1128 n.3 (2008) ("Numerosity alone, however, is insufficient to show that his lawsuits are frivolous or harassing. . . . 'From all that appears, the number of lawsuits [plaintiff] has filed does not reflect that he is a vexatious litigant; rather, it appears to reflect the failure of the defendants to comply with the law.'"); *cf. Molski v. Evergreen Dynasty Corp.*, 521 F.3d 1215, 1220 (9th Cir. 2008) ("[W]hile self-interest surely drives serial access litigation in part, the reason there *can* be so many lawsuits about access to public accommodations is that there are so many violations of the laws that seek to assure access.") (Berzon, J., dissenting from denial of rehearing en banc) (emphasis in original).

"Such is the nature of 'private-attorney-general' provisions: Congress perceives a wrong but finds it too costly to enforce the law it passes to address that wrong." *Native American Arts, Inc. v. Peter Stone Co., U.S.A., Inc.*, 222 F. Supp. 3d 643, 647 (N.D. Ill. 2016), *appeal dismissed*, No. 16-4278 (7th Cir. Oct. 4, 2017). "[W]ith damages far outstripping the actual loss, it is not surprising that suits like this are filed; private-attorney-general statutes are meant to encourage this." *Id.* "The fact that statutes . . . give rise to 'cottage industries' can't be laid at the feet of attorneys who take advantage of them." *Id.*

"The statute is what it is, and judges must implement its rule whether or not they think it wise . . . ." *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011) (Easterbrook, C.J.).

The Court should reject RLC's smear campaign tactics intended to bias the Court. *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) ("The Court is troubled that Defendants have devoted valuable pages in their Opposition to an apparent smear campaign . . . .").

"Unless at issue or relevant in a particular proceeding, an attorney should avoid degrading the intelligence, ethics, morals, integrity, or personal behavior of others." (California Attorney Guidelines of Civility and Professionalism § 8.) The Attorney Guidelines of Civility and Professionalism are available for downloading via the State Bar of California's website at: http://www.calbar.ca.gov/Attorneys/Conduct-Discipline/Ethics/Attorney-Civility-and-Professionalism (last visited Dec. 21, 2022). "Lawyers who appear before this District are expected to comport themselves with civility and professionalism." *Kuhmstedt v. Enttech Media Group, LLC*, 2022 WL 1769126, at *6 (C.D. Cal. Apr. 11, 2022) (Wilson, J.).

"[A] personal attack on . . . counsel's integrity may constitute misconduct[.]" *Anderson v. Yates*, 2011 WL 8006963, at *26 (C.D. Cal. Nov. 30, 2011) (Chooljian, Mag. J.) (R&R) (quoting *United States v. Santiago*, 46 F.3d 885, 892 (9th Cir.), *cert. denied*, 515 U.S. 1162 (1995)), *adopted in* 2012 WL 2133753 (C.D. Cal. June 11, 2012) (Pregerson, J.); *Alvarado v. Bratton*, 2009 WL 10699453, at *4 (C.D. Cal. June 1, 2009) ("the personal attacks leveled against counsel are inconsistent with the level of professionalism the Court expects of the lawyers who appear before it, and are neither persuasive nor do they advance the interests of the parties"); *Ewing v. Empire Capital Funding Group, Inc.*, 2019 WL 157660, at *3 (S.D. Cal. Jan. 10, 2019) ("A fair and efficient judiciary requires civility and professionalism on the part of litigants. Personal attacks or continued incivility will lead to further sanctions."); *Stone v. Foster*, 106 Cal. App. 3d 334, 355 (1980) ("Personal attacks on the character or motives of the adverse party, his counsel or his witnesses are misconduct.").

Indeed, "the Supreme Court has admonished counsel to refrain from 'unfounded and inflammatory attacks on the opposing advocate.'" *Anderson*, 2011 WL 8006963, at *26 (quoting *United States v. Young*, 470 U.S. 1, 9 (1985)).

