Gabriela Gonzalez-Araiza (SBN: 320693)
gabriela@lehotskykeller.com
**LEHOTSKY KELLER LLP**
200 Massachusetts Avenue NW
Washington, DC 20001
(512) 693-8350

Attorneys for Amicus Curiae the National Retail Federation

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LICEA and SONYA VALENZUELA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CINMAR, LLC, a Delaware limited liability company; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 2:22-cv-06454-MWF-JEM<br><br>**BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br>Hearing Date: February 6, 2023 |

# **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ............................................................................ ii

CORPORATE DISCLOSURE STATEMENT ................................................ 1

INTEREST OF AMICUS CURIAE .................................................................. 1

ARGUMENT .................................................................................................... 2

I.    Plaintiffs have failed to allege sufficient injury in fact. ............................ 2

II.   Plaintiffs fail to state a claim that the alleged CIPA violations are
      within the statute of limitations. ............................................................... 4

III.  Website chat features do not violate § 631(a)'s prohibition on
      wiretapping or eavesdropping. .................................................................. 6

      A.   Plaintiffs have failed to show web chats violate § 631
           because participants to a conversation do not violate that
           statute by reading communications sent to them. ............................ 6

      B.   Plaintiffs do not allege facts establishing that web chat
           features "tap" a "telegraph or telephone wire." .................................. 7

      C.   Plaintiffs fail to allege facts that chat communications were
           "intercepted" "while the same is in transit or passing over
           any wire." ......................................................................................... 8

IV.   Plaintiffs fail to state a claim that internet web chats violate
      § 632.7's prohibition of intercepting or recording telephones
      conversations. ......................................................................................... 11

CONCLUSION ............................................................................................... 14

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adler v. Community.com, Inc.*,
No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2,
2021)..................................................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................6, 9, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................5, 9

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)........................................................5

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014)........................................................13

*Ctr. for Biological Diversity v. U.S. Env't Prot. Agency*,
937 F.3d 533 (5th Cir. 2019) ......................................................................4

*Flanagan v. Flanagan*,
41 P.3d 575 (Cal. 2002)........................................................................10, 11

*FW/PBS, Inc. v. City of Dallas*,
493 U.S. 215 (1990) .....................................................................................2

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26,
2013)................................................................................................................12

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)......................................................10

*Hataishi v. First Am. Home Buyers Prot. Corp.*,
168 Cal. Rptr. 3d 262 (Cal. Ct. App. 2014)...........................................11

*Kahn v. Outrigger Enters., Inc.*,
No. 2:13-cv-03802-SVW-JCx, 2013 WL 12136379 (C.D. Cal. Oct.
29, 2013)......................................................................................................11

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ...................................................................8

*Laufer v. Looper*,
    22 F.4th 871 (10th Cir. 2022) ..................................................................4

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .................................................................................2

*Ma v. Ashcroft*,
    361 F.3d 553 (9th Cir. 2004) .................................................................13

*Makaryan v. Volkswagen Grp. of Am., Inc.*,
    No. CV 17-5086 PA (KSX), 2017 WL 6888254 (C.D. Cal. Oct. 13,
    2017) ........................................................................................................4

*Martinez v. Newsom*,
    46 F.4th 965 (9th Cir. 2022) ...................................................................6

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal. 2021) ...............................7, 8, 10, 11

*Mendia v. Garcia*,
    768 F.3d 1009 (9th Cir. 2014) ............................................................3, 4

*Montalti v. Catanzariti*,
    236 Cal. Rptr. 231 (Cal. Ct. App. 1987) .................................................4

*Montantes v. Inventure Foods*,
    No. CV-14-1128-MWF, 2014 WL 3305578 (C.D. Cal. July 2,
    2014) ................................................................................................11, 13

*Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*,
    468 F.3d 826 (D.C. Cir. 2006) .................................................................4

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
    No. 3:12-cv-01685-BAS(JLB), 2015 WL 1346110 (S.D. Cal. Mar.
    24, 2015) ..................................................................................................4

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) ....................................................8

*O'Donnell v. U.S. Bancorp Equip. Fin., Inc.*,
    No. C10-0941 TEH, 2010 WL 2198203 (N.D. Cal. May 28, 2010) ...................5

