1  MICHAEL W. McTIGUE JR. (*pro hac vice*)
   michael.mctigue@skadden.com
2  MEREDITH C. SLAWE (*pro hac vice)*
   meredith.slawe@skadden.com
3  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   One Manhattan West
4  New York, New York 10001
   Telephone: (212) 735-3000
5  Facsimile: (212) 735-2000

6  JASON D. RUSSELL (SBN 169219)
   jason.russell@skadden.com
7  HILLARY A. HAMILTON (SBN 218233)
   hillary.hamilton@skadden.com
8  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
9  Los Angeles, California 90071-3144
   Telephone:(213) 687-5000
10 Facsimile: (213) 687-5600

11 Attorneys for Defendant
   Cinmar, LLC

12

13                    UNITED STATES DISTRICT COURT

14                   CENTRAL DISTRICT OF CALIFORNIA

15

16 | JOSE LICEA and SONYA | ) | CASE NO.: 2:22-cv-06454-MWF-JEM |
   | VALENZUELA, individually and on | ) | |
17 | behalf of all others similarly situated, | ) | **DEFENDANT CINMAR, LLC'S REPLY** |
   | | ) | **IN SUPPORT OF ITS MOTION TO** |
   | | ) | **DISMISS FIRST AMENDED CLASS** |
18 | Plaintiffs, | ) | **ACTION COMPLAINT** |
   | | ) | |
19 | v. | ) | |
   | | ) | |
20 | CINMAR, LLC, a Delaware limited | ) | **FILED UNDER SEPARATE COVER:** |
   | liability company, and DOES 1 | ) | |
21 | through 25, inclusive, | ) | **DEFENDANT CINMAR, LLC'S REPLY** |
   | | ) | **IN SUPPORT OF REQUEST FOR** |
22 | Defendants. | ) | **JUDICIAL NOTICE AND NOTICE OF** |
   | | ) | **DOCUMENTS INCORPORATED BY** |
23 | | ) | **REFERENCE** |
   | | ) | |
24 | | ) | Judge: Hon. Michael W. Fitzgerald |
   | | ) | Courtroom: 5A |
25 | | ) | Date: February 13, 2023 |
   | | ) | Time: 10:00 a.m. |
26

27

28

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................iii

PRELIMINARY STATEMENT .................................................................1

ARGUMENT ...............................................................................................2

I.   PLAINTIFFS' LENGTHY ATTACKS ON NRF'S ARGUMENTS
     SHOULD BE DISREGARDED ..................................................2

II.  PLAINTIFFS FAIL TO SHOW THEY CAN PLAUSIBLY ALLEGE
     AN INTERCEPTION OF A COMMUNICATION IN TRANSIT,
     AND THUS THEIR SECTION 631 CLAIM MUST BE DISMISSED.....4

     A.   Plaintiffs' Efforts To Distinguish Defendant's Cases Are
          Unavailing ...................................................................5

     B.   Plaintiffs' Factually And Legally Inapposite Session Replay
          Cases Do Not Help Them Overcome The *Konop* Line of Cases .....8

III. PLAINTIFFS' INSISTENCE THAT NO PARTY EXEMPTION
     EXISTS UNDER SECTION 631 IS CONTRARY TO
     CONTROLLING NINTH CIRCUIT AUTHORITY—AND
     PLAINTIFFS' OWN CASES ....................................................10

IV.  PLAINTIFFS IGNORE, AND THUS CONCEDE, DEFENDANT'S
     SHOWING THAT THERE IS NO SECTION 632.7 VIOLATION
     HERE.......................................................................................12

     A.   Plaintiffs Did Not Address Or Refute Defendant's Showing
          That Section 632.7 Only Applies To Communications Between
          Two Telephones...........................................................12

     B.   Plaintiffs Did Not And Cannot Refute Their Consent To The
          Alleged "Recording" Of Their Written Communications As A
          Matter Of Law.............................................................14

CONCLUSION ..........................................................................................16

CERTIFICATE OF COMPLIANCE .........................................................17

i

1

## **TABLE OF AUTHORITIES**

*Adler v. Community.com, Inc.*,
    No.: 2:21-cv-02416-SB-JPR,
    2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ........................................................5

*Bunnell v. Motion Picture Ass'n of America*,
    567 F.Supp.2d 1148 (C.D. Cal. 2007) ....................................................................7

*Executive Security Management, Inc. v. Dahl*,
    830 F.Supp.2d 883 (C.D. Cal. 2011) ......................................................................7

*In re Facebook, Inc. Internet Tracking Litigation*,
    956 F.3d 589 (9th Cir. 2020) ............................................................................8, 11

*In re Google Assistant Privacy Litigation*,
    457 F.Supp.3d 797 (N.D. Cal. 2020) ......................................................................3

*In re Google Inc. Gmail Litigation*,
    No. 13-MD-02430-LHK,
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ......................................................3

*Graham v. Noom, Inc.*,
    533 F.Supp.3d 823 (N.D. Cal. 2021) ................................................................9, 11

*Johnson v. Blue Nile, Inc.*,
    No. 20-cv-08183-LB,
    2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ..........................................................9

*Knell v. FIA Card Services, N.A.*,
    No.: 12-cv-0426-AJB (WVG),
    2013 WL 12121237 (S.D. Cal. Feb. 21, 2013) .....................................................12

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ..................................................................................1

*Mastel v. Miniclip SA*,
    549 F.Supp.3d 1129 (E.D. Cal. 2021) ..............................................................4, 14

*Matera v. Google Inc.*
    No. 15-CV-04062-LHK,
    2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......................................................3

ii

*Membrila v. Receivables Performance Management, LLC*,
No. 09-CV-2790-IEG (RBB),
2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) ........................................................ 12