**B.    If the Court Grant Leave to File the RLC's Amicus Brief, Then the Court Should Continue the Briefing Schedule and Hearing Date and Allow Plaintiffs Leave to File a Further Oversized Memorandum in Response to Defendant's Motion and RLC's Amicus Brief.**

If the Court grants leave to file RLC's proposed Amicus Brief, then the Court should continue the briefing schedule and hearing date on Defendant's Motion to Dismiss, which were specially set without taking into consideration the effect of RLC's Amicus Brief on such schedule, in order to afford Plaintiffs with a reasonable opportunity to respond to the substance of RLC's proposed Amicus Brief.

Notably, Plaintiffs are currently required to file their Opposition to Defendant's Motion to Dismiss by January 6, 2023. (Doc. 24 at 2:8-9; Page ID #732.) RLC has proposed in its Ex Parte Application that Plaintiffs be permitted to respond to the substance of RLC's Amicus Brief by January 11, 2023 to avoid any prejudice to Plaintiffs. (RLC's Ex Parte Appl. at 11:3-5; 11:15-16; Doc. 32; Page ID #1696.) In other words, RLC implicitly acknowledges the risk of prejudice to Plaintiffs' preparation of their response to RLC's Amicus Brief in light of their current response deadline of January 6, 2023. Given the impending federal and state holidays and their impact on Plaintiffs' counsel's schedule, the Court should continue the hearing date on Defendant's pending Motion to Dismiss and set a new date for Plaintiffs to respond to both Defendant's Motion to Dismiss and RLC's Amicus Brief (and potentially the *Amicus Curiae* Brief of the National Retail Federation ("NRF") as well), the latter of which has filed its own Motion for Leave to File *Amicus Curiae* Brief on December 20, 2022. (Doc. 30.) Notably, the Court has ordered Plaintiffs to file an opposition to the NRF's motion for leave by December 28, 2022, which the Court has construed as an Ex Parte Application. (Doc. #31.) Thus, if the Court ultimately grants leave to both RLC

and NRF to file their respective amicus briefs, this would result in the filing of a combined total of 49 pages of briefs.[2] It would be unfair to expect Plaintiffs to respond substantively to a combined total of 49 pages of briefs in support of Defendant's position by either January 6, 2023 or January 11, 2023, especially given RLC's representation that its proposed Amicus Brief does not "repeat arguments made by [Defendant]." (RLC's Ex Parte Appl. at 11:1; Doc. 32; Page ID #1696.) RLC can't have it both ways.

Finally, if the Court grants leave to file one or more amicus briefs in support of Defendant's Motion to Dismiss, then the Court should grant Plaintiffs leave to file a further oversized Memorandum of Points and Authorities beyond the 10,400 words already approved by the Court. (Doc. 24 at 2:15-16; Page ID #732.) In particular, in light of the complexity of the multiple legal issues addressed in Defendant's pending Motion to Dismiss and the additional topics addressed in RLC's potential Amicus Brief, Plaintiffs submit that it would be appropriate under the circumstances for the Court to provide them with an opportunity to file a Memorandum with a 14,000 maximum word limit, if leave to file both amicus briefs is granted. (*See* Ninth Circuit Local Rule 32-1(a)) ("The opening and answering briefs filed by appellant and appellee, respectively, may not exceed 14,000 words.").

## II. CONCLUSION

Based upon the foregoing, it is respectfully requested that the Court deny RLC's Ex Parte Application and grant such further and other relief as it deems appropriate.

Dated: December 22, 2022     PACIFIC TRIAL ATTORNEYS, P.C.

By: */s/ Scott J. Ferrell*
Scott. J. Ferrell
Attorney for Plaintiffs

---

[2] Defendant's Memorandum in support of its Motion to Dismiss is 25 pages in length. (Doc. 26; Page ID #749-#773.) RLC's proposed Amicus Brief is 15 pages in length. (Doc. 32-1; Page #1704-#1718.) NRF's proposed *Amicus Curiae* Brief is 14 pages in length. (Doc. 30-1; Page ID #1669-#1682.)

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 3,403 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 22, 2022

                     */s/ Scott J. Ferrell*
                     Scott J. Ferrell

# CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2022, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO RETAIL LITIGATION CENTER, INC.'S EX PARTE APPLICATION FOR LEAVE TO FILE AMICUS BRIEF IN SUPPORT OF DEFENDANT CINMAR, LLC'S MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Scott J. Ferrell*
Scott J. Ferrell