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

*People v. Nakai*,
  107 Cal. Rptr. 3d 402 (Cal. Ct. App. 2010).........................................................13

*Powell v. Union Pac. R.R. Co.*,
  864 F. Supp. 2d 949 (E.D. Cal. 2012) ................................................................6

*Quigley v. Yelp, Inc.*,
  No. 17-CV-03771-RS, 2018 WL 7204066 (N.D. Cal. Jan. 22,
  2018).....................................................................................................................9

*Rahman v. Marriott Int'l, Inc.*,
  No. SA CV 20-00654-DOC-KES, 2021 WL 346421 (C.D. Cal.
  Jan. 12, 2021) ......................................................................................................3

*Red v. Gen. Mills, Inc.*,
  No. 2:15-CV-02232-ODW(JPR), 2015 WL 9484398 (C.D. Cal.
  Dec. 29, 2015) .....................................................................................................3

*Rodriguez v. Google LLC*,
  No. 20-CV-04688-RS, 2022 WL 214552, (N.D. Cal. Jan. 25, 2022) .............8, 9

*Rogers v. Ulrich*,
  125 Cal. Rptr. 306 (Cal. Ct. App. 1975)...............................................................6

*Rosenow v. Facebook, Inc.*,
  No. 19-cv-1297-WQH-MDD, 2020 WL 1984062 (S.D. Cal. Apr.
  27, 2020)..........................................................................................................8, 10

*Saleh v. Nike, Inc.*,
  562 F. Supp. 3d 503 (C.D. Cal. 2021)..............................................................6, 8

*United States v. Heckenkamp*,
  482 F.3d 1142 (9th Cir. 2007) ............................................................................3

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017)...............................................................9

*Warden v. Kahn*,
  160 Cal. Rptr. 471 (Cal. Ct. App. 1979)..............................................................7

*WildEarth Guardians v. Haaland*,
  561 F. Supp. 3d 890 (C.D. Cal. 2021)..................................................................2

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

*Yale v. Clicktale, Inc.*,
　　No. 20-cv-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15,
　　2021)..................................................................................................10

**Statutes**

Cal. Civ. Proc. § 340(a) ....................................................................4

Cal. Penal Code § 631(a)................................................6, 7, 8, 10

Cal. Penal Code § 632.7(a).............................................10, 11, 12

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ....................................................................5

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CORPORATE DISCLOSURE STATEMENT

*Amicus Curiae*, the National Retail Federation, is not a publicly held corporation, has no parent corporation, and no publicly held corporation owns 10% or more of its stock. No counsel to any party in this case authored this brief in whole or in part; no party or party's counsel contributed any money that was intended to fund preparing or submitting the brief; and no person—other than the amicus curiae, its members, and its counsel—contributed money that was intended to fund preparing or submitting the brief.

## INTEREST OF AMICUS CURIAE

Established in 1911, the National Retail Federation ("NRF") is the world's largest retail trade association. Retail is the largest private-sector employer in the United States. It supports one in four U.S. jobs—approximately 52 million American workers—and contributes $3.9 trillion to annual GDP. The NRF's membership includes retailers of all sizes, formats, and channels of distribution, including many that sell goods via a website and communicate with customers through a website. NRF's members also are often targeted as defendants in class actions. NRF is thus familiar with class action litigation, both from the perspective of individual defendants in class actions and from a more global perspective. And many of NRF's members sell goods via the internet to consumers in California.

NRF files this brief to provide the Court with its perspective regarding the claims in this case, which, as Defendant has pointed out, is part of a wave of copy-paste lawsuits filed by Plaintiffs' attorneys against dozens of retailers, including NRF members. *See* Def.'s Mem., Dkt. #26, at 2; *see also* Def.'s Req. for Judicial Notice, Dkt. #27. Like Defendant, many retailers operate a website with a "chat" feature supplied by a third-party software service provider. Much like an email account, the chat feature allows retail customers to send written communications to a retailer to ask questions or seek advice regarding products or services. Plaintiffs

1

allege that by reading written messages Plaintiffs sent to a retailer via the chat feature, and by storing those messages rather than immediately deleting them, the retailer has committed illegal wiretapping and eavesdropping in violation of the California Invasion of Privacy Act ("CIPA"). These claims are without any merit and, lest they become an abusive tool wielded against retailers across the country, they should be dismissed with prejudice.