*Montantes v. Inventure Foods*,
No. CV-14-1128-MWF (RZx),
2014 WL 3305578 (C.D. Cal. July 2, 2014) ................................................... 12, 15

*NEI Contracting & Engineering, Inc. v. Hanson Aggregates Pacific Southwest, Inc.*,
No. 12-cv-01685-BAS(JLB),
2016 WL 4886933 (S.D. Cal. Sept. 15, 2016) .................................................... 15

*NovelPoster v. Javitch Canfield Group*,
140 F.Supp.3d 938 (N.D. Cal. 2014) ............................................................. 5, 6

*Powell v. Union Pacific Railroad Co.*,
864 F.Supp.2d 949 (E.D. Cal. 2012) ............................................................... 12

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .................................................. 8, 12

*Ribas v. Clark*,
38 Cal.3d 355 (1985) ................................................................................ 11, 12

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022)....................................................... 6

*Rogers v. Ulrich*,
52 Cal.App.3d 894 (1975) ............................................................................. 11

*Saleh v. Nike, Inc.*,
562 F.Supp.3d 503 (C.D. Cal. 2021) ............................................................. 8, 11

*Smith v. LoanMe, Inc.*,
11 Cal.5th 183 (2021) ................................................................................... 15

*Sunbelt Rentals, Inc. v. Victor*,
43 F.Supp.3d 1026 (N.D. Cal. 2014).................................................................. 5

*Underhill v. Kornblum*,
No.: 16-CV-1598-AJB-WVG,
2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) ...................................................... 7

*Williams v. What If Holdings, LLC*,
    No. C 22-03780 WHA,
    2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........................................ 3, 9, 10, 11

*Yale v. Clicktale, Inc.*,
    No. 20-cv-07575-LB,
    2021 WL 1428400 (N.D. Cal. Apr. 15, 2021)............................................................ 9

*Yoon v. Lululemon USA, Inc.*,
    549 F.Supp.3d 1073 (C.D. Cal. 2021)...................................................................... 8

**STATUTES**

Cal. Penal Code §631(a) .................................................................................................. 14

Cal. Penal Code §632.7(a) ........................................................................................ 13, 14

## **PRELIMINARY STATEMENT**

Despite its bulk, Plaintiffs' sweeping 39-page Opposition ("Opp'n") to Defendant's Motion to Dismiss ("Motion" or "Mot.") somehow manages *not* to address the vast majority of arguments and authority raised in Defendant's Motion.[1] This failure to engage Defendant's arguments is likely due to the fact that the Opposition appears to be cobbled together from existing briefs that Plaintiffs and their counsel have filed in duplicate CIPA actions they are pursuing against other retailers, rather than squarely addressing the specific issues to be resolved on this Motion.[2] Unfortunately for Plaintiffs, their recycling efforts fall far short of overcoming Defendant's showing that their claims must be dismissed with prejudice, for the following reasons.

*First*, Plaintiffs squander their increased word count by responding at length to arguments raised *not by Defendant*, but in the amicus brief filed by the National Retail Federation ("NRF"). For example, Plaintiffs answer NRF's two-page argument questioning whether Plaintiffs' vague assertions they "visited Defendant's website" sufficiently establish injury that was not "self-inflicted" with a fifteen-page disquisition on tester standing. (*Compare* NRF Amicus Brief, ECF No. 42, at 2-3 *with* Opp'n at 2-16.)

*Second*, Plaintiffs ignore virtually all Defendant's authority following the Ninth Circuit's decision in *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002), and holding there can be no interception under Section 631 *after* an electronic communication is received at its destination. Instead, Plaintiffs try to rewrite their allegations and/or cite inapposite cases involving "session replay" software that records a visitor's keystrokes and

---

[1] Unless otherwise noted, all emphases are added, and all citations, footnotes, original alterations, and internal quotation marks are omitted from all quoted material. All "Section" references are to the California Penal Code. All "RJN," "Hamilton Decl." and "Burling Decl." references are to the Request for Judicial Notice and declarations of Hillary A. Hamilton and Camilla Burling filed December 19, 2022, respectively. "RJN Reply" refers to the concurrently filed reply in support of Defendant's RJN.

[2] (*Compare, e.g.*, Opp'n at §§I.B, I.C.1-C.2(d), I.D-I.D.2, and I.E-I.H.1-3 *with* ECF No. 19, *Valenzuela v. BJ's Wholesale Club, Inc.*, Case No. 2:22-cv-06378-DMG-MAA (C.D. Cal.), at §§III.D-D.1(d), III.D.3, III.E; ECF No. 25, *Byars v. Hot Topic, Inc.*, Case No. 5:22-cv-01652-JGB-SP (C.D. Cal.), at §§I.A, I.B.1-B.3(d), I.C-I.C.2, I.D., I.G-I.G.1, I.G.4, I.G.5, I.H; ECF No. 17, *[Miguel] Licea v. Gamestop Inc.*, Case No. 5:22-cv-01562-JGB-KK (C.D. Cal.), at §§I.B, I.C.1-C.3(d), I.D-I.D.2, I.E, I.G.)

mouse clicks on a website allegedly without the user's knowledge or consent—wholly unlike the written "conversation" with Defendant that Plaintiffs admittedly initiated and participated in here. But even if they were permitted to amend their complaint (again), Plaintiffs still would be unable to allege interception, because the "embedded code" in the website chat feature could only act on the communications at issue *once they arrived in the website chat feature*—making interception impossible under the law. Plaintiffs also insist there is no "party exemption" relieving Defendant of liability as a participant to the communication under Section 631, despite Ninth Circuit law expressly affirming that exemption. Thus, the Section 631 claim should be dismissed with prejudice.