NRF members respect and protect the privacy of all their customers and website visitors. Vexatious lawsuits like this one do nothing to advance those privacy interests. Instead, they attempt to warp CIPA beyond recognition and do so in a way that threatens numerous businesses with civil and criminal liability simply for using commonplace technology to communicate and serve customers in California. This Court has "broad discretion" to accept briefs of *amicus curiae* and, in general, "err[s] on the side of permitting such briefs." *WildEarth Guardians v. Haaland*, 561 F. Supp. 3d 890, 905-06 (C.D. Cal. 2021) (internal marks omitted). Because this brief provides arguments that will be "useful" to the Court from *amicus*'s "unique . . . perspective," *id.* (internal marks omitted), NRF files this *amicus curiae* brief in support of Defendant's motion to dismiss.

## **ARGUMENT**

## I.    **Plaintiffs have failed to allege sufficient injury in fact.**

Plaintiffs' barebone allegations fail to allege any injury sufficient to show standing. The Constitution's Article III requirements of a case or controversy arising out of "concrete and particularized" injury are meant to prevent courts from being embroiled in claims like Plaintiffs', which allege only non-specific hypothetical harms that can be duplicated in cookie-cutter lawsuits filed in courts across the State. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also* Def.'s Mem., Dkt. #26, at 4-5. NRF has a strong interest in ensuring its members are not subject to such lawsuits that fail to meet the constitutional minimum of standing. And even if not raised by the parties, because "standing is perhaps the most important of the

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

jurisdictional doctrines," this Court is "under an independent obligation to examine" a plaintiff's standing. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal marks and citation omitted).

Plaintiffs allege only that they "visited Defendant's website," Am. Compl., Dkt. #19, at ¶ 17, but that is insufficient to show injury under Article III. Plaintiffs make no allegations as to any information exchanged through the website chat, whether, how, and why that information was sensitive, or why Plaintiffs were injured by sending that information to the Defendant. *See Rahman v. Marriott Int'l, Inc.*, No. SA CV 20-00654-DOC-KES, 2021 WL 346421, at *2 (C.D. Cal. Jan. 12, 2021) ("information obtained lack[ed] the degree of sensitivity required by the Ninth Circuit to establish injury in fact"); *United States v. Heckenkamp*, 482 F.3d 1142, 1146 (9th Cir. 2007) ("A person's reasonable expectation of privacy may be diminished in transmissions over the Internet or e-mail that have already arrived at the recipient." (internal marks omitted)).

Even assuming Plaintiffs had alleged they used Defendant's website chat feature to send private information to Defendant, any alleged harm stems from Plaintiffs' purported lack of knowledge that chat messages were being read and stored, rather than immediately deleted. Am. Compl., Dkt. #19, at ¶¶ 8, 18-19. But websites have a Privacy Policy that discloses how it uses the data customers send to it. So Plaintiffs either read the disclosures and thus suffered no injury under the statute or Article III, or Plaintiffs deliberately *avoided* Defendant's clearly disclosed Privacy Policy, in which case the alleged privacy harms were self-inflicted. *See Red v. Gen. Mills, Inc.*, No. 2:15-CV-02232-ODW(JPR), 2015 WL 9484398, at *5 (C.D. Cal. Dec. 29, 2015) (holding that plaintiff's "self-inflicted injury . . . does not confer standing" when alleged harm stemmed from food ingredient she knew to be unhealthy, since she "knew that she could (or should be able to) look at the ingredients" label and it was not "unreasonable to expect her to read the label before purchasing the food"); *see also Mendia v. Garcia*, 768 F.3d 1009, 1013 n.1 (9th Cir.

3

2014) (self-inflicted injury cannot confer standing); *Makaryan v. Volkswagen Grp. of Am., Inc.*, No. CV 17-5086 PA (KSX), 2017 WL 6888254, at *7 (C.D. Cal. Oct. 13, 2017).