*Third*, Plaintiffs ignore the decisions of this Court (and others), the plain text of Section 632.7, and CIPA legislative history demonstrating that the statute exclusively applies to communications between two *telephones,* not interactions with a website. Plaintiffs also acknowledge they did not and cannot allege that Defendant used a telephone to communicate with the website, foreclosing their Section 632.7 claim. And Plaintiffs disregard the well-settled law holding that they consented to the "recording" of their chat when they sent Defendant *written* communications. Since amendment cannot cure these flaws, Plaintiffs' Section 632.7 claim should also be dismissed with prejudice.

**ARGUMENT**

## I.   PLAINTIFFS' LENGTHY ATTACKS ON NRF'S ARGUMENTS SHOULD BE DISREGARDED

As a preliminary matter, while acknowledging Defendant did not raise the issue, Plaintiffs nonetheless devote sixteen pages—nearly half their brief—to railing against NRF's suggestion that Article III standing requires more than vague and fungible allegations of harm in cookie-cutter lawsuits. (*Compare* NRF Amicus Brief at 2-4 *with* Opp'n at 1-16.) It bears noting that while Defendant did not assert a standing argument, Defendant nonetheless reserves the right in the future to challenge Plaintiffs' general assertions of injury, including, for example, exploring Plaintiff Licea's assertion that his privacy was somehow trampled when he typed the single word "returns" and sent it to Defendant's chat feature, where it was retained after its receipt. (Burling Decl. Ex. A.)

2

As Defendant noted in its Motion, it will be difficult for Plaintiff Licea to prove any "shock[ ]" that Defendant did not delete his chat (FAC ¶14)—particularly when he has filed at least *fifteen* other actions all asserting the same vague and amorphous injury. (*See* Mot. at 2, 4 & n.4; Hamilton Decl. Exs. 1-13; Burling Decl. Ex. A; RJN Reply at 5 & n.5.) Moreover, for all the ink spilled attacking NRF's arguments, Plaintiffs tellingly ignore the brief filed by the Retail Litigation Center, Inc. ("RLC") describing the benefits of chat features for consumer and retailer alike, not to mention consumers' expectation that their chat exchanges will be retained by the retailer to avoid wasted time and resources in the event of a follow up query. (*See generally* RLC Amicus Brief, ECF No. 43.)

Plaintiffs also attack another argument that Defendant did not make, but NRF did— that the first clause of Section 631(a) does not apply to internet communications like Plaintiffs allege here. (*Compare* NRF Amicus Brief at 7-8 *with* Opp'n at 16-20.) Plaintiffs' argument that their (possible) use of a smartphone with "an integrated computer to enable web browsing" satisfies the "telephone" or "telegraph" requirement of the first clause is foreclosed by Plaintiffs' own authority. (Opp'n at 16-17.)

As the court in *Williams v. What If Holdings, LLC* held, "the first clause of Section 631(a) concerns telephonic wiretapping specifically, *which does not apply to the context of the internet*." 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (collecting cases) (cited by Plaintiffs). Plaintiffs also rely heavily on *In re Google Inc. Gmail Litig.*, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013), but omit that court's observations regarding the "limitation of 'telegraphic or telephone' on 'wire, line, cable, or instrument' in the first clause of the statute" and ultimately "find[ing] that this difference in coverage between the first and second clauses suggests that the Legislature *intended the two clauses to apply to different types of communications*." *Id*. at *20; *see also In re Google Assistant Priv. Litig.*, 457 F.Supp.3d 797, 825-26 (N.D. Cal. 2020) (holding "the first clause of §631(a)… protects only communications that are made over a 'wire, line, or cable'" as "evident from the plain text of the statute"); *Matera v. Google Inc.*, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016) (observing the "limitation of 'telegraph or telephone' on 'wire, line, cable,

1   or instrument' in the first clause of the statute") (cited by Plaintiffs).

2   And the court in *Mastel v. Miniclip SA*, 549 F.Supp.3d 1129 (E.D. Cal. 2021),

3   rejected an argument nearly identical to Plaintiffs' here. Noting "[a]lthough iPhones

4   contain the word 'phone' in their name, and have the capability of performing telephonic

5   functions, they are, in reality, small computers," the court held the first clause did not apply

6   where the tool that was purportedly accessed in violation of Section 631 "is a feature of the

7   portion of the iPhone *that functions as a computer, not the phone*." *Id*. at 1135-36.

8   Plaintiffs do not cite any cases contradicting these holdings and applying the first

9   clause of Section 631 to internet communications. Thus, for the reasons stated in *Williams*,

10  *Mastel*, and the Google cases Plaintiffs themselves cite, Plaintiffs cannot state a claim for

11  intentional wiretapping under the first clause of Section 631(a) here.

12  **II.    PLAINTIFFS FAIL TO SHOW THEY CAN PLAUSIBLY ALLEGE
        AN INTERCEPTION OF A COMMUNICATION IN TRANSIT, AND**
13      **THUS THEIR SECTION 631 CLAIM MUST BE DISMISSED**

14  Defendant's Motion established that Plaintiffs cannot state a claim under Section

15  631 based on their "communications" with the chat feature on Defendant's website because

16  under the Ninth Circuit's extremely narrow reading in *Konop* and its abundant progeny, an

17  electronic communication is only "intercepted" if it is somehow halted and accessed in the

18  milliseconds *before* it arrives at its destination. (Mot. at 9-16.)