Plaintiffs' alleged self-inflicted harms also fail to confer standing under their "tester" theory. Plaintiffs claim to be "testers" visiting Defendant's website in order to determine whether they can have their own privacy violated. Am. Compl., Dkt. #19, at ¶¶ 16. But while courts have sometimes allowed standing for testers in narrow contexts like housing discrimination, plaintiffs generally do not have standing when the alleged injury is self-inflicted. *See Mendia*, 768 F.3d at 1013 n.1; *see also Laufer v. Looper*, 22 F.4th 871, 879 (10th Cir. 2022) ("[S]tatus as a tester alone is insufficient to confer standing."). Plaintiffs cannot seek out harm and then sue over any alleged resulting injury. *See, e.g.*, *Ctr. for Biological Diversity v. U.S. Env't Prot. Agency*, 937 F.3d 533, 540-41 (5th Cir. 2019) (collecting cases showing that a plaintiff cannot "go[] looking for" an injury and thereby "manufacture standing"); *Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (holding plaintiff lacked standing because the "asserted injury appears to be largely of its own making" and the court has "consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing").

For these reasons, Plaintiffs fail to allege sufficient injury to have standing and their Complaint must be dismissed.

## II.   Plaintiffs fail to state a claim that the alleged CIPA violations are within the statute of limitations.

Claims brought under the CIPA are subject to a one-year statute of limitations. *See* Cal. Civ. Proc. § 340(a), *Montalti v. Catanzariti*, 236 Cal. Rptr. 231, 232 (Cal. Ct. App. 1987); *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, No. 3:12-cv-01685-BAS(JLB), 2015 WL 1346110, at *4 (S.D. Cal. Mar. 24, 2015). Plaintiffs fail to sufficiently allege an injury incurred within the statute of limitations.

1  *See* Def.'s Mem., Dkt. #26, at 3. Plaintiffs merely state that they visited Defendant's

2  website "[w]ithin the last year"—not even that they used the chat function—and

3  provide no further factual allegations. Am. Compl., Dkt. #19, at ¶ 17. But Plaintiffs'

4  bare assertions that their claims are within the limitations period are nothing "more

5  than labels and conclusions, and a formulaic recitation of the elements of a cause of

6  action," which "will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

7  And "[c]ourts often dismiss claims under Rule 8 when plaintiffs fail to allege

8  approximately when the actionable misconduct occurred." *Brodsky v. Apple Inc.*,

9  445 F. Supp. 3d 110, 135 (N.D. Cal. 2020) (collecting cases); *see also O'Donnell v.

10 U.S. Bancorp Equip. Fin., Inc.*, No. C10-0941 TEH, 2010 WL 2198203, at *3 (N.D.

11 Cal. May 28, 2010) (dismissing case because plaintiff "ha[d] not alleged any dates

12 in her complaint").

13
14        Plaintiffs, for example, have failed to provide the date on which the chat

15 feature was allegedly used by Plaintiffs, which would go towards establishing

16 whether or not the alleged activity occurred within the statute of limitations. Without

17 even this basic factual pleading, the Complaint must be dismissed. To do otherwise

18 would subject retailers across the country to suits that provide courts and litigants

19 alike with no notice of when the alleged legal violation occurred and no factual basis

20 to determine whether the claim was within the limitations period—or even to know

21 what substantive law applies given that statutes are frequently amended.

### III.  Website chat features do not violate § 631(a)'s prohibition on wiretapping or eavesdropping.

Plaintiffs' complaint must also be dismissed because Plaintiffs have "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). And the court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," such as Defendant's website and Privacy Policy. *Martinez v. Newsom*, 46 F.4th 965, 971 (9th Cir. 2022) (internal marks omitted). Here, Plaintiffs make conclusory allegations that Defendant directly violated CIPA § 631 and that Defendant aided and abetted a third party's violation of § 631. But, as shown below, Plaintiff fails to show almost any element of a § 631 violation is met by everyday internet chats.

### A.  Plaintiffs have failed to show web chats violate § 631 because participants to a conversation do not violate that statute by reading communications sent to them.