19  Defendants cited a score of Ninth Circuit appellate and district court cases analyzing

20  the purported "interception" of bulletin board postings, emails, texts, and, specifically, chat

21  messages, all holding that the communication must be seized "in transit"—that is, "en

22  route" between when it is sent and its arrival at the destination server, "effectively

23  completing the communication"—and dismissing Section 631 claims on that basis. (*Id*. at

24  10-15.) Defendant also showed Plaintiffs' allegations that it and an unnamed third party

25  accessed the communications Plaintiffs sent to Defendant via "embedded code" placed in

26  "Defendant's website chat function" meant the alleged "eavesdropping" and "recording"

27  could only take place *after* Plaintiffs' written communication *had already arrived* at and

28  appeared in the website chat—so the communication was no longer "in transit" and

4

1  "interception" under Section 631 was impossible as a matter of law. (*Id.* at 15-16.)

2        **A.**    <u>**Plaintiffs' Efforts To Distinguish Defendant's Cases Are Unavailing**</u>

3        Plaintiffs' Opposition addresses only a handful of the cases cited by Defendant, and

4  misconstrues the limited authority they do attempt to distinguish. For example, Plaintiffs

5  claim the phrase "automatic routing software"—which does not currently appear in their

6  FAC—presents a method of viable interception purportedly endorsed by the court in

7  *NovelPoster v. Javitch Canfield Grp.*, 140 F.Supp.3d 938 (N.D. Cal. 2014). (Opp'n at 30.)

8  Not quite. The phrase appears when the *NovelPoster* court is recounting how "[i]n adopting

9  the Ninth Circuit's reasoning in *Konop*, *the Eleventh Circuit quoted from a law review*

10  *article*" which posited:

11           There is only a narrow window during which an E-mail

12           interception may occur—the seconds or mili-seconds before

13           which a newly composed message is saved to any temporary

14           location following a send command. *Therefore, unless some type*

15           *of automatic routing software is used (for example, a duplicate*

16           *of all of an employee's messages are automatically sent to the*

17           *employee's boss), interception of E-mail within the prohibition*

18           *of the Wiretap Act is virtually impossible*.

19  *NovelPoster*, 140 F.Supp.3d at 951-52. Undaunted by the provenance of this

20  observation, Plaintiffs latch on tightly to "automatic routing software" as a panacea for

21  their own deficient allegations, deploying the phrase *eight times* in their Opposition—most

22  often in an effort to distinguish Defendant's cases.

23        For example, Plaintiffs assert that Defendant's reliance on the on-point decision

24  holding allegedly "hijacked" text messages to celebrities were not intercepted in *Adler v.*

25  *Community.com, Inc.*, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021), is "misplaced" because

26  "the Court made no attempt to address the effect of automatic routing software on its

27  analysis." (Opp'n at 28-29.)[3]

28  _____
[3] (*See also* Opp'n at 30-31 & n.9 (distinguishing *Sunbelt Rentals, Inc. v. Victor*, 43
F.Supp.3d 1026 (N.D. Cal. 2014), because counterclaimant did not "allege that his

Plaintiffs even claim "the FAC in the instant action alleges that *precisely such automatic routing software was used by Defendant to perpetrate their undisclosed eavesdropping scheme.*" (*Id.* at 30.) Not so. The FAC allegation Plaintiffs cites for this proposition states, in its entirety:

> To enable the wiretapping, Defendant has covertly embedded code into its chat feature that automatically records and creates transcripts of all such private conversations. To enable the eavesdropping, Defendant has paid substantial sums to at least one third-party company to embed code into Defendant's website chat function that enables the third party to secretly intercept in real time, eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting website visitors.

(FAC ¶ 11 (emphasis omitted).) Needless to say, there is no mention of "routing" at all, let alone a suggestion that Defendant was somehow making duplicate copies of Plaintiffs' messages to itself. Indeed, it defies logic to suggest Defendant would create another "duplicate" copy of a written exchange *in which it was participating*.

In any event, even if Plaintiffs were permitted to amend their FAC (again) to include their newly minted "automatic routing software" refrain, it would not save their claim.

Plaintiffs ignore the *NovelPoster* court went on to hold that for a "violation to occur, the defendants' actions *must halt the transmission of the messages to their intended recipients*" and "[t]hus, reading emails *that have already been received in an email account's inbox* does not constitute interception under the statute." 140 F.Supp.3d at 952. That is, unless the hypothetical "automatic routing software" stopped and made copies of the employee's messages *before* they arrived in her inbox, *there is no interception*.

Indeed, that is precisely the factual scenario in several cases cited in the Motion that Plaintiffs conveniently neglect to address. In *Bunnell v. Motion Picture Ass'n of Am.*, 567

---

electronic communications were intercepted... using some type of automatic routing software"); *id.* at 32 (noting no "allegation of any use of any automatic routing software" in *Rodriguez v. Google LLC*, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)).)

1   F.Supp.2d 1148 (C.D. Cal. 2007), for example, a "former business associate" of plaintiffs

2   allegedly "obtained access to the administrative functions of [p]laintiffs' email server

3   software," "enabled the software's 'copy and forward' function," and "configured the

4   server software so that *every incoming and outgoing email message would also be copied*

5   *and forwarded to his anonymous Google email account.*" *Id*. at 1150. The court held there

6   was no violation because "*[i]f the emails had not been stored on the server*, [the former

7   associate] would not have acquired copies of them," and further, he did not "did not stop

8   or seize any of the messages that were forwarded to him." *Id* at 1153-54; *see also Exec.*

9   *Sec. Mgmt. v. Dahl*, 830 F.Supp.2d 883, 904 (C.D. Cal. 2011) (rejecting Wiretap Act claim

10   based on allegation that defendant employees "configured email settings such that copies

11   of emails not intended for their eyes were sent to their email accounts," noting

12   *Bunnell* "specifically rejected the plaintiffs' *email-forwarding theory*").