Plaintiffs allege that Defendant "secretly wiretaps" conversations with customers by reading messages that customers send *to Defendant* using the chat feature on Defendant's own website. Am. Compl., Dkt. #19, at 1. Although § 631(a) prohibits secretly wiretapping or eavesdropping on a conversation, it cannot be applied to a participant to the conversation because "[i]t is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation." *Rogers v. Ulrich*, 125 Cal. Rptr. 306, 309 (Cal. Ct. App. 1975); *see also Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 519

(C.D. Cal. 2021) ("[T]o the extent Plaintiff alleges [online retailer] recorded its own communications with Plaintiff, the court finds the § 631 [participant] exemption applies."); *Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012) (collecting cases that "are in accord that section 631 applies only to third parties and not participants").

As Defendant explains, the sender of a communication necessarily consents to the intended recipient receiving the communication. Def.'s Mem., Dkt. #26, at 16-18. Plaintiffs cannot state an "eavesdropping" or "wiretapping" claim under § 631 against Defendant for merely participating in a text-based conversation with Plaintiffs. Nor can Defendant be held liable under § 631 for retaining the written conversation to which Defendant was a participant. *See Warden v. Kahn*, 160 Cal. Rptr. 471, 475 (Cal. Ct. App. 1979). Thus, Plaintiffs' claim that Defendant is directly liable for violating § 631 must be dismissed.

### B. Plaintiffs do not allege facts establishing that web chat features "tap" a "telegraph or telephone wire."

Plaintiffs also fail to allege facts to show that the chat feature violates the first clause of § 631(a), which prohibits only "taps" of "telegraph or telephone" wires. Text-based communications over the internet between two computers have been held *not* to take place by "telegraph or telephone" via "wire, line, cable, or instrument" for purposes of § 631(a). *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134-35 (E.D. Cal. 2021). This is true even if Plaintiffs used a web browser from a smartphone to use the chat feature on Defendant's website, because while smartphones "contain the word 'phone' in their name, and have the capability of performing telephonic functions, they are, in reality, small computers . . . that

perform functions well beyond and unrelated to those of a telephone," and Plaintiffs' allegations necessarily involve "a feature of the portion of the [smartphone] that functions as a computer, not the phone." *Id.* at 1135-36. For these reasons, the website's chat feature cannot be held to have violated § 631(a)'s wiretapping prohibition, and Defendant cannot be held liable directly or for aiding and abetting.

**C.   Plaintiffs fail to allege facts that chat communications were "intercepted" "while the same is in transit or passing over any wire."**

Even if the second clause of § 631(a), unlike the first clause, applies beyond telephones and telegraphs, Plaintiffs fail to state a claim under the second clause because Plaintiffs fail to sufficiently state facts establishing the alleged eavesdropping occurred while the chat communication was "in transit." Def.'s Mem., Dkt. #26, at 10-12. Failure to allege facts showing that the interception occurred while the communication was in transit defeats a CIPA claim. *See, e.g.*, *Mastel*, 549 F. Supp. 3d at 1136-37; *Adler v. Community.com, Inc.*, No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435, at *3-4 (C.D. Cal. Aug. 2, 2021); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951-54 (N.D. Cal. 2014). To the extent that Plaintiffs' claim is that Defendant "records and creates transcripts" and then shares these recordings and transcripts with a third party, Am. Compl., Dkt. #19, ¶ 12, the cases all conclude that such acts do not violate prohibitions on intercepting communications while "in transit." *See* Def.'s Mem., Dkt. #26, at 10-12; *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *1 (N.D. Cal. Jan. 25, 2022) (dismissing § 631 claim where Plaintiff's "theory is essentially one of recording and then transmission, not interception"); *cf. also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) ("[F]or a website . . . to be

'intercepted' in violation of the [federal] Wiretap Act, it must be acquired during transmission, not while it is in electronic storage."); *Saleh*, 562 F. Supp. 3d at 517 ("The analysis for a violation of the [CIPA] is the same as that under the federal Wiretap Act." (citation and internal marks omitted)).