13       Plaintiffs also ignore *Underhill v. Kornblum*, which held plaintiff failed to

14   adequately allege a Wiretap Act or Section 631 claim where defendant allegedly accessed

15   plaintiff's emails and employed a "filter" to alert his phone when certain keywords

16   appeared because plaintiff "fails to allege sufficient facts to demonstrate that [d]efendant

17   acquired [his] emails contemporaneously *during their transmission*, as opposed to simply

18   accessing [his] emails after they were stored on [his] email server." 2017 WL 2869734, at

19   *4 (S.D. Cal. Mar. 16, 2017). Thus, the fact that plaintiff offered "limited detail regarding

20   how the 'filter' operated, i.e. *whether it in fact forwarded [his] emails to [defendant's]*

21   *phone and how soon thereafter*," was "immaterial to the viability of his claim." *Id.*

22       Here, in the "brief conversations" Plaintiffs allege they had with Defendant on the

23   website chat feature, Plaintiffs typed and sent their messages and then watched them appear

24   in the chat after transmission was complete, and then watched Defendant's agent respond

25   to those messages. (FAC ¶17; Burling Decl. Exs. A & B.) Thus, even if given leave to

26   amend, they cannot plausibly allege their communications were not received—*i.e.*, did not

27   appear in the website chat feature. Nor can they plausibly (or logically) assert that the

28   "embedded code" *in the website chat feature* halted the transmission of their

communications *to that website chat feature*. In sum, adding an allegation about "automatic routing software" will not save Plaintiffs' Section 631 claim.

**B.    Plaintiffs' Factually And Legally Inapposite Session Replay Cases Do Not Help Them Overcome The *Konop* Line of Cases**

Unable to meaningfully address or counter the *Konop* line of cases governing the interception of electronic communications, Plaintiffs seek to equate their participation in a chat "conversation" *they initiated*, in which they were willing and obvious contributors, with plaintiffs in Section 631 actions who alleged that when they interacted with certain websites, their keystrokes and mouse movements were recorded by a third party without their knowledge or consent. (*See* Opp'n at 26-28 (collecting cases).) The issues debated in those cases about a user's knowledge and expectations when visiting a website have no bearing on the allegations here, where Plaintiffs allege they voluntarily and deliberately "visited Defendant's Website" to engage in a mutual exchange of written messages with Defendant on the chat feature and watched their "brief conversations with Defendant about Defendant's services and policies" appear on and scroll up their screens. (FAC ¶17.)

The allegations in *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073 (C.D. Cal. 2021), cited by Plaintiffs, are typical. There, plaintiff alleged defendant violated Section 631 when it used "software called 'Session Replay' to capture[] a customer's interactions with Lululemon's webpage, including mouse movements, clicks, keystrokes, scrolls" and plaintiff's "shipping and billing information; date, time, and duration of visit; IP address and physical location; and browser type and operating system." *Id*. at 1077.[4]

Plaintiffs tacitly acknowledge that district courts considering these session replay cases are split as to whether a Section 631 claim brought against a website operator using such software can survive a motion to dismiss. (Opp'n at 27.) For example, in *Graham v.*

---

[4] *See also Saleh v. Nike, Inc.*, 562 F.Supp.3d 503, 509 (C.D. Cal. 2021) (alleging third-party software captured mouse clicks, keystrokes, credit card information and user location); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (alleging software recorded plaintiff's "mouse clicks and keystrokes"). Plaintiffs also cite *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ("*Facebook Internet Tracking*"), but it is even more factually disparate, involving code Facebook placed not on its *own* website, but "on third-party web pages" to "track users' browsing histories when they visit third-party websites… *after its users had logged out of Facebook*." *Id*. at 596.

*Noom, Inc.*, plaintiff alleged software deployed by defendant Noom's third-party service provider "records visitor data such as keystrokes, mouse clicks, and page scrolling… in real time" and allows its clients to "see a 'playback' of any visitor's session" as well as "review the data… stored in the cloud on [the service provider's] servers." 533 F.Supp.3d 823, 828 & n.6 (N.D. Cal. 2021).

The *Graham* court granted defendant's motion to dismiss, holding the service provider "is an extension of Noom," because "[i]t provides a tool—like the tape recorder in *Rogers*—that allows Noom to record and analyze its own data in aid of Noom's business." *Id.* at 832. The service provider "is not a third-party eavesdropper," and "[a]s a result, Noom is not liable for aiding and abetting [the service provider's] wrongdoing *because there is no wrongdoing*" under Section 631. *Id.* at 833.

Other courts have adopted this reasoning and summarily dismissed such claims. *See, e.g.*, *Williams*, 2022 WL 17869275, at *4 (dismissing Section 631 claim where "the facts as pled show that [software] functioned as a recorder, and not as an eavesdropper," software provider "is not liable for wiretapping under Section 631(a) for providing a software tool," and website operator's use of "software rather than a physical recording device for the same function does not mean that it aided and abetted wiretapping").[5]

More importantly, and perhaps unsurprisingly, given that the session replay cases did not involve voluntary and mutual written exchanges like the chats at issue here, none of those courts considered the substantial line of cases following *Konop* and holding that there can be no interception as a matter of law *after* an electronic communication arrives at its destination. Indeed, the *Williams* court explicitly noted that "this order need not consider the issue[] of… whether communications were intercepted in transit." 2022 WL 17869275, at *4. Since, as Plaintiffs themselves note, "[a] decision does not stand for a

---

[5] *See also Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *1, *3 (N.D. Cal. Apr. 15, 2021) (dismissing claims against provider of software because "Clicktale is not a third-party eavesdropper. It is a vendor that provides a software service that allows its clients to monitor their website traffic."); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *1-2 (N.D. Cal. Apr. 8, 2021) (dismissing claims against software provider and jewelry retailer where plaintiff "does not plausibly plead [software provider]'s wiretapping, and [defendant] thus is not liable as an aider and abettor").