At most, Plaintiffs provide only conclusory allegations rather than any facts about the chat feature that would "support an inference that [Defendant] captured or redirected the contents of [Plaintiffs'] communications while in transit." *Rosenow v. Facebook, Inc.*, No. 19-cv-1297-WQH-MDD, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (internal marks omitted). Rather than plead facts showing how a chat feature intercepts communications while in transit, Plaintiffs merely provide the bald conclusion that Defendant allows a third party to "secretly intercept (during transmission and in real time)" chat communications. Am. Compl., Dkt. #19, ¶ 12. But stating that the interception occurs "during transmission" and "in real time" is insufficient to state a claim under *Iqbal* and *Twombly*, which "requires more than labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do." *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Rodriguez*, 2022 WL 214552, at *2 ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [Defendant] is intercepting [Plaintiffs'] data in transit."); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 & n.9 (C.D. Cal. 2017) ("conclusory allegation that [Defendant] intercepted [Plaintiffs'] electronic communications 'during transmission'" and "vague allegations about how [Defendant's] data collection occurs 'in real time'" were insufficient to state a claim

9

under CIPA and Wiretap Act). Plaintiffs' brief mention of an unnamed third party, without any explanation of what exactly it is doing and how it is doing it, is the epitome of conclusory pleading. *See* Def.'s Mem., Dkt. #26 at 10, 12; *see also Iqbal*, 556 U.S. at 679 (finding pleadings are insufficient "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct"); Quigley *v. Yelp, Inc.*, No. 17-CV-03771-RS, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018) (dismissing CIPA and federal wiretapping claims despite "vague references" to surveillance because complaint did "not allege with particularity how or when any defendant became aware of his communications").

Moreover, a third party "that provides a software service that captures its clients' data, hosts it on [its] servers, and allows the clients to analyze their data" acts as a "service provider" to and an "extension" of Defendant, not an eavesdropper in violation of § 631(a). *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021); *see also Mastel*, 549 F. Supp. 3d at 1136; *Yale v. Clicktale, Inc.*, No. 20-cv-07575-LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021); *see also* Def.'s Mem., Dkt. #26 at 16-18. This failure to state a claim alleging sufficient facts to show the chat feature constitutes an interception of communications while in transit warrants dismissal, both with respect to claims that Defendant directly violated § 631(a) and claims that Defendant aided or abetted such a violation by a third party. *See Rosenow*, 2020 WL 1984062, at *7 (allegations under the federal Wiretap Act that Defendant "used an algorithm to intercept and scan Plaintiff's incoming chat messages for content during transit before placing them in electronic storage" were conclusory and therefore dismissed).

**IV.   Plaintiffs fail to state a claim that internet web chats violate § 632.7's prohibition of intercepting or recording telephones conversations.**

Plaintiffs fail to state a claim that Defendant violated § 632.7 because § 632.7 only covers communications between two telephones and not, as alleged here, web chats between two computers. *See* Def.'s Mem., Dkt. #26, at 12-15. The plain text of the statute requires that the communication take place *between two telephones*. However, Plaintiffs' allegations all pertain to textual web communications via Defendant's website chat feature between two computers.

In *Flanagan v. Flanagan*, the California Supreme Court explained that § 632.7 was intended to "[r]espond[] to the problem of protecting the privacy of parties to calls involving cellular or cordless telephones" as opposed to "landline systems." 41 P.3d 575, 581 (Cal. 2002) (internal marks omitted). Section 632.7 was added to the statutory scheme to "protect[] against intentional, nonconsensual recording of *telephone* conversations regardless of the content of the conversation or the type of *telephone* involved." *Id*. at 581-82 (emphases added). And California Courts of Appeal have confirmed that "determin[ing] what type of telephone was used to receive the subject call" is an element of a § 632.7 claim. *Hataishi v. First Am. Home Buyers Prot. Corp.*, 168 Cal. Rptr. 3d 262, 274 (Cal. Ct. App. 2014). No court has applied § 632.7 to web-based text chatting between two computers, and to do so would be a significant expansion of the violations enumerated in the statute. At most, some courts have contemplated that calls between two telephones using Voice Over Internet Protocol technology might qualify under § 632.7, but no court has ever contemplated that written communications over the internet like email or web chats constitute communication via telephone. *See Montantes v. Inventure*

11

*Foods*, No. CV-14-1128-MWF, 2014 WL 3305578, at *4 (C.D. Cal. July 2, 2014);
*Kahn v. Outrigger Enters., Inc.*, No. 2:13-cv-03802-SVW-JCx, 2013 WL 12136379,
at *6-7 (C.D. Cal. Oct. 29, 2013).