1   proposition not considered by the court," (Opp'n at 24), their reliance on factually and
2   legally inapposite session replay cases is unavailing.

3       In any event, Plaintiffs acknowledge the absence of any session replay allegations
4   in their FAC, proposing instead "[t]he Court can and should *reasonably infer* from the
5   FAC's allegations that Defendant and its third party use similar embedded computer code
6   to capture the website user's interactions while using Defendant's chat feature." (*Id.* at 28.)
7   Not so. Plaintiffs only allege Defendant intercepted "private conversations" consisting of
8   electronic communications Plaintiffs sent to a chat feature on Defendant's website. (FAC
9   ¶¶11, 17.) Indeed, the Opposition confirms the purported interception targeted "private
10  communications exchanged via a wire," "electronic communications," "chats" that
11  Plaintiffs "sent and received… with Defendant's website," and "text messages" sent "from
12  a computer." (Opp'n at 22, 30, 33, 35, 36 & n.11 (emphasis omitted).)

13      In sum, Plaintiffs' claim arises from precisely the sort of electronic communications
14  analyzed by *Konop* and its progeny. Plaintiffs cannot now contradict those allegations and
15  amend to allege instead that the chat feature has been capturing keystrokes or mouse clicks
16  or "users' interactions across an entire website." *Williams*, 2022 WL 17869275, at *4.
17  Thus, Plaintiffs' Section 631 claim should be dismissed with prejudice.

18  **III.  PLAINTIFFS' INSISTENCE THAT NO PARTY EXEMPTION EXISTS
        UNDER SECTION 631 IS CONTRARY TO CONTROLLING NINTH
19      CIRCUIT AUTHORITY—AND PLAINTIFFS' OWN CASES**

20      Defendant also established another independent ground for dismissal of Plaintiffs'
21  Section 631 claim: Section 631 and the analogous federal Wiretap Act exempt a participant
22  to the communication from liability. (Mot. at 16-18.) And Defendant collected cases
23  demonstrating no Wiretap Act violation where the defendant allegedly provided a third
24  party with access to information the plaintiff sent to the defendant as a party to the
25  communication. (*Id.* (collecting cases).)

26      Plaintiffs ignore those cases and instead argue Defendant's "reliance on how the
27  Federal Wiretap Act is interpreted[] is misplaced," because "[u]nlike the Federal Wiretap
28  Act… [t]here is no party exemption" under Section 631. (Opp'n at 20 (claiming no

exemption exists under first clause of Section 631); *see also id.* at 26 (disputing whether party exception exists under second clause "for the reasons set forth above").) Put simply, Plaintiffs are wrong.

Defendant quoted—and Plaintiffs have no answer to—the Ninth Circuit's definitive statement in *Facebook Internet Tracking* that Section 631 and the Wiretap Act "contain an exemption from liability for a person who is a 'party' to the communication, whether acting under the color of law or not" and that "[c]ourts perform the same analysis for both statutes regarding the party exemption." (Mot. at 16 (quoting *Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606-07).)

Plaintiffs' failure to recognize this Ninth Circuit precedent is baffling, given they cite the *Facebook Internet Tracking* decision elsewhere in their Opposition (Opp'n at 29), and their session replay cases cite it to expressly reiterate the party exemption's existence. *See Saleh*, 562 F.Supp.3d at 516 ("Section 631(a) contains an exemption from liability for a person who is a 'party' to a communication, *where a party to a communication cannot be held to wiretap another party to the same communication*."); *Williams*, 2022 WL 17869275, at *2 ("Parties to a conversation cannot eavesdrop on their own conversation, so no other part of Section 631(a) is applicable to [defendant]."); *Graham*, 533 F.Supp.3d at 831 ("Only a third party can listen to a conversation secretly. By contrast, a party to a communication can record it (and is not eavesdropping when it does).").

Plaintiffs' primary "support" for their misguided contention is pages of musing about flaws in the appellate court's reasoning in *Rogers v. Ulrich*, which held a party cannot eavesdrop on its own conversation: "[i]t is never a secret to one party to a conversation that the other party is listening to the conversation; *only a third party can listen secretly to a private conversation*." 52 Cal.App.3d 894, 899 (1975). (*See* Opp'n at 21-24.)

Plaintiffs do not point to any cases endorsing their criticism of *Rogers*, but attempt to explain the absence of such cases away. According to Plaintiffs, for example, the California Supreme Court in *Ribas v. Clark*, 38 Cal.3d 355 (1985), "had no occasion to decide the question as to whether section 631 included the conduct of **participants** to wire

communications." (Opp'n at 24 (emphasis in original).) Again, Plaintiffs are wrong. In fact, the *Ribas* court explicitly disagreed with their novel take on *Rogers*, when it observed that *Rogers* "held, correctly, that section 631 does not penalize the secret recording of a conversation by one of the *participants*." 38 Cal.3d at 360 & n.3 (emphasis in original).[6]

In short, Plaintiffs' challenge to the existence of the party exemption is baseless.