By its text, § 632.7 only applies to communications sent from a telephone *and*
received by a telephone. Plaintiffs claim to have (maybe) used a smart phone's
computer function to access the web-based chat, Am. Compl., Dkt. #19, ¶ 17, but
that is not using a "cellar radio telephone" to communicate. Rather, Plaintiffs are
using a computer to communicate and the fact that the computer can also function
as a cellular phone when used in a different way does not mean that the
communication is sent from a cellular phone. *Cf. Mastel*, 549 F. Supp. 3d. at 1135-
36 (explaining that § 631(a)'s prohibition on tapping a "telephone" does not include
computer communications, including such communications by smartphones). For
example, if Plaintiffs had written a message on a smartphone, printed the message
on paper from the smartphone, and then mailed the message, that would not qualify
as a communication transmitted from a "cellular radio telephone" for purposes of
§ 632.7.

Even more clearly, Plaintiffs nowhere allege that Defendant or a third party
*received* Plaintiffs' chats on a telephone—a necessary element of a claim under
§ 632.7(a). Plaintiffs only allege that the chats took place via "telephony," which,
even if true (it is not),[1] is a word that is completely absent from the text of § 632.7
and does not meet the elements of the statute. Section 632.7 does not extend to all
"telephony" communications, it applies specifically to "communication transmitted

---

[1] Plaintiffs' complaint contains no factual allegations establishing that text sent over the Internet necessarily involves "telephony" communication.

12

between . . . telephones"—namely, the specific types of telephones listed in the statute. *See Montantes*, 2014 WL 3305578, at *4 ("According to this list of included types of telephones, the communication must have a cellular radio or cordless telephone on one side, and a cellular radio, cordless, or landline telephone on the other side.").

Indeed, Plaintiffs' reading of CIPA would transform almost every adult in California into a criminal and tortfeasor. By Plaintiffs' interpretation, every email sitting in an inbox—or even this electronically-filed pleading, which was sent and received over the internet—that an individual retains without the consent of all parties would constitute an unlawful "recording" of a "communication" "transmitted . . . by telephony." So too with every text message sent between two cell phones since, according to Plaintiffs, they are sent by "telephony" and unless the recipient immediately deletes them, they remain recorded on the cellphone usually without the explicit consent of the sender. *Cf. In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013) (in rejecting § 632 claim, holding that "the communication was not being recorded because email by its very nature is more similar to internet chats" and, "[u]nlike phone conversations, email services are by their very nature recorded on the computer of at least the recipient"); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications." (citing *People v. Nakai*, 107 Cal. Rptr. 3d 402, 418 (Cal. Ct. App. 2010) (concerning internet chats)). Plaintiffs' absurd interpretation of

13

§ 632.7(a) has never been accepted by any court and should be dismissed by this Court. *See Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004) ("[S]tatutory interpretations which would produce absurd results are to be avoided.").

## **CONCLUSION**

For these reasons, the Court should grant Defendant's motion to dismiss.


Respectfully submitted,


DATED: December 27, 2022


                                         **LEHOTSKY KELLER LLP**


                                         /s/ *Gabriela Gonzalez-Araiza*
                                         Gabriela Gonzalez-Araiza

                                         *Counsel for Amicus Curiae*
                                         *The National Retail Federation*

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

## **CERTIFICATE OF SERVICE**

I hereby certify that, on December 27, 2022, I electronically filed the foregoing *Amicus Curiae* Brief with the United States District Court for the Central District of California by using the CM/ECF system, which will send a notice of filing to all registered users, including counsel for all parties.

DATED: December 27, 2022          Respectfully submitted,


/s/ *Gabriela Gonzalez-Araiza*
Gabriela Gonzalez-Araiza