## IV. PLAINTIFFS IGNORE, AND THUS CONCEDE, DEFENDANT'S SHOWING THAT THERE IS NO SECTION 632.7 VIOLATION HERE

Defendant challenged Plaintiffs to find *one case* holding Section 632.7 applies to a sender's written communications over the internet or with a website. Plaintiffs cite none, because none exist. Nor do Plaintiffs even acknowledge, let alone refute, most of Defendant's arguments. Since Plaintiffs cannot plausibly amend their allegations to state a viable claim, their Section 632.7 claim must be dismissed with prejudice.

### A. Plaintiffs Did Not Address Or Refute Defendant's Showing That Section 632.7 Only Applies To Communications Between Two Telephones

Defendant's Motion demonstrated that the "plain text of §632.7 suggests that an *exclusive* list of five *types of calls*" and "only [the] types of phones *listed in the statute* are included"—specifically, "a cellular radio or cordless telephone on one side, *and a cellular radio, cordless, or landline telephone on the other side*." (Mot. at 19 (quoting *Montantes v. Inventure Foods*, 2014 WL 3305578, at *4-*5 (C.D. Cal. July 2, 2014) (Fitzgerald, J.)).)

Defendant also enumerated myriad amendments and additions to CIPA provisions

---

[6] Plaintiffs' reliance on cases suggesting *recording* conversations without the consent of all parties is impermissible overlooks that Section 631 only applies to *eavesdropping*, not recording. Indeed, as the *Revitch* court noted, the party in that case "would not have violated the statute by creating a record of Revitch's communications and then later transmitting that record to" a third party, "because section 631 is an eavesdropping statute, *and sharing a record is not eavesdropping.*" *Revitch*, 2019 WL 5485330, at *2 (citing *Rogers*); *see also Knell v. FIA Card Servs., N.A.*, 2013 WL 12121237, at *3 (S.D. Cal. Feb. 21, 2013) ("Section 631(a) governs illegal wiretapping and *only applies to interception by a third party*"; dismissing Section 631 claim "because the FAC does not suggest that the call was intercepted by a third party and [p]laintiff alleges that FIA was a participant in the conversation"); *Powell v. Union Pac. R.R. Co.*, 864 F.Supp.2d 949, 955 (E.D. Cal. 2012) ("Published cases are in accord that section 631 applies only to third parties and not participants."); *Membrila v. Receivables Performance Mgmt., LLC*, 2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010) (dismissing Section 631 claim "because this section applies only to eavesdropping by a third party *and not to recording*" where "Plaintiff alleges Defendant recorded Plaintiff's phone conversation with Defendant" and "monitored" call).

since internet and website usage became widespread, including provisions addressing and defining "electronic communications" and disclosure of information on websites, and noted that the 2022 amendment to Section 632.7 did *not* add website or internet communications to its scope, but instead reinforced its applicability to "*any telephone communication, as specified.*" (*Id.* at 19-20.) Citing well-settled authority on statutory construction, Defendant showed Plaintiffs cannot "read[] words or elements into a statute that do not appear on its face," particularly given the Legislature's "failure to make changes" to Section 632.7 to add electronic or internet communications (or at least expand its scope beyond certain communications "between… telephones"), indicating "an intention to leave the law unchanged in that respect." (*Id.* at 18, 20.) Since Plaintiffs only allege they used the web browser "either" on their laptop *or* smartphone's computer function to interact with Defendant's website chat feature, and did not allege Defendant used any telephone at all, Section 632.7 plainly does not apply. (*Id.* at 21 & n.18.)

Plaintiffs do not acknowledge, let alone challenge, any of the above arguments and authority—including, most egregiously, this Court's opinion detailing the scope of Section 632.7 in *Montantes*. (Opp'n at 35-36.) Instead, they speculate that "communication" as defined by Section 632.7(c) includes "data," which "surely includes text messages," which can be sent by phone but "also… from a computer," which somehow "supports Plaintiffs' position." (Opp'n at 36 & n.11 (emphasis omitted).) But Plaintiffs do not and cannot point to a single authority suggesting Section 632.7 would apply to text messages that are *not* sent "between… telephones." (*Id.*; *see also* Cal. Penal Code §632.7(a).) Plaintiffs' musing does not "support" so much as betray the weakness in their "position" here.

Moreover, Plaintiffs make no attempt to defend the fatally vague and fungible nature of their allegations regarding whether *they* even used a "telephone," insisting the Court can simply "*infer* that *either or both* Plaintiffs used a smart phone to visit Defendant's Website" at some point. (Opp'n at 17.) (Of course, the Court could also "infer" from the same allegation that both Plaintiffs used a laptop, ending the analysis. (*Id.*, citing FAC ¶17).)

Nor have Plaintiffs shown that using the computer function of a smartphone is

sufficiently related to a "telephone" to be governed by the statute—the *Mastel* decision discussed above and in the Motion suggests it is not. (*See supra* at 4; Mot. at 21 n.18 (quoting *Mastel*, 549 F.Supp.3d at 1135 ("Although iPhones contain the word 'phone' in their name, and have the capability of performing telephonic functions, they are, in reality, small computers… that perform functions well beyond *and unrelated to those of a telephone.*")).) This is particularly true because the chat communications here are entirely written. One cannot simply call the website chat feature and have a "conversation"; indeed, it is indisputably inaccessible to someone using a landline or cordless telephone. Applying Section 632.7 to an internet chat feature simply because Plaintiffs might have accessed it using the web browser on their smartphones exceeds the bounds of the statute (and logic).

Finally, recognizing they cannot plausibly allege that Defendant was using a telephone to communicate on its own website, Plaintiffs argue Section 632.7(a) nonetheless "encompass[es] Defendant's computer equipment" because "[i]f Defendant *is using telephone lines* to connect its computer servers and other equipment to the Internet, then surely the devices it is using to connect to the Internet are functionally equivalent to the 'landline telephone' term in [S]ection 632.7(a)." (Opp'n at 35-36.) But even if Plaintiffs amended to add such an allegation (replacing their nebulous references to "telephony" (FAC ¶¶17, 32-36)), they *still* could not avoid the plain language of the statute. As Defendant showed, Section 632.7 only applies to "communication transmitted between" certain "telephones," and, unlike other CIPA provisions, does not mention telephone "wire" or "line" or "cable." *Compare, e.g.,* Cal. Penal Code §632.7(a) *with* §631(a) (first clause). Thus, Plaintiffs' Section 632.7 claim can be dismissed with prejudice.

### B.   Plaintiffs Did Not And Cannot Refute Their Consent To The Alleged "Recording" Of Their Written Communications As A Matter Of Law

Defendant collected cases holding that, unlike telephone conversations, participants in internet communications have no "reasonable expectation that their online communications will not be recorded." (*See* Mot. at 23 (collecting cases).) Defendant also cited cases in the Section 632.7 context for the proposition that because written communications are necessarily "recorded" by the recipient, the sender "certainly

consented" to that "recording" when they sent the message. (*Id.* (quoting *Montantes* and *Smith v. LoanMe, Inc.*, 11 Cal.5th 183 (2021)).) Although Plaintiffs devote an entire section of their Opposition to the "important guidance" the California Supreme Court provided on Section 632.7 in *Smith* (Opp'n at 24-25), they make no attempt to address its inconvenient holding that "recordation *would be expected* with a… text transmission." *Smith*, 11 Cal.5th at 194 n.4. Thus, Plaintiffs simply ignore Defendant's authority fatal to their claim.

Defendant also collected authority holding implied consent can be demonstrated if the "surrounding circumstances" indicate a participant's "awareness" they were being recorded; for example, individuals who "actually expected the [chat] to be recorded" can be found to have consented when they initiated the communication. (Mot. at 22-23 (collecting cases).) Plaintiffs ignore all Defendant's cases but one, *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 2016 WL 4886933 (S.D. Cal. Sept. 15, 2016), and echo the court's holding that implied consent can be shown when a participant "continues to use the communication system after receiving notice the communications are being" recorded. (*Compare* Opp'n at 36-37 *with* Mot. at 22-23.)

Plaintiffs then struggle to distinguish themselves from the *NEI* plaintiff, noting "'the long history of recording' involving the plaintiff's employees," the absence of "any witness testimony indicating that plaintiff's employees objected to having their telephone calls recorded by the defendant," and that "the plaintiff continued to place orders with defendant despite the notice of recording." (Opp'n at 37.) But as Defendant pointed out, and Plaintiffs do not dispute, Plaintiffs admit they initiated a chat by typing in a message that was "necessarily recorded upon receipt" by Defendant, and thus "certainly consented to that recording." *Montantes*, 2014 WL 3305578, at *3. And Plaintiffs' chat transcripts do not reflect any "objection"—to the contrary, Plaintiffs watched the messages they sent appear and be "recorded" on the website chat feature. (*See* Burling Decl. Exs. A-B.)

Moreover, Plaintiffs have their own "long history of recording." *NEI*, 2016 WL 4886933, at *4. As shown in Defendant's RJN Reply, Plaintiffs have alleged they engaged in the same exact conduct at least *forty other times* on retailers' website chat features. (RJN

Reply at 5-8 & n.5.)[7] Thus, they cannot plausibly or credibly "assert they were unaware of the 'recording' or had an expectation they were not being 'recorded'" as required to refute implied consent. (*See* Mot. at 22-24.) By their own admission, Plaintiffs voluntarily initiated and engaged in the chat, sending written electronic messages fully aware they would be "recorded" and retained by Defendant. (FAC ¶¶16, 17.)

Because Plaintiffs cannot amend to overcome the settled law holding they consented to the alleged "recording" of their written communications to Defendant's chat feature, their Section 632.7 claim should be dismissed with prejudice for this reason as well.

## CONCLUSION

For the reasons stated in the Motion and above, the FAC should be dismissed with prejudice.

DATED: January 24, 2023

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____*/s/Jason D. Russell*_____
JASON D. RUSSELL
Attorneys for Defendant
CINMAR, LLC

---

[7] As reflected in the RJN Reply, Plaintiffs' counsel have now filed at least ***ninety-three*** duplicate CIPA actions on behalf of eight plaintiffs—nearly half of which are brought by Plaintiffs here. (RJN Reply at 5 & n.5.) Businesses across the country are receiving generic pre-suit demand letters threatening similar litigation absent prompt settlements. While Plaintiffs complain that exposing their litigation tactics constitutes "unprofessional personal attacks," their cases do not support this contention. (Opp'n at 38-39; *see also* RJN Reply §I.B.) On the contrary, the Court may consider the boilerplate complaints as relevant to the credibility and plausibility of Plaintiffs' allegations, and Defendant's introduction of that evidence was appropriate. (*See* RJN Reply §I.A.-B.)

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant Cinmar, LLC, certifies that this brief contains 5,864 words, which complies with the word limit set by court orders dated December 5, 2022 and December 23, 2022.

DATED: January 24, 2023

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:      */s/Jason D. Russell*
JASON D. RUSSELL
Attorneys for Defendant
CINMAR, LLC